## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

In re: **SHARRA N. CARVALHO**

     **Debtor**

**TEODORA A. SIMU**

     **Plaintiff**

v.

**SHARRA N. CARVALHO**

     **Defendant**

**Case No. 1:15-bk-646**

**Chapter 7**

**Adversary No. 16-10001**

**Status Hearing March 29, 2016 10:30am**

## RENEWED MOTION FOR SUMMARY JUDGMENT
## ON DISCHARGEABILITY

Creditor Teodora Simu hereby moves for Summary Judgment and for this Court to enter an Order granting complete relief from the bankruptcy and automatic stay.  The Debtor has violated 11 U.S.C. § 727(a)(2)(A) by transferring her property with the intent to hinder, delay, or defraud a creditor or the Trustee within one year before she filed for bankruptcy.   The Debtor has further violated 11 U.S.C. § 727(a)(2)(B) by transferring property of the estate with the intent to hinder, delay, or defraud a creditor or the Trustee after she filed for bankruptcy.  The Debtor has further violated 11 U.S.C. § 727(a)(3)(A) by knowingly and fraudulently, in or in connection with the case, made a false oath or account.  For these reasons, this Court may not grant the Debtor a discharge.

Respectfully submitted, this 15th day of March, 2016.

_____
Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
Fax: (202) 318-8019
matt@lefande.com
DC Bar # 475995
Attorney for Teodora A. Simu

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion, Statement of Material Facts not in Dispute, Memorandum in Support and proposed Order was served electronically via the CM/ECF system and mailed via United States Postal Service Priority Mail, postage prepaid and electronic delivery notification requested, this 15th day of March, 2016, to the following:

Merrill Cohen
Cohen Baldinger & Greenfeld, LLC
2600 Tower Oaks Boulevard, Suite 103
Rockville MD 20852

Bryan S. Ross, Chapter 7 Trustee
1825 K Street, NW
Suite 1475
Washington, DC 20006

Office of the U.S. Trustee
115 South Union Street
Suite 210 Plaza Level
Alexandria, VA 22314

_____
Matthew August LeFande

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: SHARRA N. CARVALHO<br><br>                      **Debtor**<br><br>**TEODORA A. SIMU**<br><br>                      **Plaintiff**<br>**v.**<br><br>**SHARRA N. CARVALHO**<br><br>                      **Defendant** | **Case No. 1:15-bk-646**<br><br>**Chapter 7**<br><br>**Adversary No.<br>16-10001**<br><br>**Status Hearing<br>March 29, 2016 10:30am** |

## STATEMENT OF MATERIAL FACTS
## NOT REASONABLY IN DISPUTE

Creditor Teodora Simu has moved for Summary Judgment for this Court to enter an Order granting her relief from discharge in this bankruptcy case and the automatic stay.  In support of this Motion, Simu asserts the following material facts are not in reasonable dispute and she is entitled to judgment as a matter of law:

1.      Simu was awarded judgment against Defendant Debtor Sharra Carvalho by the District of Columbia Superior Court on October 27, 2015.  Simu Ex. 3.

2.      Such judgment followed a jury verdict awarding Simu damages for breach of contract for $75,000, damages for breach of fiduciary duty of $3,250, and $12,000 for punitive damages.  Simu Ex. 2 at 6-8.

3.      Simu's sole claim for breach of contract was for Carvalho's failure to turn over assets and proceeds of Elite Insurance & Consulting Services, LLC belonging to Simu.  Simu Ex. 1 at 9.

4.      Simu recorded this judgment with the District of Columbia Recorder of

Deeds on October 29, 2015.  Simu Ex. 3 at 3.

5.      On December 2, 2015, the Superior Court denied Carvalho's motion to

stay enforcement of Simu's judgment.  Simu Ex. 4.

6.      On December 3, 2015, Simu applied for a charging order against the

proceeds of Elite Insurance & Consulting Services, LLC.  Simu Ex. 5.

7.      Such application for a charging order was served upon Carvalho's attorney

on that date by electronic filing.  *Id*. at 4.

8.       On December 4, 2015, Carvalho removed $7,150 from the Elite Insurance

& Consulting Services, LLC Bank of America checking account and transferred it to her

personal account.  Simu Ex. 14, page 4 of the December 2015 Statement.  Simu Ex. 16 at

3.

9.      On December 4, 2015, the Elite Insurance & Consulting Services, LLC

Bank of America Checking Account had a balance of $7,618.81.  Simu Ex. 14, page 5 of

the December 2015 Statement.

10.     Removal of the $7,150 from the account left an indicated balance of

$468.81.  *Id*.

11.     The December 4, 2015 transfers to Carvalho from the Elite Insurance &

Consulting Services, LLC Bank of America checking account exceeded by at least

$5,150 any prior bank transfer to Carvalho in the preceding two years.  Simu Ex. 13-14.

12.     The average amount of any single payment to Carvalho from the Elite

Insurance & Consulting Services, LLC Bank of America checking account during 2014-

2015 was less than $1,000.00.  *Id*.

2

13.     On December 4, 2015, the same date as the withdrawal of the $7,150, Carvalho returned $6,500 to the Elite Insurance & Consulting Services, LLC Bank of America checking account.  Simu Ex. 14, page 3 of the December 2015 Statement.

14.     On December 9, 2015, Carvalho made a cashier's check from the funds of Elite Insurance & Consulting Services, LLC Bank of America checking account to herself in the amount of $6,000.  Simu Ex. 15 at 7.

15.     Carvalho had never previously used a cashier's check to receive money from the company.  Simu Ex. 13-14.

16.     On December 9, 2015, Carvalho opened an account for the first time with Sandy Spring Bank.  Simu Ex. 15 at 3.

17.     Carvalho resides in the District of Columbia.  ECF Docket # 1 at 2.

18.     Elite Insurance & Consulting Services, LLC is a District of Columbia limited liability company.  Simu Ex. 21.

19.     Elite Insurance & Consulting Services, LLC has no locations outside the District of Columbia.

20.     At that time and until February 1, 2016, Sandy Spring Bank had no locations within the District of Columbia.   See, *e.g.*, https://www.sandyspringbank.com/ locations/

21.     On December 9, 2015, Carvalho deposited the Bank of America cashier's check into the Sandy Spring Bank account.  Simu Ex. 15 at 7-8.

22.     On December 14, 2015, Carvalho withdrew $5,350 in cash from the Sandy Spring Bank account at the counter.  Simu Ex. 15 at 5.

23.    On December 14, 2015, Carvalho withdrew $300 in cash from the Sandy Spring Bank account through the bank's automated teller machine in Arlington, Virginia. *Id*.

24.    On December 14, 2015, Carvalho removed $300 from the Elite Insurance & Consulting Services, LLC Bank of America checking account and transferred it to her personal account.  Simu Ex. 14, page 4 of the December 2015 statement.

25.    On December 14, 2015, Carvalho withdrew $300 in cash from her personal account at Bank of America, from that bank's automated teller machine, also in Arlington, Virginia.  Simu Ex. 16 at 6.

26.    On December 14, 2015, Carvalho paid attorney Merrill Cohen and/or his firm $2,500.  ECF Docket # 1 at 40.

27.    On December 15, 2015, Carvalho caused to be filed her Bankruptcy petition and schedules in this case.  Carvalho caused her electronic signature to be made upon the petition on that date.  *Id*. at 6.

28.    Carvalho claimed her petition was for a no-asset estate.  *Id*. at 33.

29.    Within her Schedule A/B attached to the petition, Carvalho claimed to possess only $600 in cash.  *Id*. at 10.

30.    Within her Schedule A/B attached to the petition, Carvalho claimed to to be the 100% owner of Elite Insurance & Consulting Services, LLC.  *Id*. at 11.

31.    Within her Schedule A/B attached to the petition, Carvalho claimed Elite Insurance & Consulting Services, LLC to have a fair market value of only one dollar.  *Id*. at 18.

32.     The  Elite Insurance & Consulting Services, LLC Bank of America checking account received at least $245,255.76 in deposits in 2014.   Simu Ex. 13.

33.     Elite Insurance & Consulting Services, LLC Bank of America checking account received at least $186,727.77 in deposits in 2015.  Simu Ex. 14.

34.     Carvalho received at least $58,602.00 from the Elite Insurance & Consulting Services, LLC Bank of America checking account in 2014.  Simu Ex. 13.

35.     Carvalho received at least $73,169.16 from the Elite Insurance & Consulting Services, LLC Bank of America checking account in 2015.  Simu Ex. 14.

36.     Carvalho failed to list her professional licenses in her Schedule A/B.  ECF Docket # 1 at 12.

37.     Carvalho has multiple professional license and held such licenses at the time of her petition.  Simu Ex. 23.

38.     Carvalho did not list any accounts receivable or commissions already earned in Schedule A/B.  *Id*. at 13.

39.     Carvalho did not list any customer lists or other compilations in Schedule A/B.  *Id*. at 14.

40.     Carvalho previously testified before the Superior Court that Elite Insurance & Consulting Services, LLC held a $1.27 million book of business in commercial insurance accounts.  Simu Ex. 22 at 18.

41.     At the Creditor's Meeting, Defendant Carvalho acknowledged Elite Insurance & Consulting Services, LLC to have some one hundred commercial insurance clients supporting the company as an ongoing concern.  Unofficial Tr. at 8.

42.    Carvalho previously testified before the Superior Court that the value of Elite Insurance & Consulting Services, LLC lies in this body of accounts, of which 80 to 90 percent are renewal contracts providing residual income to the company.  Simu Ex. 22 at 15.

43.    Carvalho reported $10,587 in assets for Elite Insurance & Consulting Services, LLC in the company's 2014 1120S tax return.  Simu Ex. 17 at 2.

44.    Carvalho claimed exemptions solely under District of Columbia and federal nonbankruptcy law.  ECF Docket # 1 at 16-18.

45.    Carvalho claimed her ownership in Elite Insurance & Consulting Services, LLC to be exempt under District of Columbia general partnership law.  *Id*. at 18.

46.    Elite Insurance & Consulting Services, LLC is not a partnership.  Simu Ex. 21.

47.    Carvalho claimed Simu's judgment against her to be a business debt.  *Id*. at 22.

48.    Carvalho claimed Simu's debt, a recorded judgment against her, to be a non-secured claim.  *Id*. at 22, 44.

49.    Carvalho claimed to have only $51,081 in income for 2015 up to December 15, 2015.  *Id*. at 37.

50.    Carvalho claimed to have only $24,974 in income for 2014.  *Id*.

51.    Carvalho claimed to have no other income for this time period.  *Id*.

52.    Carvalho claimed to have made no transfers to insiders within the previous year.  *Id*. at 38.

6

53.     Carvalho claimed to have no property garnished, attached or levied in the previous year.  *Id*. at 39.

54.     Carvalho claimed to have transferred no property to anyone, other than in the ordinary course of business or financial affairs within two years of her petition.  *Id*. at 41.

55.     Carvalho claimed to have not transferred any financial instruments or accounts held in her name or for her benefit in the previous year.  *Id*.

56.     On December 18, 2015, Carvalho removed $1,415 from the Elite Insurance & Consulting Services, LLC Bank of America checking account and transferred it to her personal account.  Simu Ex. 14, page 4 of the December 2015 Statement.

57.     The removal of the $1,415 occurred after Carvalho filed her petition with this Court.  ECF Docket # 1.

58.     Carvalho did not inform the Trustee or receive the Trustee's consent prior to removing the $1,415 from the Elite Insurance & Consulting Services, LLC Bank of America checking account.

59.     Carvalho did not inform this Court or receive the Court's consent prior to removing the $1,415 from the Elite Insurance & Consulting Services, LLC Bank of America checking account.

60.     On December 21, 2015, Carvalho removed $200 from the Elite Insurance & Consulting Services, LLC Bank of America checking account and transferred it to her personal account.  Simu Ex. 14, page 4 of the December 2015 Statement.

61.     The removal of the $200 occurred after Carvalho filed her petition with this Court.  ECF Docket # 1.

62.     Carvalho did not inform the Trustee or receive the Trustee's consent prior to removing the $200 from the Elite Insurance & Consulting Services, LLC Bank of America checking account.

63.     Carvalho did not inform this Court or receive the Court's consent prior to removing the $200 from the Elite Insurance & Consulting Services, LLC Bank of America checking account.

64.     On December 28, 2015, Carvalho removed $100 from the Elite Insurance & Consulting Services, LLC Bank of America checking account and transferred it to her personal account.  Simu Ex. 14, page 4 of the December 2015 Statement.

65.     The removal of the $100 occurred after Carvalho filed her petition with this Court.  ECF Docket # 1.

66.     Carvalho did not inform the Trustee or receive the Trustee's consent prior to removing the $100 from the Elite Insurance & Consulting Services, LLC Bank of America checking account.

67.     Carvalho did not inform this Court or receive the Court's consent prior to removing the $100 from the Elite Insurance & Consulting Services, LLC Bank of America checking account.

68.     On December 31, 2015, Carvalho removed $1,500 from the Elite Insurance & Consulting Services, LLC Bank of America checking account and transferred it to her personal account.  Simu Ex. 14, page 4 of the December 2015 Statement.

69.     The removal of $1,500 occurred after Carvalho filed her petition with this Court.  ECF Docket # 1.

70.     Carvalho did not inform the Trustee or receive the Trustee's consent prior to removing the $1,500 from the Elite Insurance & Consulting Services, LLC Bank of America checking account.

71.     Carvalho did not inform this Court or receive the Court's consent prior to removing the $1,500 from the Elite Insurance & Consulting Services, LLC Bank of America checking account.

72.     At the January 14, 2016 Creditor's Meeting, Defendant Carvalho testified that her bankruptcy papers as filed with the Court were accurate.  Unofficial Tr. at 1.

73.     At the January 14, 2016 Creditor's Meeting, Defendant Carvalho testified that she listed all her assets.  *Id.*

74.     At the January 14, 2016 Creditor's Meeting, Defendant Carvalho testified that her reason for opening the Sandy Spring Bank account was that "it would be necessary to have a personal account so that I could deposit and pay bills."  *Id*. at 3.

75.     Prior to the opening of the Sandy Spring Bank account, Carvalho already had a personal account at Bank of America for this purpose.  Simu Ex. 16.

76.     At the January 14, 2016 Creditor's Meeting, Defendant Carvalho testified as to Elite Insurance & Consulting Services, LLC, "The business really has no money. Zero.  One dollar."  Unofficial Tr. at 7.

77.     On January 15, 2016, Carvalho and her attorney claimed to this Court, Elite Insurance & Consulting Services, LLC to have "nominal value".  ECF Docket # 24 at 3.

78.     Carvalho's attorney specifically referenced there being "approximately

$1,815.83 in a bank account, and less than $2,000.00 in accounts receivable." *Id*.


Respectfully submitted, this 15th day of March, 2016.

_____
Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
Fax: (202) 318-8019
matt@lefande.com
DC Bar # 475995
Attorney for Teodora A. Simu

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: SHARRA N. CARVALHO<br><br>                    **Debtor**<br><br>**TEODORA A. SIMU**<br><br>                    **Plaintiff**<br>**v.**<br><br>**SHARRA N. CARVALHO**<br><br>                    **Defendant** | **Case No. 1:15-bk-646**<br><br>**Chapter 7**<br><br>**Adversary No.<br>16-10001**<br><br>**Status Hearing<br>March 29, 2016 10:30am** |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF
## RENEWED MOTION FOR SUMMARY JUDGMENT

Creditor Teodora Simu has moved for Summary Judgment for this Court to enter

an Order granting relief from this bankruptcy case and the automatic stay.  There are no

genuine issues of material fact in dispute necessitating a trial.  These facts amply

demonstrate multiple badges of fraud in Carvalho's transfer, removal and concealment of

her property with the intent to hinder, delay, and/or defraud Simu and the Trustee.  In

doing so, Carvalho has falsified recorded information from which her financial condition

or business transactions might be ascertained.  Simu is now entitled to non-

dischargeability and a lift of any protection for Carvalho under the Bankruptcy Code.  In

support of this Motion, Simu states the following:

## ARGUMENT

**1.      Standard for Summary Judgment.**

Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable to the bankruptcy context by Federal Rule of Bankruptcy Procedure 7056, requires that summary judgment be granted if the moving party can show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   In a motion for summary judgment, the moving party has the burden to establish that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C. Cir. 1994).  Once the moving party has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 326 (internal quotations omitted).  In this effort, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (footnote omitted).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Id.*

**2.      Standard for denying discharge.**

Section 727 (a)(2)(A) provides that a debtor can be denied discharge if "the

debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property

of the debtor, within one year before the date of the filing of the petition."  To sustain an

objection to discharge pursuant to § 727 (a)(2)(A), the objecting party must show the

following elements by a preponderance of the evidence:

> (1) that the act complained of was done at a time subsequent to one year
> before the filing of the petition or after the date of the filing of the petition;
>
> (2) with intent to hinder, delay, or defraud a creditor of the property under the
> Bankruptcy Code,
>
> (3) that the act was that of the debtor or his duly authorized agent, and
>
> (4) that the act consisted of transferring, removing, destroying, or concealing
> any of the debtor's property.

See *Jennings v. Maxfield*, 533 F.3d 1333, 1339 (11th Cir. 2008) (citing *Grogan v. Garner*,

498 U.S. 279, 289-91 (1991)).

When analyzing these elements, a court should construe § 727's denial of

discharge liberally in favor of the debtor.  See *Guerra v. Fernandez-Rocha*, 451 F.3d 813,

816 (11th Cir. 2006).


**3.      Badges of Fraud.**

There can be no material dispute that the Debtor repeatedly transferred money

from the Elite Insurance & Consulting Services, LLC Bank of America account to herself

in the weeks immediately proceeding the filing of her petition and thereafter.  The bank

records already before the Court cannot be reasonably disputed and are readily verifiable.

Carvalho's intent to hinder, delay, or defraud a creditor may now be established by circumstantial evidence or by inferences drawn from a course of conduct. *In re Smiley*, 864 F.2d 562, 566 (7th Cir. 1989) (citing *Farmers Co-Operative Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)). "Courts have identified several indicia of fraud that tend to show that a debtor had an actual intent to defraud his creditors." *Protos v. Silver*, 322 Fed. App'x 930, 936 (11th Cir. 2009). These indicia of fraud include:

> (1) the lack or inadequacy of consideration for the property received;

> (2) the nature of the relationship between the transferor and the transferee;

> (3) whether the transferor retains possession, control, benefits, or use of the property in question;

> (4) whether the transfer resulted in insolvency;

> (5) the cumulative effect of the debtor's transactions and course of conduct after the onset of financial difficulties or threat of suit by creditors; and

> (6) the general chronology and timing of the transfer in question.

*Id.*

Herein, the preexisting quasi-employment relationship between Carvalho and Elite Insurance & Consulting Services, LLC will be likely conflated by Carvalho to blur any nefarious intent in these transfers. As a result, Simu relies less on the first two factors and far more on the following four. The badges of fraud with regard to these factors is manifest.

### a.  The immediate and unbroken temporal relationship between Simu's collection efforts and Carvalho's transfers.

A jury verdict for Simu was entered against Carvalho on October 27, 2015. Simu Ex. 2, 3. Under District of Columbia law, execution of judgment may commence upon entry of the judgment, absent a specific stay entered by the Court or the tender of a

supersedeas bond.  See *Dickey v. Fair*, 768 A.2d 540, 542 n.2 (D.C. 2001) (citing Super.

Ct. Civ. R. 62 (d), 62-I).  Simu immediately recorded her judgment with the District of

Columbia Recorder of Deeds, though a certified copy of the judgment was not available

from the Clerk of the Court until the afternoon of October 28, 2015.  Simu Ex. 3.

Carvalho moved to stay the execution of judgment on November 18, 2015 without

tendering a supersedeas bond.[1]  On December 2, 2015, the Superior Court denied the

stay.  Simu Ex. 4.

 The following day, Simu applied to the Superior Court for a charging order

against the funds of Elite Insurance & Consulting Services, LLC.  Simu Ex. 5.  Under

District of Columbia law, the sole means of initial execution against a judgment debtor's

transferable interest in a limited liability company is by a charging order.  D.C. Code §

29-805.03.  Such charging order constitutes a lien on a judgment debtor's transferable

interest and requires the limited liability company to pay over to the person to which the

charging order was issued any distribution that would otherwise be paid to the judgment

debtor.  *Id.*

 Upon entry of such a charging order, Simu would have been entitled to any

money that Carvalho would have otherwise received from Elite Insurance & Consulting

Services, LLC.  On December 4, 2015, the day immediately following application for the

charging order, Carvalho nearly emptied the Elite Insurance & Consulting Services, LLC

Bank of America account and transferred it to her personal account.  Simu Ex. 14, page 4

of the December 2015 statement.  Carvalho then apparently changed her course of action

---

[1]  This Court may take judicial notice of the readily verifiable proceedings and public records in the
Superior Court.  *Bowie v. Maddox*, 642 F.3d 1122, 1135-1136 (D.C. Cir. 2011); *Marshall County Health
Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  Simu herein solely references the existence
of Carvalho's motion, not the merits or contents thereof.

and returned $6,500 back to the Elite Insurance & Consulting Services, LLC Bank of

America Account.  *Id*., page 3 of the December 2015 statement.[2]

It is important to note that the application for the charging order with the Superior

Court was made by electronic filing, and as with this Court's ECF, Carvalho's attorney

would have had notice of and access to the application by email a few minutes after noon

on November 3, 2015.  It is a reasonable inference that Carvalho's attorney would have

informed her existence and implications of the application shortly thereafter.  Indeed, it

was his duty to do so.

On December 9, 2015, Carvalho again changed tact.  Rather than attempting to

transfer Elite Insurance & Consulting Services, LLC funds to herself at the same bank,

where they would be readily detected, Carvalho opened a new account at Sandy Springs

Bank, a small bank with no branches in the District of Columbia.  Simu Ex. 15.  At the

Creditor's Meeting, Carvalho's stated cause under oath for opening the account was false

and nonsensical.

> MR. LeFANDE:        And for what purpose did you open the account?
>
> MS. CARVALHO:    I just thought it would be necessary to have a personal
> account so that I could deposit and pay bills.

Unofficial Transcript of January 14, 2016 Creditor's Meeting at 3.

Of course, Carvalho already had a personal account at Bank of America for this

very purpose.  Simu Ex. 16.  Carvalho would never use the Sandy Springs Bank account

for that purpose, other than apparently to order checks for the account.  Simu Ex. 15 at 5.

Instead, Carvalho nearly duplicated her December 4, 2015 defalcation of the Elite

---

[2] The volume of bank records necessary to place these events in context and to demonstrate certain negative
facts prompts Simu to rely upon reference to the paper Exhibits already in the Court's possession rather
than attempt to redact sensitive information from hundreds of pages at this time.

Insurance & Consulting Services, LLC Bank of America account again on December 9, 2015, but this time obtaining a cashier's check made to herself and depositing the check in the Sandy Springs Bank account immediately thereafter. *Id.* at 7-8.

On December 14, 2015, the day before the filing of the petition in this case, Carvalho withdrew another $300 in cash from the Elite Insurance & Consulting Services, LLC Bank of America account. Simu Ex. 14, page 4 of the December 2015 Statement. On the same day, Carvalho withdrew $5,350 in cash at the counter at Sandy Springs Bank and withdrew another $300 at the automated teller machine of the same bank. Simu Ex. 15 at 5. These transactions in quick succession over a period of ten days strongly implicates element # 6 of the *Protos* badges of fraud, "the general chronology and timing of the transfer[s] in question." Likewise, element # 3 is herein satisfied, as all of these transfers were to an insider, Carvalho herself. Element # 5 is also satisfied, as the creation of the Sandy Springs Bank account comes the day immediately following Simu's attempt to seize Elite Insurance & Consulting Services, LLC funds from the Bank of America account by the charging order. The selection of an obscure bank with no locations in the District of Columbia, where both Carvalho and the company resided, itself is a strong indicator that Carvalho utilized this particular bank solely because she perceived it to be outside the jurisdiction of the District of Columbia Superior Court, and would thwart Simu's collection efforts.

   b.      **These transfers intentionally created a feigned insolvency.**

On December 1, 2015, the Elite Insurance & Consulting Services, LLC Bank of America account displayed a balance of $13,882.69. Simu Ex. 14, page 5 of the December 2015 Statement. On December 15, 2015, Carvalho claimed in her petition and

schedules for the entirety of Elite Insurance & Consulting Services, LLC to have a fair

market value of only one dollar.  ECF Docket # 1 at 11, 18.  Carvalho made no mention

of the company's bank account which held $1,890.83 on December 14, 2015.  Simu Ex.

14, page 5 of the December 2015 Statement.  Even excluding the $6,500 Carvalho

returned to the account on December 4, 2015, the Elite Insurance & Consulting Services,

LLC Bank of America account would receive $10,792.89 in deposits for December 2015.

*Id*. at 3.  Overall, Elite Insurance & Consulting Services, LLC received $186,727.77 in

deposits for 2015.  *Id.*, *passim*.  Carvalho personally received at least $71,454.16 directly

from the Elite Insurance & Consulting Services, LLC Bank of America account in the

twelve months leading up to the December 15, 2015 filing of her petition.  *Id*., *passim*;

Simu Ex. 13, page 10 of the December 2014 Statement.

Despite this substantial and well-documented cash flow, when confronted by the

false allegation of Elite Insurance & Consulting Services, LLC's fair market value of one

dollar, Carvalho's attorney responded,

> Elite's assets on the petition date consisted of three printers, a personal computer,
> a chair and desk, approximately $1,815.83 in a bank account, and less than
> $2,000.00 in accounts receivable (Elite itself is entitled to only 10% to 15% of
> these accounts receivable as commissions, being obligated to turn over the
> remainder to insurance companies upon receipt).  Measured against these minimal
> assets, the company has no liquidation value in this Chapter 7 case.  Elite's debts
> consisted on the filing date of approximately $9,000.00 in franchise taxes and
> approximately $1,011.00 in fees for various software licenses.  Because its
> liabilities far outweigh its assets, the Debtor submits her interest in the company
> has no liquidation value.  Her counsel, a chapter 7 trustee for more than thirty
> years, believes her assessment is correct.

ECF Docket # 24 at 3.

*Protos* element # 4 is amply satisfied herein.  Absent Carvalho's transfers to

herself in the twelve months leading up to the December 15, 2015 filing of her petition,

Elite Insurance & Consulting Services, LLC would have possessed at least $73,269.99 in

cash at the time of her petition, far exceeding any exemption available to Carvalho.  Such

false (or forced) claim of insolvency further completely omitted Carvalho's defalcation of

at least $6,000 in cash from the company the week prior to her filing.

> **c.    Carvalho's conversion of Elite cash to a cashier's check is itself a badge of fraud.**

*Protos* element # 3 includes "whether the transferor retains possession, control,

benefits, or use of the property in question".  Carvalho's conversion of most of the funds

of Elite Insurance & Consulting Services, LLC Bank of America account into a cashier's

check is particularly probative as to the unique qualities of the instrument.  A cashier's

check is:

> A bank's own check; a check drawn upon a bank and signed by its cashier, or assistant cashier, being a direct obligation of the bank.  Cashier's checks are issued to borrowers when loans are made in lieu of a deposit credit or actual cash, sold to customers for remittance purposes, and issued in payment of the bank's own obligations, money transfers, etc.  When a cashier's check is issued it becomes a credit, and upon its return through the clearing house or otherwise, a debit to the cashier's account.

*State, Dep't of Treasury v. Bank of Commonwealth*, 314 N.W.2d 688, 690 (Mich. Ct.

App. 1981) (quoting Garcia, Munn's Encyclopedia of Banking and Finance (7th ed,

1973)).

> The giving of a cashier's check to a depositor to cover the amount of a withdrawal is merely an acknowledgment of an indebtedness on the part of the bank to the payee of the order.  The change thereby made is not in the nature of the debt, but in the evidence of it.

*Bank of America Nat'l Trust & Sav. Asso. v. Cranston*, 60 Cal. Rptr. 336, 341 (Cal. App.

1st Dist. 1967) (quoting 10 Am. Jur. 2d, Banks, § 544, p. 519).

9

"By the certification of a check the deposit which is represented by the check ceases to stand to the credit of the depositor, and passes to the credit of the check holder, who is thereafter a depositor to that amount..." *Cranston*, 60 Cal. Rptr. at 341 (quoting 5B Michie, BANKS AND BANKING, § 256a, p. 19 and citing *Gray v. First Nat'l Bank*, 82 So. 2d 528, 530 (Ala. 1955); *Marks v. Anchor Sav. Bank*, 97 A. 399 (Pa. 1916); *Dean v. Iowa Des Moines Nat'l Bank & Trust Co.,* 290 N.W. 664 (Iowa 1939)).  "When a check is certified, it ceases to possess the character or to perform the functions of an ordinary check; it represents so much money on deposit, payable to the holder on demand... The legal result of certifying a check at the request of the payee is the same as though the cash for which the check called had been paid over the counter to him, redeposited to his own credit, and a certificate of deposit therefor issued to him." *Cranston*, 60 Cal. Rptr. at 341 (quoting 10 AM. JUR. 2d, Banks, § 590, p. 557-558).

> As between the bank and the payee a cashier's check is, in legal effect, the same as a certificate of deposit or a certified check.  Certainly the purpose in each case is the same, that is, to enable the holder to use the check as money; and when a check is certified it ceases to possess the character, or to perform the functions, of a check, but represents so much money on deposit, payable to the holder on demand.  Such a deposit stands upon exactly the same ground as any other.

*Cranston*, 60 Cal. Rptr. at 341 (quoting *Walker v. Sellers*, 77 So. 715 (Ala. 1918) (citations, quotation marks omitted).

"The contract of deposit does not give the banks a tontine right to retain the money in the event that it is not called for by the depositor.  It gives the bank merely the right to use the depositor's money until called for by him or some other person duly authorized." *State v. Northwestern Nat'l Bank*, 18 N.W.2d 569, 578 (Minn. 1945) (quoting *Security Sav. Bank v. California*, 263 U.S. 282, 286 (1923)).

10

> A cashier's check circulates in the commercial world as the equivalent of cash…
> People accept a cashier's check as a substitute for cash because the bank stands
> behind it, rather than an individual.  In effect, the bank becomes a guarantor of the
> value of the check and pledges its resources to the payment of the amount
> represented upon presentation.

*State ex rel. Chan Siew Lai v. Powell*, 536 S.W.2d 14, 16 (Mo. 1976) (quoting

*National Newark & Essex Bank v. Giordano*, 268 A.2d 327 (N.J. Super. 1970)).

It is Simu's contention herein that prior to her application for a charging order,

Carvalho had never before paid herself with a cashier's check from the funds of Elite

Insurance & Consulting Services, LLC.  Absent specific documentary evidence to the

contrary presented by Carvalho, this negative allegation cannot be reasonably in dispute.

"This is a classic example of the evidentiary burden of production that comes with the

burden of proof."  *In re Tallerico*, 532 B.R. 774, 791 (Bankr. E.D. Cal. 2015).

> If the defendant in a run-of-the-mill civil case moves for summary judgment or
> for a directed verdict based on the lack of proof of a material fact, the judge must
> ask himself not whether he thinks the evidence unmistakably favors one side or
> the other but whether a fair-minded jury could return a verdict for the plaintiff on
> the evidence presented. The mere existence of a scintilla of evidence in support of
> the plaintiff's position will be insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

> Regardless of who bears the overall burden of persuasion, we do not think it
> is the plaintiffs' duty to prove a negative—*i.e.*, to offer up all possible
> "context[s]" that might "indicate otherwise," 1 U.S.C. § 1— and then refute
> them.

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1132 n.9 (10th Cir. 2013) *aff'd* 134

S. Ct. 2751, 189 L. Ed. 2 675 (2014).  See also *Ariz. Free Enter. Club's Freedom Club*

*PAC v. Bennett*, 131 S. Ct. 2806, 2823, 180 L. Ed. 2d 664 (2011); *Harrow Prods., Inc. v.*

*Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1020 (6th Cir. 1995).

This negative evidence is important herein, as it too is a badge of fraud in the context of the unique bearer instrument qualities of a cashier's check. Unlike an ordinary check, where the funds remain in the check's account until the check is presented for payment, upon issuance of a cashier's check, the money is immediately removed from the account and insulated from attachment and execution. Such check can then be presented at the counter for payment at any bank branch. These specific qualities in the context of Simu's immediate threat of execution demonstrate that Carvalho's employment of the cashier's check in this instance was specifically and intentionally to hinder Simu's collection efforts and to conceal the funds from both Simu and the Trustee, in violation of 11 U.S.C. § 727 (a)(2)(A).

### 4.    The funds of Elite Insurance & Consulting Services, LLC were property of the Debtor.

Carvalho has specifically listed herself as a one hundred percent owner of Elite Insurance & Consulting Services, LLC in her petition and schedules. ECF Docket # 1 at 11. Any legal or equitable interest in property that a debtor has as of the commencement of a bankruptcy case is included in the debtor's bankruptcy estate. *Chase Manhattan Bank v. Pulcini*, 261 B.R. 836, 840 (Bankr. W.D. Pa. 2001) (citing 11 U.S.C. § 541(a)(1)). "The bankruptcy estate also includes '[p]roceeds, product, offspring, rents, or profits of or from property of the estate.'" *McLain v. Newhouse*, 516 F.3d 301, 312 (5th Cir. 2008) (quoting 11 U.S.C. § 541(a)(6)). "This generous provision sweeps into the bankruptcy estate all interests held by the debtor -- even future, non-possessory, contingent, speculative, and derivative interests." *McLain*, 516 F.3d at 312 (quoting *In re Dibiase*, 270 B.R. 673, 676 (Bankr. W.D. Tex. 2001). "Congress intended this provision to be quite broad, not

limited to the definition of 'proceeds' set forth in the Uniform Commercial Code, "but
encompassing any conversion in the form of property of the estate, and anything of value
generated by property of the estate." *McLain*, 516 F.3d at 312 (quoting *In re Hanley*, 305
B.R. 84, 86-87 (Bankr. M.D. Fla. 2003)). "The bankruptcy estate also includes '[a]ny
interest in property that the estate acquires after the commencement of the case.'"
*McLain*, 516 F.3d at 312 (quoting 11 U.S.C. § 541(a)(7)). "Congress enacted § 541(a)(7)
to clarify its intention that § 541 be an 'all-embracing definition and to ensure that
property interests created with or by property of the estate are themselves property of the
estate.'" *McLain*, 516 F.3d at 312 (quoting *In re Hanley*, 305 B.R. at 87).

As whole or part owner of Elite Insurance & Consulting Services, LLC, and
solely in control of the company, the company's property, including its present and
ongoing income, were Carvalho's property, property of the debtor for the purposes of §
727 (a)(2). *Grant v. Benjamin*, 210 B.R. 203, 209 (Bankr. M.D. Fla. 1997).

> The Appellee points to a number of other cases in which a bankruptcy court found
> that the assets of a wholly owned corporation were property of the
> debtor/shareholder, but none of them appear to do so solely because the debtor
> owned the corporation. See, *e.g.*, *In re Hollingsworth*, 224 B.R. 822, 829
> (Bankr.M.D.Fla. 1998) (stating that "[w]hile it is true that the airplane was never
> technically owned by the Debtor, it is equally clear that the Debtor *had, and still
> has absolute control of the airplane and is still the owner of all the corporate
> assets of LexAir, to wit, the airplane.* Hence, the Court is satisfied that the
> corporate assets are, in fact, property of the Debtor.") (emphasis added).

*Lort v. Ferguson Enterprises*, 347 B.R. 909, 911 (M.D. Fla. 2006).

> Although Section 727(a)(2)(B) only applies to "property of the estate," a court
> may pierce the corporate veil of a business and treat its assets as the debtor's
> individual property, and, thus, property of the debtor's estate, under an alter ego
> theory. See, *e.g. In re Riley*, 351 B.R. 662, 671 (Bankr. E.D. Wisc. 2006); *In re
> Bonham*, 224 B.R. 114, 116 (Bankr. D. Alaska 1998) (holding that courts have
> the authority to deny a discharge to an individual debtor under Section 727 (a)(2)
> (A) based upon transfers of property of corporations found to be the debtor's alter
> ego); see also *In re Rodriguez*, 2008 Bankr. LEXIS 4598, 2008 WL 3200215, at *

> 7 (recognizing authority that an individual debtor causing his wholly-owned corporation to transfer property can provide a basis for a denial of discharge under Section 727 (a)(2)(A), but finding no evidence in that case that at the time of the transfer at issue the debtor was in fact a shareholder of the corporation or that corporate formalities were disregarded).

*Pisculli v. T.S. Haulers, Inc.*, 426 B.R. 52, 60 (E.D.N.Y. 2010).

Simu's lawsuit against Carvalho focused upon Carvalho's disregard of corporate formalities and the commingling of money and debts. Leading up to the petition, Carvalho completely disregarded any corporate formalities and issued a cashier's check to herself while feigning the company's insolvency.

> [T]he bankruptcy court found, *inter alia*, that in addition to the indicia of common ownership of the businesses, appellant "assigned portions of personal bills to be paid by the Businesses without any real basis for the amount assigned;" appellant's wife paid certain living expenses with money withdrawn from one of the businesses, paid debts of the businesses from her personal bank account and deposited income from the businesses into her own account; the truck sale proceeds were deposited into appellant's wife's personal bank account; a portion of the truck sale proceeds were used to pay personal expenses of appellant and his wife; and appellant believed that he was personally obligated for his businesses debts. Moreover, appellant's wife testified that the truck sale proceeds were placed into her personal bank account in order to prevent attachment of those funds by creditors.
> …
> Moreover, those factual findings support the bankruptcy court's legal conclusion that A.N. Leasing was merely an alter ego of appellant and, thus, its assets, and the proceeds from the sale of those assets, can be treated as assets of the bankruptcy estate. See, *e.g. In re Mosher*, 417 B.R. at 780 (finding that the debtor was the alter ego of his corporation where, *inter alia*, he was the sole shareholder of the corporation; he used his own address for that entity; he regularly used funds of that entity for his own personal use; he frequently used the entity for his own personal benefit rather than acting in the best interest of the entity; and he failed to follow corporate formalities, and that, as such, the corporation's assets can be treated as assets of the bankruptcy estate). Specifically, the facts demonstrate that appellant exercised complete dominion and control over A.N. Leasing and used that domination to commit a fraud or wrong against the bankruptcy estate by selling the only assets of that company and using a portion of the proceeds thereof for his own personal use or benefit, *i.e.*, to satisfy debts for which he felt personally obligated.

*Pisculli,* 426 B.R. at 61-62 (citation omitted).

14

**5.      Simu's judgment is entirely for Carvalho's defalcation of Simu's property held in the course of a fiduciary relationship**

Simu's cause of action against Carvalho in the Superior Court was in part, for Carvalho paying herself and her mother at a time that the company did not have sufficient funds to make a dividend to the owners.  Such payments were made by Carvalho without the permission of Simu, the other fifty percent shareholder, and in breach of the contracts between them.  Simu sued Carvalho and withdrew from the company because of Carvalho's oppressive conduct.  Carvalho refused to make an accounting and division of the company assets upon Simu's demand, again in violation of the contracts between them, ***but itself also a breach of fiduciary duty***.  Contrary to Carvalho's unfounded claims in the present case, every category of damages awarded to Simu directly related to a breach of fiduciary duty and not dischargeable under § 523(a)(4).

> To establish a claim for relief under § 523 (a)(4), a creditor must prove, by a preponderance of the evidence, "that a fiduciary relationship existed and that [the debtor] committed fraud or defalcation in the course of the fiduciary relationship." *Jafarpour v. Shahrokhi* (*In re Shahrokhi*), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001) (citations omitted).  As stated above, the definition of fiduciary for purposes of § 523 (a)(4) is a question of federal law... However, courts should still "look to state law to determine whether a fiduciary [relationship] exists." *Yang v. Qin* (*In re Qin*), 285 B.R. 292, 297 (Bankr. N.D. Iowa 2002).

*Carter v. Patterson*, 485 B.R. 905, 917 (Bankr. E.D. Ark. 2013)

As fully set forth in the complaint, Simu Ex. 1, there was no cause of action for breach of contract, which did not stand alone as breach of fiduciary duty by Carvalho.

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) ("Schick's commingling of funds was not only an *indication* of a breach of fiduciary duty -- it was, in and of itself, a breach." (emphasis *sic*)); *TMF Tool Co. v. Siebengartner*, 899 F.2d 584, 589 (7th Cir. 1990) (Defendant breached his fiduciary duty "by commingling these funds with his own

money in order to pay his personal debts".)   See also *ABC Trans Nat'l Transport, Inc. v. Aeronautics Forwarders, Inc.*, 413 N.E.2d 1299, 1315 (Ill. 1980) ("it makes no difference whether the result of the agent's conduct is injurious to the principal or not, as the misconduct of the agent affects the contract from considerations of *public policy* rather than of injury to the principal." (emphasis *sic,* citations omitted)).

> [U]pon the declaration of a lawful dividend by a Board of Directors... the relation of debtor and creditor is set up between the corporation and the stockholder... The declaration of the lawful dividend creates an obligation of the corporation and there exists a right of action on the part of the stockholder to enforce its payment. The right is in the nature of a contract and grows out of the declaration of a lawful dividend.

*Mann-Paller Foundation, Inc. v. Econometric Research, Inc.*, 644 F. Supp. 92, 95 (D.D.C. 1986) (quoting *Selly v. Fleming Coal Co.*, 37 Del. 34, 180 A. 326, 328 (Del. Super. 1935)).   See also *Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171, 1175 (Del. 1988).

Carvalho breached her fiduciary duty to Simu by failing to observe ordinary corporate formalities of distinguishing the debt of the company from the debt of the individual.   *In re USACafes, L.P. Litigation*, 600 A.2d 43, 48 (Del. Ch. 1991).   Carvalho bypassed the business of paying the debts of the company by claiming her mother forgave her share but not Simu's when no such distinction could be made.   Carvalho had a duty to pay the debts of the company before paying herself a dividend.   *Inscho v. Mid-Continent Dev. Co.*, 94 Kan. 370, 401 (1915).

Upon Simu's demand for her share of the company, Carvalho simply kept it for herself, as she has done to the present day.   Carvalho cannot avoid non-dischargeability on breach of contract damages where such breach remains a breach of fiduciary duty as a matter of law and this Court remains infirm from re-litigating these issues.

16

**6.      Simu's judgment was for intentional injury by Carvalho.**

The October 27, 2015 jury verdict against Carvalho included a general award of

punitive damages.  Simu Ex. 2 at 8.  Such award was not specific to any count.  Under

District of Columbia law, no punitive damages may be awarded without clear and

convincing evidence: (1) that the defendant acted with evil motive, actual malice,

deliberate violence or oppression, or with intent to injure, or in willful disregard for the

rights of the plaintiff; and (2) that the defendant's conduct itself was outrageous, grossly

fraudulent, or reckless toward the safety of the plaintiff.  DISTRICT OF COLUMBIA

STANDARD CIVIL JURY INSTRUCTION 16-1.

Punitive damages may be awarded "only if it is shown by clear and convincing

evidence that the tort committed by the defendant was aggravated by egregious conduct

and a state of mind that justifies punitive damages."  *Railan v. Katyal*, 766 A.2d 998,

1012 (D.C. 2001) (quoting *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C.

1995) *cert. denied,* 519 U.S. 1148 (1997)).

> The jury was instructed in this case that punitive damages could be awarded "only
> if... the plaintiff has proven by clear and convincing evidence that the defendant
> acted with malice and with willful, wanton or reckless disregard of the plaintiff's
> rights."  We presume that this instruction, which accurately reflects the proper
> standard, was followed by the jury.

*Railan*, 766 A.2d at 1012-1013 (internal flag omitted).

This far exceeds what is required for non-dischargeability under the Bankruptcy

Code.

> A creditor must prove, by a preponderance of the evidence, that she suffered a
> deliberate or intentional injury and that the injury was both "willful and
> malicious" to prevail under § 523 (a)(6).  [*Blocker v. Patch*, 526 F.3d 1176, 1180
> (8th Cir. 2008)].  Willful injury includes instances where "the debtor [either]
> desires to bring about the consequences... or knows that the consequences are

17

certain, or substantially certain, to result from his conduct." *Sells v. Porter* (*In re Porter*), 539 F.3d 889, 894 (8th Cir. 2008) (quoting *Patch*, 526 F.3d at 1180). There must be more than negligence or reckless disregard of the rights of others to show willful injury exists. *Prewett v. Iberg* (*In re Iberg*), 395 B.R. 83, 91 (Bankr. E.D. Ark. 2008). Malicious injury is conduct "targeted at the creditor... in the sense that the conduct is certain or almost certain to cause [financial] harm." [*Fischer v. Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999)]. The debtor's knowledge that he is violating a creditor's legal rights is insufficient to establish malice without additional aggravated circumstances. *Johnson v. Logue* (*In re Logue*), 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003) (citing *Barclays Am./Bus. Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875, 881-82 (8th Cir. 1985)).

*Carter*, 485 B.R. at 917-918.

The Superior Court is authorized to "submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon [one] or more issues of fact the decision of which is necessary to a verdict." *President & Dirs. of Georgetown College v. Wheeler*, 75 A.3d 280, 288 (D.C. 2013) (quoting D.C. Sᴜᴘ. Cᴛ. R. Cɪᴠ. P. 49(b)). "Verdicts submitted under this section are 'hybrid[s]' between standard general verdicts and special verdicts." *Wheeler*, 75 A.3d at 288 (citing *Mason v. Ford Motor Co.*, 307 F.3d 1271, 1274 (11th Cir. 2002); *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1520 (6th Cir. 1990) ("The general verdict with interrogatories may be viewed as a middle ground between the special verdict and the general verdict...")). A verdict form, as with Simu's verdict against Carvalho, "that 'require[ed] the jury to make separate findings only on negligence, proximate cause, and the award of damages for each plaintiff'", remains a general verdict form. *Wheeler*, 75 A.3d at 289 (quoting *Nimetz v. Cappadona*, 596 A.2d 603, 606 (D.C. 1991)). The form in *Simu v. Carvalho* did not require "the jurors to expressly resolve at least one discrete factual issue". *Wheeler*, 75 A.3d at 289.

"The distinction between these verdict types is crucial in this case, because a party waives its objection to any alleged inconsistency in a general verdict, with or without

interrogatories, if it fails to object before the jury's discharge."  *Wheeler*, 75 A.3d at 288

(quoting *District of Columbia Hous. Auth., v. Pinkney*, 970 A.2d 854, 868 (D.C. 2009)

("DCHA did not raise an objection based on inconsistent verdicts before the jury was

excused, [after returning general verdict with special interrogatory,] and it therefore has

waived this argument."); *Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d

621, 645 (D.C. 1995) (explaining that Rule 49, "particularly section (b), countenances a

waiver of objections to inconsistencies in the verdict that are not pointed out before the

jury is discharged").   "Accordingly, because the verdict was not special, it was either a

standard general verdict or a Rule 49 (b) general verdict with interrogatories.  To

preserve an objection to an alleged inconsistency in either of these types, a party must

raise the argument before the jury is discharged. Here, appellants failed to do so.

Accordingly, they waived their objection to any inconsistency in the verdict."  *Wheeler*,

75 A.3d at 291 (citing *Underwood*, 665 A.2d at 645; *Pinkney*, 970 A.2d at 868).  Herein,

Carvalho's attorney **did not even attend the verdict** and his stand-in was silent as to any

such issue.  Simu Ex. 2, *passim*.[3]

    Carvalho cannot now attempt to merge the jury's specific finding as to malice on

defamation, a count which was not sustained, particularly where the jury went on to make

a general award of punitive damages against her.  Any such inconsistency in the verdict

was waived by Carvalho, and absent a special finding to the contrary, the finding of

malice and willfulness necessarily applies to all other damages in the verdict.  None of

Simu's damages, costs or attorney's fees are dischargeable under § 523 (a)(6).

---

[3] Carvalho's attorney would later specifically raise this issue in a post-trial motion November 5, 2015,
which the Superior Court denied on November 23, 2015.

**7.      Carvalho has repeatedly removed property of the estate.**

This Court may not grant a discharge to a debtor who "with intent to hinder,

delay, or defraud a creditor or an officer of the estate charged with custody of property

under this title, has transferred, removed... or concealed, or has permitted to be

transferred, removed... or concealed... (B) property of the estate, after the date of the

filing of the petition".  11 U.S.C. § 727 (a).  As set forth above, the money and ongoing

income of Elite Insurance & Consulting Services, LLC are properly property of the

estate.  Carvalho's false representations in her petition and her false testimony at the

Creditor's Meeting demonstrate an intent to defraud Simu and the Court.

> Here, the bankruptcy court found that the Adamses transferred collected accounts
> receivable into the Adams Plywood operating account, used post-petition cash
> collateral, and made post-petition transfers of cash collateral, all without
> authorization...  The bankruptcy court further found, based on the above events,
> that Barclays conclusively proved an intent to hinder or delay its collection of the
> Adamses' debt under Sections 727 (a)(2)(A) and 727 (a)(2)(B) of the Bankruptcy
> Code.  We observe, in this regard, that the bankruptcy and district courts correctly
> characterized the Adams Plywood accounts receivables as "property of the
> debtor," under Section 727 (a), because Edsel Adams controlled Adams Plywood.
> The bankruptcy court's finding of intentional delay or hindrance under this section
> is amply supported by the evidence, and we affirm the denial of discharge on
> those grounds.

*Barclays/Am. Business Credit v. Adams*, 31 F.3d 389, 394 (6th Cir. 1994) (footnote

omitted).

**8.      Carvalho has knowingly and fraudulently made a false oath or account.**

A discharge should not be granted where "the debtor knowingly and fraudulently

made a false oath or account."  *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) (citing *In*

*re Raiford*, 695 F.2d 521, 522 (11th Cir. 1983)).  "A false statement or an omission in the

debtor's bankruptcy schedules or statement of financial affairs can constitute a false

oath." *Gugino v. Clark*, 525 B.R. 442, 459-460 (Bankr. D. Idaho 2015) (quoting *Retz v.*

*Samson*, 606 F.3d 1189, 1196 (2010) (quoting *Khalil v. Developers Sur. & Indem. Co*.,

379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd* 578 F.3d 1167, 1168 (9th Cir. 2009)

(adopting the BAP's statement of applicable law)).  Deliberate omissions, such as a

"knowing and fraudulent omission from a sworn Statement of Affairs or schedule may

constitute a false oath" and may also result in the denial of a discharge.  *In re Chalik*, 748

F.2d 616, 618 and n.3 (11th Cir. 1984).  The false oath must be fraudulent and material,

*Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991), and made intentionally, *In re*

*Rudolph*, 233 F. App'x 885 (11th Cir. 2007) (citing *In re Cutignola*, 87 B.R. 702, 706

(Bankr. M.D. Fla. 1988)).

Carvalho's repeated claim that Elite Insurance & Consulting Services, LLC had a

fair market value of one dollar was a patent fraud upon this Court.  Simu has amply

demonstrated Carvalho to have directly taken at least $131,771.16 from the company in

2014 and 2015, Simu Ex. 13-14, and her own testimony demonstrates such income to be

continuing into the future, Simu Ex. 22 at 17-19.

> Appellant's argument that the valuation [of the company] of "zero" was an
> opinion and therefore could not be construed as fraud is rejected.  The valuation
> was not an estimate or an opinion of valuation, or inadvertence because Severino
> valued his interest in 6 companies as zero.  Severino himself testified and the
> Bankruptcy Court found that income was clearly coming into Severino Real
> Estate and that the valuation of the corporation therefore could not be zero.  In
> finding fraudulent intent, the Bankruptcy Court also found it significant that
> Severino could not account for income that was received by Severino Real Estate
> or the whereabouts of the unaccounted for rental monies received immediately
> pre-petition.  These are clearly material omissions and given the opportunity to
> respond, there was no explanation.  Severino was aware that income was coming
> in to the companies, yet deliberately valued them as "zero", and did not amend
> his schedules upon discovering that the method of valuing was incorrect.  "It
> makes no difference that he does not intend to injure his creditors when he makes
> a false statement.  Creditors are entitled to judge for themselves what will benefit,
> and what will prejudice, them. [ ] The veracity of the bankrupt's statements is

essential to the successful administration of the Bankruptcy Act." *In re Chalik*, 748 F.2d at 618 (internal citations omitted).

*Severino v. Busey Bank, N.A.*, 2011 U.S. Dist. LEXIS 37447, 16-17 (M.D. Fla. Mar. 25, 2011).

This was not the only misrepresentation in Carvalho's petition, schedules and testimony.  Carvalho claimed to possess only $600 in cash on the petition date, ECF Docket # 1 at 10, but is demonstrated to possess at least $5,350 in cash just hours beforehand.  Carvalho denied possessing professional licenses, *id*. at 12, but has many. Simu Ex. 23.  Carvalho denied having customer lists or other compilations, ECF Docket # 1 at 14, but previously testifed her "book of business" to be valued at $1.27 million with ongoing income derived thereof.  Simu Ex. 22 at 18.  Carvalho recited the wholly inapplicable District of Columbia partnership law in asserting and exemption in her interest in Elite Insurance & Consulting Services, LLC, ECF Docket # 1 at 18, to draw attention away from the law actually applicable to this situation, D.C. Code § 29.802.02 (7)(A), which immediately disassociates her from the company as a managing member upon her bankruptcy.  Carvalho claimed Simu's debt to be a business debt and not a Superior Court judgment.  ECF Docket # 1 at 22.  Carvalho further falsely characterized the debt as unsecured, *id*., despite the judgment having been recorded more than a month earlier.  Simu Ex. 3.  See also ECF Docket # 1 at 39, Carvalho's false claim that none of her property had been attached.  Carvalho vastly understated her income, ECF Docket # 1 at 28, 37, with her bank records demonstrating an average monthly income from the company of at least $5,490.47 to her over 2014-2015.  Simu Ex. 13-14.  Carvalho falsely claimed to have not transferred any property in the two years proceeding bankruptcy, and

to not have transferred any financial instruments in her name.  ECF Docket # 1 at 41.  See Simu Ex. 15 at 7.

"[A] debtor in bankruptcy proceedings has a 'duty to share full information with the Trustee.'  The opportunity to obtain a fresh start is 'conditioned upon truthful disclosure.'"  *United States Trustee v. Franz*, 532 B.R. 792, 809 (Bankr. D. Mont. 2015) (quoting *In re Retz*, 606 F.3d 1189, 1204 (9th Cir. 2010) (quoting *Aubrey v. Thomas*, 111 B.R. 268, 274 (9th Cir. BAP 1990))).  Carvalho is not entitled to a discharge for her invariably false statements to this Court throughout the course of these proceedings.

## CONCLUSION

For these reasons, and for such other reasons as this Court finds to be good and sufficient cause, Sharra Carvalho should be denied a discharge, and any stay against execution of judgment lifted.  Plaintiff Creditor Teodora Simu further requests an award of costs and attorney's fees in accordance with applicable law.

Respectfully submitted, this 15th day of March, 2016.

_____
Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
Fax: (202) 318-8019
matt@lefande.com
DC Bar # 475995
Attorney for Teodora A. Simu