The document below is hereby signed.

Signed: May 12, 2016



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Case No. 15-00646 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| ─────────────────────── | ) | |
| | ) | |
| TEODORA AURELIANA SIMU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. |
| SHARRA NEVES CARVALHO, | ) | 16-10001 |
| | ) | Not for publication in |
| Defendant. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER RE
MOTION TO DISMISS AND FOR MORE DEFINITE STATEMENT

The plaintiff, Simu, has filed an Amended Complaint that

seeks a denial of discharge for the debtor, Carvalho, and seeks a

determination that a judgment recovered by Simu in the Superior

Court of the District of Columbia is nondischargeable.  This

addresses Carvalho's motion that seeks dismissal of Counts II

through VIII, and XI through XV, and a more definite statement

regarding Counts I, IX, and X.

I

I address first the counts of the complaint that most obviously warrant being dismissed.  Counts VIII, XI, XII, XIII, XIV, and XV are either redundant of other counts or plainly fail to state a claim upon which relief can be granted.

**Count VIII** alleges that the Superior Court judgment is nondischargeable under §§ 523(a)(2), 523(a)(4), and 523(a)(6), but Count VIII must be dismissed:

- Counts IX and X incorporate the same facts as Count VIII, and include additional facts as well, in seeking relief under §§ 523(a)(4) and 523(a)(6).  Accordingly, the claims in Count VIII based on §§ 523(a)(4) and 523(a)(6) will be dismissed as redundant of Counts IX and X (which Carvalho has not sought to dismiss).

- As to § 523(a)(2), Count VIII must be dismissed because it fails to state a claim upon which relief can be granted.  In my view, to be applicable, § 523(a)(2) requires that a debtor's false representation have induced the creditor to

part with money or property.[1]  The one false

prepetition statement alleged in the complaint is

that on or about March 6, 2015, almost a year

after the Superior Court litigation commenced,

Carvalho tendered to Simu a materially false tax

return and false financial statements for Elite

Insurance & Consulting Services, LLC ("Elite").

No allegation is made that this induced Simu to

part with money or property.

**Count XI** alleges that "Carvalho intentionally interfered

with Simu's contractual rights by making false and disparaging

claims to other persons which Simu intended to utilize

upon termination of her business relationship Carvalho [sic].

Carvalho intentionally harmed Simu's future business prospects by

these false statements, with or without actual malice" and on

---

[1]  However, in the Seventh Circuit, "the fraud exception to
a discharge in bankruptcy encompasses a debtor's transferring
valuable property in order to keep it out of the hands of the
creditors entitled to it." *McClellan v. Cantrell*, 217 F.3d 890,
894-95 (7th Cir. 2000), *cited in In re Collazo*, No. 15-2324, 2016
WL 1358459, at *5 (7th Cir. Apr. 5, 2016).  The issue of whether
there can be a fraud without a fraudulent statement is now before
the Supreme Court in *Husky International Electronics, Inc. v.
Ritz*, No. 15-145, argued on March 1, 2016.  The matter appears to
be academic here because the transfers of property at issue form
a basis for alleging that Carvalho should be denied a discharge
under § 727(a)(2).  Discovery on the § 727(a)(2) claim would
appear to cover any discovery that would be permissible under *In
re Collazo*.  The dismissal of Count VIII can be set aside later
once the *Husky* decision is announced (probably by June of this
year) if *Husky* is in agreement with *In re Collazo*.

this basis Simu seeks a determination that the Superior Court judgment is nondischargeable under § 523(a)(6).  However, the judgment was not an award of damages for such a claim.[2]

**Count XII** alleges Carvalho engaged in defamation, and on that basis seeks a determination that the Superior Court judgment is nondischargeable under § 523(a)(6), but the judgment was not an award of damages for such a claim.[3]

**Count XIII** requests relief from the stay to allow Simu to pursue her judicial dissolution claims.  At a hearing in Carvalho's bankruptcy case on February 11, 2016, the parties consented to Simu's request for relief from the automatic stay to allow her to pursue an appeal of the dismissal of her judicial dissolution claim, and an order was entered thereafter.  Count XIII will be dismissed as moot.

**Count XIV** "demands" Carvalho's attorney disgorge his fees to the Chapter 7 trustee under § 542 of the Bankruptcy Code because those fees allegedly were paid by Carvalho from funds she originally obtained from Elite.  Carvalho's counsel is not a

---

[2]  Moreover, Simu's complaint in the Superior Court included "COUNT II Tortious Interference with Prospective Economic Advantage," setting forth substantially identical allegations, and the jury awarded no damages on that claim.  Thus, the claim is barred by the doctrine of *res judicata* (the doctrine of claim preclusion).

[3]  Moreover, Simu's complaint in the Superior Court included an unsuccessful claim for defamation, a claim that is now barred by *res judicata* (the doctrine of claim preclusion).

4

defendant in this adversary proceeding.  In any event, it is the
Chapter 7 trustee, not Simu, with standing to bring a turnover
claim, if one existed.

**Count XV** asserts that Elite's customers and suppliers should
be compelled to make their payments directly to the Chapter 7
trustee under § 542(b) of the Bankruptcy Code.  Those customers
and suppliers have not been made parties.  Even if Elite's
accounts payable are somehow property of the bankruptcy estate of
Carvalho, it is the chapter 7 trustee who has standing to sue to
compel payment to the trustee.

II

Of the remaining counts for which dismissal is sought,
Counts II through VII, Simu seeks a denial of discharge.  I
address first Count II.

Count II seeks denial of a discharge on the basis that
Carvalho "has concealed, destroyed, mutilated, falsified, or
failed to keep or preserve any recorded information, including
books, documents, records, and papers, from which her financial
condition or business transactions might be ascertained," Am.
Compl. ¶ 130 (parroting the opening language of 11 U.S.C.
§ 727(a)(3)) and that "[s]uch act(s) or failure to act were in no
way justified under all of the circumstances of the case," Am.
Compl. ¶ 132 (paraphrasing the concluding language of
§ 727(a)(3)).  Count II specifically alleges that such acts

5

include:

- "Carvalho's false tax returns and financial statements" (Am. Compl. ¶ 129);

- "Carvalho's false claims to this Court as to the value and ownership of Elite Insurance & Consulting Services, LLC and the value and ownership of her real property;" (Am. Compl. ¶ 130); and

- "the existence of the recorded Superior Court Judgment now perfected as a lien against her real property in the District of Columbia" (Am. Compl. ¶ 131).[4]

Paragraphs 130 and 131 do not support a denial of discharge under § 727(a)(3). Carvalho's falsely listing the value and ownership of Elite in her schedules and not listing Simu's putative judgment lien[5] do not support a claim that Carvalho "concealed, destroyed, mutilated, falsified, or failed to keep or preserve destroyed or concealed" records. *See Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir. 1987) (debtor's

---

[4]  This appears to be related to the allegation that "Carvalho falsely claimed to this Court in her Petition and attached schedules that Simu's judgment was an unsecured debt." Am. Compl. ¶ 75.

[5]  The debtor has asserted that no lien attached, by reason of recordation of the judgment in the land records, because her interest in the cooperative is represented by an ownership interest in shares in the cooperative. If the judgment *did* create a lien against Carvalho's interest in her cooperative apartment association, that lien has been avoided by the court as impairing Carvalho's exemptions.

failure to disclose in the statement of affairs that he
transferred an interest in a house to his wife did not constitute
a falsification of records from which his financial condition
might be ascertained). These parts of Count II must be
dismissed.

That leaves the allegation regarding Carvalho's false tax
returns and financial statements. Paragraph 33 of the Amended
Complaint alleges that on or about March 6, 2015, "Carvalho
tendered to Simu a materially false tax return and false
financial statements for Elite Insurance & Consulting Services,
LLC." Accordingly, the Amended Complaint can be read as alleging
that Carvalho falsified a tax return and financial statements for
a limited liability company in which she was one of two members.
"Most courts analyzing the issue have adopted a nuanced approach,
allowing business records from a closely related business to form
the basis for the denial of a debtor's individual discharge."
*In re Kandel*, No. 11-62597, 2015 WL 1207014, at *7 (Bankr. N.D.
Ohio Mar. 13, 2015) (citations omitted). Tax returns for a
corporation in which a debtor is a controlling shareholder are
among the records necessary to ascertain a debtor's financial
condition. *See In re Protos*, 322 F. App'x 930, 935 (11th Cir.
2009). Carvalho's conduct in falsifying Elite's tax return was
thus an act by which Carvalho "falsified . . . recorded
information, including books, documents, records, and papers,

7

from which her financial condition or business transactions might be ascertained." *See In re Frommann*, 153 B.R. 113, 118 (Bankr. E.D.N.Y. 1993) ("The fact that the Debtor admitted to falsifying the tax returns submitted to the Trustee further hinders his ability to ascertain her financial condition."); *Phillips v. Bourget (In re Bourget)*, 176 B.R. 25, 28 (Bankr. C.D. Cal. 1994) (debtor altered copies of invoices he presented to homeowners in several instances to show significantly higher amount than true charges due him). Accordingly, this part of Count II will not be dismissed.

### III

Count III seeks denial of a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) on the basis that:

> Carvalho, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed her property, within one year before the date of the filing of the petition.

Count III provides no indication what transfer Simu is referring to, although elsewhere in the Amended Complaint she alleges that on December 4, 2015, the day immediately following Simu's application for a charging order, Carvalho removed $6,500 and then $650 from Elite's bank account and transferred it to her personal account, with the intent to hinder and delay Simu's execution of her Superior Court judgment and to conceal

8

Carvalho's property.   Am. Compl. ¶¶ 45, 47–49.

The Amended Complaint similarly further alleges:

50. On December 9, 2015, Carvalho made a cashier's check from the funds of Elite Insurance & Consulting Services, LLC's bank account with Bank of America to herself in the amount of $6,000.

51. Carvalho had never previously used a cashier's check to receive money from the company.

52. The employment of the cashier's check was specifically intended to hinder and delay Simu's execution of her Superior Court judgment.

53. The employment of the cashier's check was specifically intended to conceal the money from Simu.

54. On that date, Carvalho deposited the cashier's check in an account she opened that day with Sandy Spring Bank, an obscure bank with no locations in the District of Columbia.

55. The employment of a bank with no locations in the District of Columbia was specifically intended to hinder and delay Simu's execution of her Superior Court judgment.

56. The employment of a bank with no locations in the District of Columbia was specifically intended to conceal Carvalho's property.

Carvalho argues that Elite's funds are not property of the Debtor and a transfer of funds by Elite does not fall within the reach of § 727(a)(2)(A), citing *Grochocinski v. Campbell (In re Campbell)*, 475 B.R. 622, 635 (Bankr. N.D. Ill. 2012). However, the funds became Carvalho's when she withdrew them from Elite's account. Placing such funds in a personal bank account generally would likely not be the type of transfer § 727(a)(2) has in mind: the bank account remains an asset in which the debtor retains

9

ownership.  However, imagine a debtor who transfers his funds to a secret bank account in Panama.  Such a transfer could qualify as a transfer made with the intent to hinder, delay, or defraud a creditor, and to conceal the funds, within the meaning of the statute.  Simu alleges that this was precisely what Carvalho intended to accomplish.  Even if the court views with some skepticism these allegations (because the personal account was apparently one located here in Carvalho's metropolitan area, and the deposit of the cashier's check into the Sandy Springs bank account, also located in Carvalho's metropolitan area, could be readily traced, and because Carvalho disclosed both accounts on the schedules filed with her petition in the same month as these alleged transfers), Simu is entitled to demonstrate that the necessary intent existed.

In addition, if the funds withdrawn by Carvalho were funds owed to her that would have been seized by an eventual charging order, the conversion of the funds owed to Carvalho into funds received with the intent of frustrating any forthcoming charging order might very well be a transfer (a change in the form of ownership from an account payable to funds received) done with the intent to hinder or delay Simu.

Count III will not be dismissed.

IV

Count IV seeks denial of a discharge on the basis of 11

U.S.C. § 727 (a)(2)(B), dealing with postpetition acts of a debtor regarding property of the estate, and alleges that Carvalho transferred $3,215 from Elite to herself after the case filing.  However, these allegations do not establish that the $3,215 arose from an account payable that was property of the estate.  A withdrawal of $3,215 on account of postpetition compensation would not be a basis for denial of a discharge under § 727(a)(2)(B) because it would not be a transfer of property of the estate.  I will dismiss Count IV.

V

Count V seeks denial of a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) on the basis that Carvalho knowingly and fraudulently made a false oath or account at the meeting of creditors in the bankruptcy case, specifically, false oaths as to (1) Carvalho's reason for opening the Sandy Springs Bank account; (2) her omission of assets and cash in her schedules; and (3) the fair market value of Elite.  It was held under the Bankruptcy Act that "the words of the statute requiring that the testimony be given 'knowingly and fraudulently' mean no more than an intentional untruth in a matter material to the issue which is itself material."  *In re Robinson*, 506 F.2d 1184, 1187 (2nd Cir. 1974) (citation omitted).  The term "fraudulently" also includes an intent element, namely, that the debtor intended to deceive creditors regarding a material matter.  *See In re Retz*, 606 F.3d

11

1189, 1198-99 (9th Cir. 2010).  However, an intent to deceive can be inferred from the circumstances of a case.  Count V passes muster:

(1)  As to the Sandy Springs Bank account, the requirement of materiality is satisfied here because the reason for opening the Sandy Springs account bears on a transaction that is alleged to be a basis for denying the debtor a discharge, and any knowingly false statement in that regard could be viewed in that circumstance as intended to deceive Simu into thinking there was a legitimate basis for the transaction.

(2) As to the omission of assets and cash, this relates to Carvalho's testimony that her schedules were accurate, and that she had accurately listed her assets.  As discussed with respect to Count VI, there are several alleged omissions on the schedules, and as to those that survive as a basis for relief in Count VI, the alleged false testimony that the schedules were accurate survives as a claim under Count V as well.

(3)  As to the value of Elite, that is obviously material, and Simu should be allowed to show that Elite had meaningful value, that Carvalho knew it had meaningful value, and that Carvalho knowingly falsely testified in that regard, with an intent to deceive the trustee.  Although an

12

intent to deceive is not specifically alleged, an intent to

deceive may be inferred from the circumstances, namely, that

the asset had meaningful value that the trustee would

administer for the benefit of creditors unless misled by the

debtor's false statement.

Count V will not be dismissed.

VI

Count VI seeks denial of a discharge pursuant to

§ 727(a)(4)(A) on the basis that Carvalho's petition, schedules,

and statement of financial affairs were knowingly and

fraudulently false.  First, Simu alleges that in her schedules

and statement of financial affairs:

(1) Carvalho omitted at least $5,950 in cash

demonstrated to be in her possession in the hours before

filing her petition;

(2) Carvalho further omitted her professional licenses;

(3) Carvalho misstated the nature of the debt to Simu;

(4) Carvalho grossly understated the fair market value

of Elite;

(5) Carvalho grossly understated her income;

(6) Carvalho grossly understated her total assets.

Carvalho further allegedly falsely asserted on her petition that

her bankruptcy was for a no asset estate.

### A. *The $5,950 in Cash*

As to the alleged omission of $5,950 in cash from the schedules, Carvalho argues she "did not have $5,950 in cash when she filed the case (having expended most of this money for attorneys' fees in connection with the filing)." The Amended Complaint fails to establish a false oath because it does not allege that Carvalho had $5,950 in cash when she filed her schedules.

### B. *The Professional Licenses*

That Carvalho omitted her professional licenses does not establish an intent to deceive. The Amended Complaint fails to articulate how the omission of the licenses from the schedules could have been intended to deceive creditors in some fashion regarding a material issue. There is no allegation that such licenses are property of the estate that could be sold by the bankruptcy trustee. Fraud must be alleged with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud."). I will dismiss this part of Count VI.

### C. *Listing Simu's Debt as Unsecured*

As to listing Simu's debt as unsecured, the Amended Complaint similarly fails adequately to plead an intent to mislead. This conclusion rests, first, on the possibility that the debt was actually unsecured.

14

This requires some lengthy explaining.  Under D.C. Code
§ 15-102(a), the recordation of a judgment "shall constitute a
lien on all the freehold and leasehold estates, legal and
equitable, of the defendants . . . in any land, tenements, or
hereditaments in the District of Columbia, whether the estates
are in possession or are reversions or remainders, vested or
contingent."  In moving to avoid any lien Simu had on Carvalho's
interest in her cooperative apartment, Carvalho argued that
"[t]here is nothing in D.C. law that specifically provides that
recording a judgment with the D.C. Recorder of Deeds creates a
lien upon a judgment debtor's interest in a cooperative, as
ownership in a cooperative is evidenced by a stock certificate,
not a deed," citing *First Savings Bank of Virginia v. Barclays
Bank, S.A.*, 618 A.2d 134 (D.C. 1992).  Indeed, as noted in that
decision, *State Tax Comm'n v. Shor*, 371 N.E.2d 523 (N.Y. 1977),
has held that in New York an interest in a cooperative is
personal property for which a judgment lien cannot be acquired by
docketing the judgment (the method in New York for obtaining a
judicial lien on realty).  However, *Barclays* only assumed,
without deciding, that an interest in a cooperative is personal
property, and then made clear that it is the leasehold interest
arising from an interest in a cooperative apartment organization
that should be deemed the debtor's property interest for purposes
of perfection of a security interest.  The court thus held, in

15

contrast to the New York law that prevailed when *Shor* was

decided, that the proprietary lease document was not a "security"

such as to permit perfection via taking possession of that

document: recordation of a financing statement would be required

if the debtor's interest in the cooperative apartment is personal

property subject to the strictures of the Uniform Commercial

Code.  Only a financing statement would give the world notice

that the debtor had granted a security interest in the debtor's

interest in the cooperative apartment.  Reading the tea leaves,

it may be predicted that the District of Columbia Court of

Appeals more likely would opt to treat the debtor's interest in a

cooperative apartment as a "leasehold estate[] in . . .

tenements" under  D.C. Code § 15-102(a) such that a judgment lien

could be obtained by recording the judgment in the land records:

as in the case of filing a financing statement, recording a

judgment in the land records would similarly give notice to the

world of the judgment creditor's judgment lien.  However, the

District of Columbia Court of Appeals could just as well treat

the interest as personal property and, as in *Shor*, require

execution to obtain a judgment lien.

Second, that circumstance of uncertainty as to whether a

judgment lien arose, as well as other circumstances, negate an

inference of an intent to deceive.  Carvalho disclosed Simu's

concluded Superior Court proceeding on her statement of financial

16

affairs and scheduled Simu as a creditor.  Simu was well aware

she had obtained a judgment and had recorded her judgment in the

land records.  The Amended Complaint fails to articulate how

Carvalho knew that a lien had in fact arisen when the law was

entirely unclear whether the recording of the judgment gave rise

to a judgment lien.  Listing the debt as unsecured, based on the

existence of a non-frivolous argument that no lien arose from

recordation of the judgment, could not be a basis for denying a

discharge.  In any event, the Amended Complaint fails to

articulate how the listing of Simu's claim as unsecured (even if

that was an incorrect listing) was made by Carvalho with an

intent to deceive.  The existence of a lien on property of the

estate would be adverse to creditors, and Simu was well aware

that she had recorded the judgment (and of the D.C. law regarding

recordation giving rise to a lien on real property).  How listing

Simu's debt as unsecured could have been intended to deceive the

trustee or creditors is a mystery.  The Amended Complaint flunks

the pleading requirements of Rule 9(b) because it fails to set

forth any circumstances from which it could be inferred that

there was an intent to deceive.  Accordingly, I will dismiss this

part of Count VI.

   D.  *Understating the Fair Market Value of Elite*

  As in the case of Count V's allegation of false testimony

regarding the value of the debtor's interest in Elite, a false

listing of the value of that interest also states a valid

§ 727(a)(4)(A) claim.

### E.  *Grossly Understating Income*

The Amended Complaint alleges:

67. Defendant Carvalho received at least $58,602.00 from Elite Insurance & Consulting Services, LLC Bank of America account in 2014.

68. In her petition, Defendant Carvalho falsely claimed to have only received $24,974.00 in gross income for 2014. ECF Docket # 1 at 37.

*     *     *

70. Defendant Carvalho received at least $73,169.16 from Elite Insurance & Consulting Services, LLC Bank of America account in 2015, $3,215.00 of which was post-petition.

71. In her petition, Defendant Carvalho falsely claimed to have only received $51,081.00 in gross income for 2015, up to the date the Petition filed on December 15. ECF Docket # 1 at 37.

These allegedly false statements were material to attaining a clear picture as to the debtor's financial affairs, and given the magnitude of the alleged discrepancy, an intent to deceive may be inferred. This part of Count VI will not be dismissed.[6]

### F.  *Grossly Understating Total Assets*

The Amended Complaint alleges that Carvalho falsely

---

[6] Paragraph 154 of the Amended Complaint alleges that "Carvalho further grossly understated her income in the schedules [sic] attached to her petition." However, Dkt. No. 1 at 37 in the bankruptcy case is part of Carvalho's statement of financial affairs, and paragraph 154 is deemed to be referring to the statement of financial affairs, not the debtor's schedules.

understated the value of her real property; falsely claimed that
she was not the sole owner of her real property; falsely omitted
the existence of her multiple professional insurance brokerage
licenses; falsely omitted the existence of business intangible
assets, including her client lists; and falsely claimed to only
possess $600 in cash at the time of her petition.  Am. Compl.
¶¶ 76, 77, 81, 82, and 83.  I take these to be the allegations
supporting the allegations in Count VI that Carvalho grossly
understated total assets, and did so knowingly and fraudulently.
Aside from the allegation regarding the failure to schedule
licenses, as to which no circumstances are pled showing an intent
to deceive, an intent to deceive may be inferred from Simu's
knowingly failing to list such assets, whose disclosure would be
pertinent to the trustee's decisions regarding what assets
existed that should be liquidated for the benefit of creditors.
Accordingly, these allegations relating to grossly understating
total assets, except for the allegation relating to failure to
schedule licenses, will survive the motion to dismiss.

Simu also alleges that Carvalho falsely omitted the
existence of debts owed to Elite; and falsely omitted the
existence of accounts receivable due to Elite.  Am. Compl.
¶¶ 79-80.  Those are not assets of Carvalho.  Moreover, the
Amended Complaint does not allege that these false statements
were made under oath and does not allege when the false

statements were made.  A review of her schedules and her
statement of financial affairs does not reveal that they
contained such statements.  Accordingly, that part of the Amended
Complaint must be dismissed.

G.  *Listing Case as a No Asset Estate*

Question 17 of the petition asked, "Do you estimate that
after any exempt property is excluded and administrative expenses
are paid that funds will be available to distribute to unsecured
creditors?"  Carvalho answered "No."  This was her estimate, for
what it was worth, and ought not serve as a basis for denial of a
discharge.  Even if the estimate was based on falsely omitting
assets from her schedules or falsely understating the value of
assets on her schedules, that does not change the fact that this
was represented to be Carvalho's estimate of what would happen in
the case.  At least at this juncture, what she estimated would
occur has occurred, as the bankruptcy trustee has filed a report
of no distribution in the bankruptcy case.  This part of Count VI
will be dismissed.

VII

Count VII seeks denial of a discharge pursuant to 11 U.S.C.
§§ 727(a)(2) and 727(a)(4) on the basis that Carvalho knowingly
and fraudulently in connection with the bankruptcy case withheld
from the bankruptcy trustee recorded information relating to her
property or financial affairs, specifically:

20

160.  This recorded information includes, but is not limited to Defendant Carvalho's financial statements, bank records, and tax returns.

161.  Defendant Carvalho has falsely misrepresented to the Trustee the value and ownership of Elite Insurance & Consulting Services, LLC.

162.  Defendant Carvalho has falsely misrepresented to the Trustee the existence of the recorded Superior Court Judgment now perfected as a lien against her real property in the District of Columbia.

163.  Defendant Carvalho has falsely omitted the existence of at least $5,950 in her possession immediately prior to filing the Petition.

Paragraphs 161 and 163 are duplicative of allegations made under other Counts and will be dismissed from Count VII. Paragraph 162 fails to state a claim under 11 U.S.C. § 727(a)(4)(D) because that provision applies only to withholding of "recorded information," and there is no allegation that the alleged misrepresentation was made under oath, or how such a misrepresentation was material.  Accordingly, paragraph 162 of Count VII will be dismissed.

That leaves only paragraph 160, the knowing and fraudulent failure to turn over Carvalho's financial statements, bank records, and tax returns.  If that indeed happened, paragraph 160 states a valid claim for a denial of discharge under § 727(a)(4)(D), and that part of Count VII will not be dismissed.

VIII

Carvalho's motion also seeks a more definite statement as to

21

Counts I, IX, and X, counts dealing with dischargeability of the
judgment claim.

A.

Before turning to each of those counts, I reject two
arguments Carvalho raises as to each of the counts.  First,
Carvalho erroneously contends that Simu cannot invoke § 523(a)(4)
or § 523(a)(6) as to the breach of contract claim and is limited
to invoking those provisions as to the part of the judgment that
was for the claim labeled a breach of fiduciary duty claim.  Simu
was not required to plead in the Superior Court that the breach
of contract was also a breach of fiduciary duty or a willful and
malicious infliction of injury, and the judgment is thus not
collateral estoppel barring her from establishing that the breach
of contract claim is nondischargeable on those bases.  *See Brown
v. Felsen*, 442 U.S. 127 (1979).  A creditor is not precluded from
establishing the nondischargeability of a state court judgment
which is not predicated on findings or a cause of action
establishing nondischargeability.  *Nahman v. Jacks (In re Jacks)*,
266 B.R. 728, 736 (B.A.P. 9th Cir. 2001).  *See also Archer v.
Warner*, 538 U.S. 314 (2003) (explaining that the underlying
nature of a debt is not intended to be determined in a proceeding
in which "nondischargeability concerns are not directly in issue
and neither party has a full incentive to litigate them"
(citation omitted)).

22

Second, Carvalho similarly erroneously contends that attorney's fees to be awarded cannot escape discharge.  If they are awarded for litigation of a claim that is nondischargeable, the fees are nondischargeable as well, as such fees are part of the nondischargeable debt.  *See Cohen v. de la Cruz*, 523 U.S. 213 (1998).

### B.

Count I invokes § 523(a)(4) as a basis for nondischargeability of Simu's judgment claim, alleging that:

> 121.  On or about March 6, 2015, and within one year before the filing of the petition herein, based on information and belief, Defendant Carvalho transferred, removed, destroyed, mutilated, and/or concealed certain of her property with the intent to hinder, delay, and/or defraud Simu, a creditor in this case.

> 122.  On or about that date, Defendant Carvalho tendered to Simu knowingly false federal tax return and financial statements, intending to under report the amount of income realized by Elite Insurance & Consulting Services, LLC and to defraud Simu of commission money due to her for the year 2014.

> 123.  Defendant Carvalho employed such false tax return to defend herself in the Superior Court trial.

> 124.  Defendant Carvalho employed the false tax return and financial statements to hide the existence of income of Elite Insurance & Consulting Services, LLC which could have aided in the damages calculation at trial.

> 125.  Defendant Carvalho employed the false tax return and financial statements to hide the existence of assets in her possession which could be seized in execution of Simu's judgment.

Count II already seeks a denial of discharge based on the

falsified financial statements and tax returns for Elite, and to the extent that Simu seeks a denial of discharge based on Count I, its allegations will be deemed to be part of Count II.

To the extent that Count I seeks a determination of nondischargeability under § 523(a)(4), I agree with Carvalho that she is entitled to a more definite statement. First, the alleged events in March 6, 2015, occurred after the complaint was filed in the Superior Court, and, absent more detail, these do not appear to be events giving rise to a claim included in the judgment award that Simu seeks to have declared nondischargeable.

Second, Count I may be relying on allegations preceding Count I and incorporated into Count I, specifically, the allegations that an LLC Member Control Agreement provided that Elite would not take any action requiring consent of the members without the consent of both Carvalho and Simu; that the Member Control Agreement provided that Elite would distribute fifty percent of the profits to each member; that Carvalho stopped providing Simu with regular reports on the finances of Elite; that Carvalho withheld commission payments due to Simu, stating that the money would be used to pay back the loan purportedly made to Elite by Carvalho's mother; that Carvalho later paid herself $3,250.00 from Elite's bank account, but still refused to pay Simu commission payments already due; and that Simu sued Carvalho for breach of the Elite Operating Agreement

24

and other contracts.  These allegations do not show that Simu's
judgment arose from "fraud or defalcation [of Carvalho] while
acting in a fiduciary capacity" within the meaning of 11 U.S.C.
§ 523(a)(4).[7]  Even if a less stringent line of decisions were
deemed controlling than those cited in the footnote, Simu at
least owes Carvalho a disclosure of what it is that she claims
constituted a fiduciary relationship, what acts constituted
"fraud or defalcation" while acting in that capacity; and what
damages flowed from that breach.  Only then can Carvalho
meaningfully address whether Simu's allegations establish a
nondischargeable claim under § 523(a)(4).

    This is obviously true regarding the portion of the judgment
for breach of contract.  Simu argues that as fully set forth in

---

    [7]  *See In re McKnew*, 270 B.R. 593, 630 (Bankr. E.D. Va.
2001) (liability for breach of fiduciary duty of a manager of a
Virginia LLC was dischargeable, reasoning that the Virginia LLC
statute did not impose a trust relationship, analogizing the
manager to a corporate officer or director, and reasoning that
"the imposition of a fiduciary relationship here would
unnecessarily stretch the long imposed restriction of limiting
such a relationship to an express or technical trust"); *Bd. of
Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*,
493 F.3d 635, 639–40 (6th Cir. 2007) ("The Sixth Circuit
construes the term 'fiduciary capacity' found in the defalcation
provision of § 523(a)(4) more narrowly than the term is used in
other circumstances. . . . [W]e [have] adopted a narrow
definition of the defalcation provision and held that it does not
apply to someone who merely fails to meet an obligation under a
common law fiduciary relationship.  Accordingly, the defalcation
provision applies to only those situations involving an express
or technical trust relationship arising from placement of a
specific res in the hands of the debtor." (citations and internal
quotation marks omitted)).

the Superior Court complaint, there was no cause of action for
breach of contract, which did not stand alone as breach of
fiduciary duty, but she fails to point to what facts pled in that
complaint show "fraud or defalcation [of Carvalho] while acting
in a fiduciary capacity" within the meaning of § 523(a)(4) a
breach of fiduciary duty   Moreover, Simu has not incorporated
the allegations of the Superior Court complaint as part of her
allegations in the instant complaint and the Superior Court
complaint's allegations cannot be taken as established facts.
The Superior Court complaint alleged a claim for breach of
contract, a claim that could be satisfied by Carvalho having
engaged in mere negligence, conduct that would not rise to the
level of "defalcation" within the meaning of § 523(a)(4) under
*Bullock v. BankChampaign*, N.A., 133 S.Ct. 1754 (2013).

Even as to the remaining claim adjudicated by the jury in
the Superior Court, that claim may have been labeled a breach of
fiduciary duty claim, but without more detail it is not evident
that the claim was for "fraud or defalcation [of Carvalho] while
acting in a fiduciary capacity" within the meaning of
§ 523(a)(4).  Simu alleged in the Superior Court that Carvalho
"owed the company and owners of the company, including the
Plaintiff, an undivided and unselfish loyalty to the corporation
such that there shall be no conflict between duty and self
interest," and that Carvalho "violated her duty to pay the equal

26

members of Elite Insurance & Consulting Services, LLC, by

withholding pay from the Plaintiff while paying herself, and

demanding the Plaintiff alone pay debts that were otherwise

incurred by the company."  She labeled these allegations as a

breach of fiduciary duty claim, but that label does establish

that § 523(a)(4) applies to the $3,250.00 award.  Even if the

jury found these allegations to be true, and awarded the

$3,250.00 on that basis, Simu has failed to cite any decision

establishing that such conduct establishes "fraud or defalcation

[of Carvalho] while acting in a fiduciary capacity" within the

meaning of § 523(a)(4).  The conduct may have been a tort of

breach of a duty of loyalty, if such a tort exists under District

of Columbia law, and such a tort may not have amounted to "fraud

or defalcation while acting in a fiduciary capacity."   When the

court is requiring the complaint to be amended otherwise, I

decline at this juncture to research that issue.  Because some

case law requires the existence of a technical trust in order for

§ 523(a)(4) to apply, I will require Simu to include as a more

definite statement any additional facts that she maintains

establishes that a technical trust existed.  Even if she fails to

include any such additional facts, Simu can attempt to provide

case law supporting her view that the conduct pled in the

Superior Court that led to the $3,250 award falls within

§ 523(a)(4) if Carvalho moves to dismiss the part of the

27

forthcoming amended complaint that deals with the $3,250.00 award.

Third, Count I seeks a determination that the Superior Court judgment is nondischargeable, not a determination that some other claim for breach of fiduciary duty is nondischargeable. Even if Simu is seeking to assert a new monetary claim (beyond her judgment claim), based on events arising after the complaint was filed in the Superior Court, Simu has not pled facts establishing:

- that Carvalho's conduct caused damage (as Simu does not allege that the jury was prevented from awarding the proper amount of damages for the conduct addressed by her complaint); or

- that Carvalho's conduct was a breach of a fiduciary duty to Simu (as opposed to a duty to Elite); or

- that the judgment award would not be res judicata with respect to any breach of contract that was addressed by the Superior Court complaint).[8]

---

[8]  Although the use of the false tax return and false financial statements could have affected the damages calculation, if believed by the jury, Simu acknowledges that claims Carvalho was advancing based on the false documents were demonstrated at the trial to be improper claims.  (Am. Compl. ¶ 36.)   The judgment fixed the amount of damages for breach of fiduciary duty (and for breach of contract) for the periods of time that were the subject of the Superior Court action.

C.

Count IX similarly is based on § 523(a)(4), and as in the case of Count I, Carvalho is entitled to a more definite statement.  Conclusory allegations that Carvalho owed Simu a fiduciary duty do not suffice.

D.

Count X invokes 11 U.S.C. § 523(a)(6), alleging that "Carvalho, acting as a fiduciary, willfully and intentionally converted and misappropriated funds belonging to Simu.  In doing so, Carvalho intentionally and maliciously harmed Simu and her property."  The judgment included an award of $3,250.00 for breach of fiduciary duty and a punitive damage award relating to that claim for breach of fiduciary duty.  Simu alleges that the award of punitive damages required (1) that Carvalho have acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of Simu, and (2) that Carvalho's conduct have been outrageous, grossly fraudulent, or reckless toward the safety of the Simu.  This suffices to state a claim for "willful and malicious injury" to Carvalho or her property within the meaning of § 523(a)(6) regarding the $3,250 award for breach of fiduciary duty, the related punitive damages award, and any attorney's fees that may be awarded for pursuit of the $3,250 award.

However, the Amended Complaint fails to allege facts showing

29

that the award for breach of contract was somehow based on

conduct that constituted "willful and malicious injury" to

Carvalho or her property.  Carvalho is entitled to a more

definite statement regarding that part of Count X.  When parties

enter into a contract it is in the context of contract law, which

recognizes that a party is free knowingly not to perform a

contract that proves disadvantageous for that party (absent an

order for specific performance), with the consequence being a

requirement of compensating the other party for losses resulting

from the breach.  Accordingly, a breach of contract is generally

not "malicious" in the context of contract law which contemplates

that a breach may occur subject to compensatory damage remedies.

The other party's contract rights are fully preserved despite the

breach, as the right to sue for damages remains in place, and

thus there cannot be any injury to the other party's property

(its contract rights).  Nor is there injury to the other party,

as it is only entitled to whatever rights it had under the

contract.  For these reasons, generally debts for breach of

contract, even an intentional breach of contract, are not

excepted from discharge under section 523(a)(6).  *See In re

Glatt*, 315 B.R. 501, 511 (Bankr. D.N.D. 2004), citing *Cutler v.

Lazzara (In re Lazzara)*, 287 B.R. 714, 722 (Bankr. N.D. Ill.

2002), and *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202,

1205 (9th Cir. 2001).  Simu must plead something more than just

breach of contract in order to show that the award for breach of
contract was for conduct that amounted to "willful and malicious
injury" to Simu or her property.

IX

In light of the foregoing, it is

ORDERED that the following portions of the Amended Complaint
are dismissed:

- Count II (except for the claim based on Carvalho's
  false tax returns and financial statements);

- Count IV;

- Count VI's claims relating to:

  ▸ failure to schedule the $5,950 in cash;

  ▸ Carvalho having omitted her professional licenses;

  ▸ Carvalho having misstated the nature of the debt
    to Simu;

  ▸ the parts of the claim that Carvalho grossly
    understated total assets that rely on Carvalho
    having omitted her professional licenses; having
    omitted the existence of debts owed to Elite; and
    having falsely omitted the existence of accounts
    receivable due to Elite; and

  ▸ the listing of the case as a no asset case.

- Count VII (except for the claim that Carvalho engaged n
  a knowing and fraudulent failure to turn over

31

Carvalho's financial statements, bank records, and tax returns).

- Counts VIII, XI, XII, XIII, XIV, and XV.

It is further

ORDERED that the motion to dismiss is otherwise denied. It is further

ORDERED that the defendant, Carvalho, is entitled to a more definite statement regarding Counts I and IX. It is further

ORDERED that except for the part of Count X dealing with the judgment for $3,250 (and punitive damages and attorney's fees relating thereto), the defendant, Carvalho, is entitled to a more definite statement regarding Count X. It is further

ORDERED that within 14 days after entry of this order, the plaintiff, Simu, shall file a second amended complaint eliminating the dismissed claims and setting forth the required more definite statements. It is further

ORDERED that the defendant, Carvalho, is excused from answering the current amended complaint and shall file an answer or otherwise respond to the forthcoming second amended complaint within 14 days after service of the same.

[Signed and dated above.]

Copies to: All counsel of record.