The document below is hereby signed.

Signed: November 15, 2016



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Case No. 15-00646 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| TEODORA AURELIANA SIMU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 16-10001 |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |
| Defendant. | ) | |

MEMORANDUM DECISION AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff filed a motion for summary judgment (Dkt. No.
7), the defendant filed an opposition (Dkt. No. 13), and the
plaintiff filed a reply thereto (Dkt. No. 14). The plaintiff
then filed a renewed motion for summary judgment (Dkt. No. 18),
the defendant filed an opposition thereto (Dkt. No. 23), and the
plaintiff filed a reply (Dkt. No. 24). For the reasons discussed

below, I will deny the plaintiff's motion for summary judgment, as renewed.

## I. FACTS

The following summary is derived from facts undisputed by the parties and from the record in this case.  In February 2010, the defendant debtor Sharra Neves Carvalho ("Carvalho") organized a District of Columbia Limited Liability Company named Elite Insurance & Consulting Services, LLC ("Elite").  On December 1, 2010, Carvalho officially brought in the plaintiff creditor, Teodora A. Simu ("Simu"), as a member of the LLC; both parties entered into an LLC Member Control Agreement.  Under the Member Control Agreement, the parties agreed, *inter alia*, that Elite would distribute fifty percent of the profits to each member.

In late 2013, Simu and Carvalho found themselves in substantial disagreement regarding the direction in which to take the LLC.  Simu expressed her intention to leave Elite, Carvalho expressed her intention to continue operating Elite after Simu's departure, and both parties began negotiating Carvalho's eventual buyout of Simu's share in Elite.  In early 2014, negotiations regarding the buyout and division of Elite clients between both parties fell apart.  In April 2014, Carvalho stopped providing Simu with regular reports on Elite's finances and informed Simu that she would be withholding all of Simu's commission payments in order to pay back a loan to Elite from Carvalho's mother.

Simu contended then and contends now that the loan was no longer outstanding.  In the same month, after Carvalho informed Simu that she would be withholding Simu's commission payments, Carvalho paid herself $3,250 in three installments.

On May 1, 2014, Simu notified Carvalho of her intent to resign as a member and manager of Elite.  On the same day, Simu filed a complaint against Carvalho in the Superior Court of the District of Columbia, requesting injunctive relief against Carvalho, applying for judicial dissolution of Elite, and requesting monetary damages for tortious interference with prospective economic advantage, breach of contract,[1] breach of fiduciary duty, defamation *per se*, and defamation *per quod*.  The complaint also included a request for punitive damages that did not specifically relate to any claim to the exclusion of others;

---

[1] There is insufficient information to support the conclusion that Simu's entire award against Carvalho in the Superior Court derived from Carvalho's breach of fiduciary duty, as Simu claims.  In her renewed motion for summary judgment, Simu asserts that her "sole claim for breach of contract was Carvalho's failure to turn over assets and proceeds" of Elite that belonged to Simu (Dkt. No. 18, at 3).  However, this is a mischaracterization of Simu's breach of contract claim.  In her Superior Court complaint, Simu alleged that Carvalho had breached the contract and violated the implied covenant of good faith and fair dealing by "intentionally and maliciously" interfering with Simu's express right to resign from Elite under Section 11 of the Operating Agreement, at which time Simu would have allegedly been entitled to a liquidation of the assets, and an accounting and distribution of Elite's net proceeds.  *See* Compl. ¶¶ 51-57. References in this Memorandum Decision to "Compl." are to the Superior Court Complaint, not to the complaint in this adversary proceeding.

Simu simply requested punitive damages as punishment for
Carvalho's "past reprehensible conduct" and as a method of
deterring future similar conduct by Carvalho.

At trial in October 2015, the Superior Court jury reached a
decision on all claims using a general verdict sheet and answered
the questions with its factual findings in the following order:

1) Carvalho violated the terms of her contract with Simu;

2) Simu was harmed by Carvalho's breach of the contract; and

3) Simu was entitled to $75,000 in monetary damages for that
harm caused by Carvalho's breach of contract.

4) Carvalho withheld Simu's share of a net profit, "in
violation of the governing documents of Elite Insurance and
Consulting, LLC (sic)";

5) Carvalho's "breach of a duty owed to plaintiff Teodora
Simu" caused her to suffer damages; and

6) Carvalho harmed Simu through her "breach of fiduciary
duty" in the amount of $3,250.

. . . .[2]

12) Simu proved by clear and convincing evidence that she
was entitled to be awarded punitive damages against Carvalho
and

13) Simu was entitled to $12,000 in punitive damages.

---

[2]  In response to questions seven through eleven, the jury
ruled on Simu's defamation claims, finding that Carvalho had
negligently published a letter in April 2014 with a false account
of the situation between Simu and Carvalho but Carvalho had not
acted with malice and Simu did not suffer any actual damage as a
result of the publishing of the letter and was therefore not
entitled to recover damages on that basis.

*See* Dkt. No. 18-2.  On October 27, 2015, the District of Columbia Superior Court accordingly entered judgment in favor of Simu against Carvalho in the amount of $90,250 plus interest.  Simu recorded this judgment with the District of Columbia Recorder of Deeds on October 29, 2015.

On December 2, 2015, the Superior Court denied Carvalho's motion to stay enforcement of Simu's judgment.  On December 3, 2015, Simu applied for a charging order against the proceeds of Elite and her application was uploaded to the Superior Court's electronic filing system.

Carvalho filed a voluntary petition for bankruptcy in this court on December 15, 2015.  In total, between December 2, 2015, and the day she filed her petition, Carvalho transferred $4,515[3] from Elite's Bank of America checking account into her own private Bank of America checking account.  She also withdrew a cashier's check in the amount of $6,000 in her name on December

---

[3]  This is comprised of multiple small transfers, including: $100 on December 2nd; $650 on December 4th; $250 on December 8th; $300 on December 14th; $1,415 on December 18th; $200 on December 21st; $100 on December 28th; and $1,500 on December 31st.

9th.[4]  In total, she transferred $10,515 from Elite's checking

account to her own personal accounts during the month of

December—approximately $4,000 more than she paid herself in both

October and November 2015 and almost $6,000 more than she paid

herself in September 2015.

## II. § 727(a) CLAIMS

Simu has requested this court to deny Carvalho a discharge

on either or both of two bases: 1) under 11 U.S.C.

§ 727(a)(2)(A), for transferring her property within one year of

the date of filing the bankruptcy petition "with intent to

hinder, delay, or defraud a creditor" and 2) under 11 U.S.C.

§ 727(a)(2)(A) for transferring property of the estate since

filing for bankruptcy "with intent to hinder, delay, or defraud"

a creditor or the trustee.

---

[4]  One transfer was a wash and is accordingly treated as
not a transfer.  On December 4, 2015, Carvalho transferred $6,500
from Elite's Bank of America checking account to her own private
Bank of America checking account.  Later the same day, Carvalho
returned the $6,500 to Elite's checking account and transferred
only $650 instead.  The $650 transfer is part of the $4,515 in
transfers recited in n.3, *supra*.  In both her original motion for
summary judgment and her renewed motion for summary judgment,
Simu claims that Carvalho withdrew $7,150 then returned $6,500.
This contention is contradicted by the bank records Simu provided
in Exhibit 14 of her renewed motion for summary judgment (Dkt.
No. 18-14, at 75-76).  In any event, Carvalho claims she
mistakenly transferred the first larger sum.  Five days later,
she issued herself the cashier's check for $6,000 from Elite's
Bank of America checking account, opened up a new personal bank
account at a different bank, Sandy Springs Bank, and deposited
the check there.  Simu asserts that this sequence of events
demonstrates Carvalho's attempt to conceal the large transfer of
money.

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A question of intent can rarely be disposed through summary judgment.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982).  Summary judgment is primarily suited for objective issues that are potentially dispositive as opposed to questions of a party's intent, "which frequently turn on credibility assessments."  *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998).  "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible to different interpretations by the trier of fact."  *See Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Simu has pled a substantial number of allegations in regards to transfers made by the debtor prior to and following the debtor's December 15, 2015 filing for bankruptcy.  She has also produced voluminous records of all bank transactions of both the debtor and Elite through December 2015.  However, because the question of the debtor's intent in making any or all of those transfers requires a factual determination, Simu's claims under

7

11 U.S.C. § 727(a)(2) will not be resolved through summary judgment at this time.

### III. § 523 CLAIMS

Simu has claimed that even if this court grants Carvalho a discharge, Carvalho's debt to Simu is excepted from discharge (1) under 11 U.S.C. § 523(a)(6), as a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[,]" and (2) under § 523(a)(4), as a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"

A. 11 U.S.C. § 523(a)(6) Claims

Nondischargeability is "a question of federal law independent of the issue of the validity of the underlying claim." *Grogan v. Garner*, 498 U.S. 279, 289 (1991). A creditor who seeks to demonstrate that his or her claim against the debtor is non-dischargeable pursuant to a § 523(a)(6) exception must do so by a preponderance of the evidence. *See id.* at 291. Statutory exemptions to a bankruptcy discharge should be narrowly construed. *In re Long*, 774 F.2d 875, 879 (8th Cir. 1985) (citations omitted). "The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

8

While different circuits have described the meaning of
"malice" for purposes of § 523(a)(6) using varied terminology and
standards, all seemingly require more than simply reckless acts
committed by the debtor.  A malicious injury for the purposes of
§ 523(a)(6) is one that was wrongful and without just cause or
excuse, even in the absence of personal hatred, spite, or ill-
will*.  See First Weber Group, Inc. v. Horsfall*, 738 F.3d 767 (7th
Cir. 2013); *Printy v. Dean Witter Reynolds, Inc. (In re Printy)*,
110 F.3d 853 (1st Cir. 1997)(same); *Hope v. Walker (In re
Walker)*, 48 F.3d 1161 (11th Cir. 1995) (same); *Sunoco Sales, Inc.
v. Latch (In re Latch)*, 820 F.2d 1163 (11th Cir. 1987)(same).

In Simu's Superior Court complaint, she alleged that
Carvalho committed breach of contract "knowingly" and
"intentionally."  Compl. ¶ 55.  Simu also alleged that Carvalho
"violated the implied covenant of good faith and fair dealing by
intentionally and maliciously interfering with [Simu's] exercise
of her express rights" under the Operating Agreement.  Compl.
¶ 56.  In regards to her breach of fiduciary duty claim, Simu did
not specify whether Carvalho's breach was intentional, knowing,
reckless, or negligent.  *See* Compl. ¶¶ 59-60.  In her request for
punitive damages in the Superior Court, Simu alleged that
Carvalho "has acted and continues to act, maliciously and
willfully or with such gross negligence as to indicate wanton
disregard of the rights of others by acts which include, but are

9

not limited to, intentionally interfering with [Simu's] business relationships."  Compl. ¶ 81.

Neither Simu nor Carvalho has provided the Bankruptcy Court with the jury instructions utilized in the Superior Court action that led to the judgment underlying this adversary proceeding. In the District of Columbia, a plaintiff claiming breach of contract by the defendant does not need to prove that the defendant committed the breach knowingly or intentionally.  *See* D.C. Std. Civ. Jury Instr. No. 11-17 ("Under the law, if one party, without legal excuse, fails to fully perform a duty owed under a contract, then that party has breached the contract.  If you find that [the defendant] breached the contract with [the plaintiff], then [the defendant] is liable to [plaintiff] for damages."); *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) ("To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.").

Similarly, for a claim of breach of fiduciary duty in the District of Columbia, a plaintiff does not need to demonstrate that the defendant committed the breach knowingly or intentionally.  *See Kemp v. Eiland*, 139 F.Supp.3d 329 (D.D.C. 2015) ("To make a legally cognizable claim of breach of fiduciary duty under District of Columbia law, a plaintiff 'must allege

10

facts sufficient to show (1) the existence of a fiduciary
relationship; (2) a breach of the duties associated with the
fiduciary relationship; and (3) injuries that were proximately
caused by the breach of the fiduciary duties.'") (citation
omitted).

In her renewed motion for summary judgment (Dkt. No. 18, at
29), Simu cites to the D.C. Standard Civil Jury Instructions
regarding punitive damages, which state:

> You may award punitive damages only if the plaintiff
> has proved with clear and convincing evidence:
>
> (1)that the defendant acted with evil motive, actual
> malice, deliberate violence or oppression, or with
> intent to injure, or in willful disregard for the
> rights of the plaintiff;
>
> AND
>
> (2)that the defendant's conduct itself was outrageous,
> grossly fraudulent, or reckless toward the safety of
> the plaintiff.

D.C. Std. Civ. Jury Instr. No. 16-1.  She also cites to D.C. case
law in which the D.C. Court of Appeals verified that the proper
standard for awarding punitive damages is that such damages may
be awarded if the plaintiff proves by clear and convincing
evidence that the defendant "acted with malice and with willful,
wanton or reckless disregard of the plaintiff's rights."  *See*
Dkt. No. 18, at 29 (quoting *Railan v. Katyal*, 766 A.2d 998, 1012-
13 (D.C. 2001)) (quotation marks omitted).

Importantly, these jury instructions and case law demonstrate that Simu could have recovered damages in the Superior Court because the jury found that Carvalho had acted recklessly.  Section 523(a)(6) explicitly requires Carvalho to have acted "willfully" in committing a breach of contract or a breach of fiduciary duty in order for such a breach to fall within the § 523(a)(6) exception to discharge.  Without access to the particular jury instructions used in Simu's D.C. Superior Court case against Carvalho, the Bankruptcy Court cannot assume that the jury made an explicit determination that any of Carvalho's actions, for which Simu was awarded damages, constituted a knowing or intentional infliction of injury, as is required under § 526(a)(6).  The Superior Court similarly may not have adjudicated the issue of whether Carvalho's acts constituted a malicious infliction of injury.  Moreover, there is an issue of law regarding whether a breach of contract is not malicious, but rather simply a party's strategic decision, as contemplated by contract law, not to perform under the contract and to instead swallow the cost of awarded damages.

Therefore, this court cannot grant Simu's motion for summary judgment in regards to her claim under § 523(a)(6) on res judicata or collateral estoppel grounds.  On the basis of the evidence provided in this proceeding, as previously noted, this court will not determine the question of Carvalho's intent in any

of Carvalho's alleged actions at the summary judgment stage of
these proceedings.  As such, Simu's motion for summary judgment
as to claims under § 523(a)(6) must be denied.

B. 11 U.S.C. § 523(a)(4) Claims

1. Summary Judgment Sought on Res Judicata or Collateral
   Estoppel Grounds

To the extent that Simu's motion under § 523(a)(4) relies on
the doctrine of res judicata or collateral estoppel, it must be
denied.  To establish a defalcation claim for purposes of
§ 523(a)(4), Simu must show that Carvalho intentionally or
recklessly breached a fiduciary duty; a negligent breach is not
sufficient.  *See Bullock v. Bank Champaign, N.A.*, 133 S.Ct. 1754,
1757 (2013) (holding that the term "defalcation" includes a
culpable state of mind requirement "involving knowledge of, or
gross recklessness in respect to, the improper nature of the
relevant fiduciary behavior").  As the Supreme Court held in
*Bullock v. Bank Champaign, N.A.*, 133 S. Ct. 1754, 1757 (2013),
the term "defalcation"

> requires an intentional wrong.  We include as intentional
> not only conduct that the fiduciary knows is improper but
> also reckless conduct of the kind that the criminal law
> often treats as the equivalent.  Thus, we include
> reckless conduct of the kind set forth in the Model Penal
> Code.  Where actual knowledge of wrongdoing is lacking,
> we consider conduct as equivalent if the fiduciary
> "consciously disregards" (or is willfully blind to) "a
> substantial and unjustifiable risk" that his conduct will
> turn out to violate a fiduciary duty.  That risk "must be
> of such a nature and degree that, considering the nature
> and purpose of the actor's conduct and the circumstances
> known to him, its disregard involves *a gross deviation*

13

from the standard of conduct that a law-abiding person
would observe in the actor's situation."

(emphasis in original)(citations omitted).

Because no jury instructions from the Superior Court
proceeding have been filed, this court is unaware of any explicit
finding regarding Carvalho's state of mind when she withheld pay
from Simu while continuing to pay herself. *See* Compl. ¶ 59
(basing the claim of breach of fiduciary duty on Carvalho
"withholding pay from the Plaintiff while paying herself, and
demanding the Plaintiff alone pay debts that were otherwise
incurred by the company"). Without any indication of how the
jury was instructed, this court cannot know if the jury made its
ruling based on a finding that Carvalho negligently committed a
breach of fiduciary duty. Therefore, the Superior Court jury's
finding of a breach of fiduciary duty does not suffice under
*Bullock* to show defalcation while acting in a fiduciary capacity
for § 523(a)(4) purposes.

  2. Summary Judgment Sought Based on the Evidence Proffered
     by Simu in This Proceeding

To the extent that Simu seeks summary judgment based upon
evidence attached to her motion, her motion again must be denied.
The evidence attached to the motion includes bank statements of
Elite and Carvalho that track transfers Carvalho has made to
herself from Elite's checking account, Elite's tax returns, a
valuation of Elite, Elite's financial statements, and various

14

copies of Superior Court proceedings.  Pursuant to *Bullock*, Simu

must establish that Carvalho was a fiduciary and that Carvalho

either knew that the failure to pay Simu was improper, or that

Carvalho acted recklessly with regard to whether her actions were

improper.  Viewed in the light most favorable to Carvalho, the

evidence proffered by Simu does not conclusively establish this.

Simu has only established that Carvalho knew she was failing to

pay Simu, not that Carvalho knew that failing to do so was

improper or that she was acting with reckless disregard for the

impropriety of such an action.  Simu cannot establish the

requisite culpable state of mind under *Bullock* via a motion

summary judgment; questions of intent must be left for trial.

Accordingly, Simu's motion must be denied.

3. The Issue of Fiduciary Capacity

In her renewed motion for summary judgment, Simu spent a

fair amount of effort addressing Carvalho's alleged role as a

fiduciary.  The past century has seen a clear circuit split

regarding what constitutes a fiduciary for the purposes of

§ 523(a)(4).  The Ninth and Tenth circuits have adopted a

restrictive approach and only find a fiduciary relationship in

cases involving a relationship with elements of a traditional

express trust, such as a trust res and a trustee.  *See Cal-Micro,*

*Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1126-27 (9th

Cir. 2003) ("California case law has consistently held that while

15

officers possess the fiduciary duties of an agent, they are not
trustees with regard to corporate assets."); *Ragsdale v. Haller
(In re Ragsdale)*, 780 F.2d 794, 796 (9th Cir. 1986)("California
has made all partners trustees over the assets of the
partnership[.]"); *In re Honkanen*, 446 B.R. 373, 381 (B.A.P. 9th
Cir. 2011) (finding no fiduciary capacity where the debtor did
not hold any property in trust because "[i]n the absence of a
trust res, a fundamental requirement to form a trust, there was
no express, technical or statutory trust formed"); *In re Seay*,
215 B.R. 780, 787 (B.A.P. 10th Cir. 1997) (finding no fiduciary
capacity because the plaintiff failed to prove the existence of
an express or technical trust and failed to even demonstrate the
existence of a trust res); *In re Hill*, 390 B.R. 407, 412 (B.A.P.
10th Cir. 2008) ("[T]he Corporation Act does not sufficiently and
explicitly create a trust or define a trust res[.]")

In contrast, the Second Circuit has adopted a broad approach
that does not require any traditional elements of express trusts
to find a fiduciary relationship under § 523(a)(4). *See Andy
Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183
F.3d 162, 169 (2d Cir. 1999) (finding that § 523(a)(4) does not
require a trust "in the modern sense of a legal relationship
where a party (the trustee) is the legal owner of property
beneficially held on behalf of others, but more generally of the
class of relationships in which special trust is bestowed upon a

party" and "certain relationships not constituting actual trusts
are within the defalcation exception").

The Seventh Circuit has adopted an approach whereby if the
defendant debtor was in an ascendant position based on his or her
knowledge or power, this could demonstrate fiduciary capacity
under § 523(a)(4). *See In re Frain*, 230 F.3d 1014, 1018 (7th
Cir. 2000) (holding the source of a debtor's fiduciary
relationship was his "substantial ascendancy" over two
shareholders). Finally, the Fourth and Fifth Circuits have
developed an analysis in which they look for trust-like duties
and focus on the amount of control the defendant debtor had. *See
FNFS, Ltd. V. Harwood (In re Harwood)*, 637 F.3d 615, 622 (5th
Cir. 2011) (holding that an officer who was entrusted with the
management of a limited partnership, and who exercised control
over the limited partnership, owed a fiduciary duty to the
partnership under § 523(a)(4)); *Airlines Reporting Corp. v.
Ellison (In re Ellison)*, 296 F.3d 266, 269 (4th Cir. 2002)
(holding that where the debtor, by the debtor's personal
decisions, failed to make required payments for a trustee
corporation while running its day-to-day operations, the debtor
had committed a breach of fiduciary duty); *Texas Lottery Comm'n
v. Tran (In re Tran)*, 151 F.3d 339, 345 (5th Cir. 1998) (looking
at whether the alleged fiduciary exercises actual control over
the alleged beneficiary's money or property").

17

Because there is insufficient information regarding how the Superior Court instructed the jury in regards to fiduciary status and because regardless there is insufficient evidence of intent or recklessness on Carvalho's part, this court does not need to resolve the existing circuit split at this time.  Simu's motion for summary judgment as to her claims under § 523(a)(4) must be denied.

## IV. Conclusion

It is therefore

ORDERED that the plaintiff's renewed motion for summary judgment (Dkt. No. 18) is DENIED.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.