The document below is hereby signed.

Signed: November 15, 2016



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                              )
                                   )
SHARRA NEVES CARVALHO,             )   Case No. 15-00646
                                   )   (Chapter 7)
            Debtor.                )
_____)
                                   )
TEODORA AURELIANA SIMU,            )
                                   )
            Plaintiff,             )
                                   )   Adversary Proceeding No.
       v.                          )   16-10001
                                   )
SHARRA NEVES CARVALHO,             )   Not for publication in
                                   )   West's Bankruptcy Reporter.
            Defendant.             )
```

MEMORANDUM DECISION AND ORDER
GRANTING IN PART AND DENYING IN PART
<u>PLAINTIFF'S MOTION FOR RECONSIDERATION</u>

On February 16, 2016, plaintiff creditor Simu filed an Amended Complaint seeking denial of a discharge for the defendant debtor, Carvalho, and seeking a determination that a judgment recovered by Simu in the Superior Court of the District of Columbia is nondischargeable (Dkt. No. 5). Carvalho moved to

dismiss Counts II through VIII and XI through XV, and requested a more definite statement regarding Counts I, IX, and X (Dkt. No. 10). Simu filed a timely opposition to Carvalho's motion (Dkt. No. 19). On May 13, 2016, this court issued a memorandum decision and order regarding Carvalho's motion to dismiss and for a more definite statement ordering, *inter alia*:

1. the dismissal of Count II (except for the claim based on Carvalho's alleged false tax returns and financial statements);

2. the dismissal of Count IV;

3. the dismissal of Count VI's claims relating to:

    a. Carvalho's failure to schedule the $5,950 in cash;

    b. Carvalho having omitted her professional licenses;

    c. Carvalho having misstated the nature of the debt to Simu;

    d. the claims that Carvalho grossly understated total assets that rely on Carvalho having omitting her professional licenses, having omitted the existence of debts owed to Elite, and having falsely omitted the existence of accounts receivable due to Elite; and

    e. Carvalho's listing of the case as a no asset case;

4. the dismissal of Count VII (except for the claim that Carvalho engaged in a knowing and fraudulent failure to turn over Carvalho's financial statements, bank records, and tax returns);

5. the dismissal of Counts VIII, XI, XII, XIII, XIV, and XV;

6. the furnishing of a more definite statement regarding Counts I and IX by Simu;

    7.    the furnishing of a more definite statement regarding Count X (except for the part of Count X dealing with the judgment for $3,250 and punitive damages and attorney's fees relating thereto); and

    8.    the filing of a Second Amended Complaint by Simu eliminating the dismissed claims and setting forth the required more definite statements.

(Dkt. No. 30). In response, Simu filed Second Amended Complaint (Dkt. No. 35) and a Motion for Reconsideration (Dkt. No. 34), requesting the court to reconsider its decision regarding:

    1.    the dismissal of Count VIII;

    2.    the dismissal of Count IV;

    3.    the dismissal of Count VI's claim in regards to the amount of money Carvalho possessed at the time of filing her bankruptcy petition; and

    4.    the court's direction for Simu to furnish a more definite statement regarding Counts I and X.

Carvalho filed an opposition to Simu's Motion for Reconsideration (Dkt. No. 38) and Simu filed a Reply thereto (Dkt. No. 39). I will address each request in turn.[1]

---

[1] Simu's Motion for Reconsideration included another section addressing "the trustee's indifference or acquiescence to [Carvalho's] fraud[.]" *See* Dkt. No. 34, at 11–12. This section is irrelevant to her request for reconsideration of specific findings by the court.

3

I

THE DISMISSAL OF COUNT VIII

In its Memorandum Decision and Order of May 13, 2016, this court dismissed Count VIII of Simu's Amended Complaint because the portions of that Count relating to claims under §§ 523(a)(4) and 523(a)(6) were already addressed elsewhere in the pleading (and therefore redundant) and the remaining portion of the Count, relating to a claim under § 523(a)(2), failed to state a claim upon which relief could be granted.  *See* Dkt. No. 30, at 2.  The ruling as to § 523(a)(2) was premised on the fact that Simu had not alleged that any false statement by Carvalho had actually induced her to part with money or property, as the court understood a claim under § 523(a)(2) to require.  *See id.* at 2-3.

However, the court acknowledged that, in *In re Collazo*, No. 15-2324, 2016 WL 1358459, at *5 (7th Cir. Apr. 5, 2016), the Seventh Circuit had ruled that an individual debtor's transfer of some of an LLC's valuable property to other LLCs he owned to protect the property from the reach of creditors gave rise to a debt that fell within the fraud exception to a discharge in bankruptcy.  *See* Dkt. No. 30, at 3 n.1.  The court noted that a case argued before the U.S. Supreme Court and pending resolution, *Husky Int'l Elecs., Inc.* v. *Ritz*, specifically addressed the issue of whether there could be fraud without a fraudulent statement.  *See id*.  If Simu was advancing a similar theory in

4

this case, the court stated, the court could reexamine and potentially set aside its dismissal of Count VIII once the *Husky* decision was announced if it was in agreement with *In re Collazo*. *See id.*

On May 16, 2016, the Supreme Court issued its decision in *Husky*. *See Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581 (2016). In *Husky*, the debtor was accused of transferring large sums of money over the course of two years from one company he controlled, which had incurred substantial debt, to other entities the debtor controlled. *Id.* at 1585. A creditor of the company sought to obtain repayment of $163,999.38 against the debtor personally, claiming the debtor had transferred the money in an act of "actual fraud" and, seven months later, the debtor filed for bankruptcy. *Id.* The bankruptcy court, the district court, and the Fifth Circuit permitted the discharge of the $163,999.38 debt over the objections of the creditor, holding that the facts alleged did not constitute "actual fraud" for the purposes of a § 523(a)(2)(A)'s exemption from discharge because there was no misrepresentation from the debtor to the creditor. *Id.*

The Supreme Court reversed the Fifth Circuit's decision, holding that "the term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at

1586.  The Supreme Court noted that even though fraudulent conveyances are not inducement-based and are instead rooted in "acts of concealment and hindrance," they nevertheless fall within the bounds of the § 523(a)(2)(A) "actual fraud" exemption from discharge.  *Id.* at 1587.

In this case, Simu claims that Carvalho furnished a false tax return to Simu during the Superior Court litigation in hopes of lowering the judgment against her and these acts should render the Superior Court judgment for Simu nondischargeable under § 523(a)(2)(A).  *See* Dkt. No. 34, at 4-6.  This being Simu's claim under Count VIII of her Amended Complaint, the Supreme Court's decision in *Husky* does nothing to salvage it.  Simu's claim in Count VIII is unlike that in *Husky* because in this case nothing was obtained through any kind of fraudulent act.  Even assuming that Simu's allegations are true (as this court should when reviewing Carvalho's motion to dismiss) and Carvalho really did furnish false tax returns and financial documentation, neither Carvalho nor any other person or entity obtained any "money, property, services, or an extension, renewal, or refinancing of credit," as required to support a § 523(a)(2)(A) claim.  *See In re Taylor*, 551 B.R. 506, 517-18 (Bankr. M.D. Ala. 2016) (relying on the Supreme Court's decision in *Husky* and other case law to emphasize the "obtained by" requirement and dismiss a § 523(a)(2) claim due to the plaintiffs' failure to allege how

the defendant obtained a benefit by furnishing a false financial statement). Even if Carvalho was able to obtain "a windfall in the form of a lesser judgment" (Dkt. No. 34, at 3) in the Superior Court litigation through her use of falsified financial documents, that windfall would not constitute money or property obtained. In her Amended Complaint, Simu does not set forth any allegations regarding money or property obtained by Carvalho or Elite or any third party as a result of Carvalho's alleged furnishing of a false tax return. Because a § 523(a)(2)(A) claim requires such an allegation, this court declines to reinstate Count VIII of Simu's Amended Complaint.

II

THE DISMISSAL OF COUNT IV

In its May 13, 2016 Memorandum Decision, this court dismissed Count IV of Simu's Amended Complaint, holding that Carvalho's withdrawal of $3,215 in post-petition compensation did not qualify as a transfer of property of the bankruptcy estate justifying denial of a discharge under § 727(a)(2)(B). *See* Dkt. No. 30, at 11. In her Motion for Reconsideration, Simu questions this ruling at great length, citing the profit-sharing arrangement embodied in Elite's Operating Agreement, applicable case law, and the D.C. Code. *See* Dkt. No. 34, at 6-12.

Federal bankruptcy law determines the extent to which a debtor's property interest becomes property of the estate. *See*

*Parks v. FIA Card Svcs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008).  The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

When a member of an LLC files for bankruptcy, "[t]here is no question that the economic rights [of that member], that is the membership interest, becomes property of the estate."  *Spain v. Williams*, 455 B.R. 485, 502 (Bankr. E.D. Va. 2011) (quoting *In re Garrison-Ashburn, L.C.*, 253 B.R. 700, 707 (Bankr. E.D. Va. 2000); *see also In re Albright*, 291 B.R. 538, 540 (Bankr. D. Colo. 2003) (ruling that when the sole member and manager of an LLC files for bankruptcy, he or she transfers his or her membership interest to the bankruptcy estate).  The *In re Albright* court determined that, in light of relevant statutes from the Colorado LLC Act, the debtor's bankruptcy filing had the effect of assigning her 100% membership interest in the LLC to the bankruptcy estate.  *See id.* at 539.  As a result, the chapter 7 trustee obtained all of the debtor's rights, including both economic rights (the right to receive distributions) and management rights.  *Id.* at 540.

The right of a chapter 7 trustee to manage an LCC solely owned and operated by an individual debtor is not the matter currently before this court; at issue is whether, after a debtor files for bankruptcy, the debtor's economic right to receive profit distributions from an LLC belongs to the debtor or to the

bankruptcy estate.  In the District of Columbia, a transferable interest in an LLC is considered personal property.  D.C. Code § 29-805.01.  Once such an interest is transferred, the "transferee shall have the right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled."  D.C. Code § 29-805.02(b).  The chapter of the D.C. Code governing LLCs includes in the definition of "distributions" transfers of money from the LLC to another person in their capacity as a member or as a person with a transferable interest. *See* D.C. Code § 29-801.02(3).  However, the term "distributions" does not include "reasonable compensation for present or past services or payments made in the ordinary course of business under a bona fide retirement plan or other bona fide benefits program."  D.C. Code § 29-801.02(3)(B).

    The debtor in this case, Carvalho, is the sole member and manager of Elite Management Consulting Services, LLC ("Elite"), a D.C. limited liability company.  The LLC is not a debtor in bankruptcy.  Simu argues that, under the terms of the Operating Agreement, Carvalho's monthly transfers of money from Elite's account to Carvalho's private account were not in the form of compensation for employment but rather in the form of profit distributions.  Under provisions of the D.C. Code relating to limited liability companies, as a member, Carvalho had the right to receive distributions if the company elected to make such

distributions.  *See* D.C. Code § 29-804.04.  Under the terms of the Operating Agreement, Elite must distribute 50% of the profits to every member every year as well as 30% of Elite's taxable income, distributed to each member in proportion to the taxable income reportable in each member's federal tax return.  *See* LLC Member Control Agreement ¶ 3 (Dkt. No. 23-4, at 2).

Before she filed for bankruptcy, as the sole member and manager of Elite, Carvalho had the right to give herself distributions from the Elite's profits in accordance with these provisions.  However, after she filed her chapter 7 petition, her rights changed.  The bankruptcy estate is "entitled to receive the share of profits or other compensation by way of income and the return of contributions to which that member would otherwise be entitled."  *In re Albright*, 291 B.R. at 540 n.7.  At the very least, without considering whether management rights passed from Carvalho to the chapter 7 trustee, any profit distributions from Elite that would have otherwise gone to Carvalho belonged to the bankruptcy estate after Carvalho filed her chapter 7 petition.

Therefore, as a matter of law, Simu may bring a claim for denial of discharge supported by allegations that Carvalho made post-petition transfers of money from Elite's checking account to her own personal account and that such transfers constituted a transfer of property of the bankruptcy estate for the purposes of § 727(a)(2)(B).  Whether the money Carvalho transferred to

10

herself were distributions in fact belonging to the bankruptcy estate is a factual dispute that will be resolved at a later date.  For now, after reconsidering this court's prior dismissal of Count IV of the Amended Complaint and reviewing applicable laws, this Court will allow Simu to assert her claim for denial of discharge under § 727(a)(2)(B) in her next Amended Complaint.

III

DISMISSAL OF COUNT VI ALLEGATIONS REGARDING THE AMOUNT OF MONEY CARVALHO POSSESSED AT THE TIME OF FILING FOR BANKRUPTCY

In Count VI of her Amended Complaint, Simu sought a discharge pursuant to § 727(a)(4)(A) on the basis that Carvalho's petition, schedules, and statement of financial affairs were knowingly and fraudulently false.  One of the claims within Count VI was that, in her petition and its attachments, Carvalho "omitted at least $5,950 in cash demonstrated to be in her possession in the hours before the petition was filed."  *See* Dkt. No. 5, at ¶ 150.  Earlier in the Amended Complaint, before listing the many Counts brought against Carvalho, Simu wrote: "Defendant Carvalho possessed at least $5,950 in cash at the time of her petition."  *Id*. at ¶ 84.

In her petition and its attachments, Carvalho was asked how much money she had at the time of filing the petition—not hours beforehand.  Simu demonstrated that Carvalho did in fact have that amount of money hours prior to filing the petition but Carvalho demonstrated that she spent the majority of that amount

11

prior to coming to court to file the petition. Simu's allegation that Carvalho had that money hours prior to filing her petition in no way alleges that Carvalho had that money when filing the petition. Therefore, Simu's claim was properly dismissed. Moreover, in her Motion for Reconsideration, Simu has not given adequate justification for the court to alter its ruling on this issue. As such, Simu's motion for the court to reconsider its dismissal of the Count VI allegations regarding the amount of money Carvalho possessed at the time she filed for bankruptcy is denied.

IV

THE COURT'S INSTRUCTION FOR A MORE DEFINITE STATEMENT
REGARDING COUNTS I AND X

Simu was instructed to provide a more definite statement regarding Counts I and X of her Amended Complaint because there was insufficient information provided to allow Carvalho to understand those counts and defend herself against the claims contained therein.

A. Count I

In Count I of Simu's Amended Complaint, which presented a claim under 11 U.S.C. § 523(a)(4), the allegations were insufficient to demonstrate that the entirety of the Superior Court judgment derived from "fraud or defalcation [of Carvalho] while acting in a fiduciary capacity[,]" as the discharge exemption in that statute requires. As this court stated in its

May 13, 2016 Memorandum Decision, Carvalho has a right to know Simu's basis for claiming the existence of a fiduciary relationship, which of Carvalho's actions taken in that fiduciary capacity Simu alleges constituted "fraud or defalcation," and what damages to Simu flowed from Carvalho's alleged breach. *See* Dkt. No. 30, at 25.  Without that information, Carvalho would not truly be able to evaluate and address whether Simu's allegations establish a valid claim for nondischargeability under § 523(a)(4).  *See id.*  A more definite statement for this claim is especially vital considering the circuit split regarding what constitutes a "fiduciary capacity" for the purposes of § 523(a)(4), as discussed in this court's May 13, 2015 Memorandum Decision.  *See id.* at 25-28 & 25 n.7.  Simu has not provided sufficient justification for this court to alter its directive for a more definite statement of her claims related to Count I of her Amended Complaint; for that reason, Simu's request for reconsideration of that instruction is denied.

    B. Count X

    Similarly, in Count X of her Amended Complaint, Simu outlined a claim under 11 U.S.C. § 523(a)(6) that alleged Carvalo's role as a fiduciary and argued that Carvalho, acting in that role, "willfully and intentionally converted and misappropriated funds belonging to Simu. . . . harm[ing] Simu and her property."  *See* Dkt. No. 5, at 23.  In her Motion for

Reconsideration, Simu claims that, in her Amended Complaint, she sufficiently pled Carvalho's role as a fiduciary and that Simu's breach of contract award in the Superior Court was premised on a breach of fiduciary duty claim. *See* Dkt. No. 34, at 14-16. Specifically, Simu argues that the terms of Elite's Operating Agreement plainly demonstrate the existence of Carvalho's fiduciary duty to Simu in the disbursement of Elite's funds. *Id.* At 14. Simu avers:

> It is this violation of the contractual relationship that Simu sued Carvalho for relief and that contractual violation was Carvalho's acting in her own self interest to the detriment of Simu in Carvalho's handling of the company's finances. There was no other breach of contract action between them in the Superior Court lawsuit. Counts I and X require no further definite statement in this regard.

*Id.*

As a preliminary matter, Simu's statement in this regard appears to mischaracterize her breach of contract claim in the Superior Court Complaint, which is an attachment to Simu's original complaint in this adversary proceeding. In her Superior Court Complaint, Simu alleged that Carvalho had breached the contract and violated the implied covenant of good faith and fair dealing by "intentionally and maliciously" interfering with Simu's express right to resign from Elite under Section 11 of the Operating Agreement, at which time Simu would have allegedly been entitled to a liquidation of the assets, and an accounting and

distribution of Elite's net proceeds. See Compl. ¶¶ 51-57.[2] There is a noticeable difference between the breach of contract claim Simu asserted in the Superior Court and the one she asserts now in this court. In the Superior Court Complaint, Simu's breach of contract claim relied on the allegation that Carvalho would not comply with the terms of the Operating Agreement in regards to the rights of a dissociating member. Now, Simu argues that her breach of contract claim was entirely based on Carvalho's alleged self-interested mismanagement of Elite's funds.

However, this difference is not at the heart of this court's instruction to Simu to provide a more definite statement regarding Count X of her Amended Complaint. This court articulated in its May 13, 2016 Memorandum Decision why a more definite statement in regards to Count X was necessary: Simu failed to allege facts in her Amended Complaint that demonstrated that the Superior Court award for breach of contract was based on conduct that constituted "willful and malicious injury" to Simu or her property, as § 523(a)(6) explicitly requires. See Dkt. No. 30, at 29-30. As such, Carvalho was entitled to a more definite statement regarding that portion of Count X. Especially in light of the wealth of case law demonstrating that debts for

---

[2] "Compl." refers to Simu's Complaint in the Superior Court proceeding, not her original complaint in this adversary proceeding.

breach of contract are generally not excepted from being discharged under § 523(a)(6), see Dkt. No. 30 at 30, Simu was properly required to provide a more definite statement to demonstrate that the Superior Court award for breach of contract was for conduct that amounted to "willful and malicious injury" to Simu or her property.

V.

CONCLUSION

Accordingly, it is

ORDERED that Count IV of the plaintiff's Amended Complaint shall be reinstated. It is further

ORDERED that the remainder of the plaintiff's Motion for Reconsideration (Dkt. No. 34) is DENIED. It is further

ORDERED that within 7 days of entry of this order, the plaintiff, Simu, shall file a third amended complaint complying with this Memorandum Decision and Order as well as this court's *Order Regarding Debtor's Motion to Strike Portions of Creditor's Second Amended Complaint*.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.