The document below is hereby signed.

Signed: May 5, 2017



_S. Martin Teel, Jr._
_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Case No. 15-00646 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| TEODORA AURELIANA SIMU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 16-10001 |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |
| Defendant. | ) | |

MEMORANDUM DECISION AND ORDER
<u>REGARDING THE DEBTOR'S DESIGNATION OF MARC ALBERT AS AN EXPERT</u>

This adversary proceeding was initiated by the plaintiff, Teodora Aureliana Simu, against the debtor-defendant, Sharra Neves Carvalho, in an attempt to persuade the court to either deny Carvalho a discharge in full or declare Carvalho's debt to Simu nondischargeable. As reflected in the original scheduling

order governing this adversary proceeding (Dkt. No. 33), both Simu and Carvalho agreed to disclose experts on which they intend to rely for issues on which they bear the burden of proof by August 5, 2016.  The parties also agreed to then disclose rebuttal experts by August 19, 2016.

On August 5, 2016, Carvalho filed a designation of Marc E. Albert as an expert witness.  *See* Dkt. No. 45.  Carvalho noted that "Mr. Albert is expected to testify concerning matters including the reasonableness of the values placed on the schedules of the debtor's assets, the Debtor's alleged prepetition transfers, and other matters relating to the Plaintiff's objection to discharge claims."  *See* Dkt. No. 45, at ¶ 3.  Carvalho acknowledged that Mr. Albert had not yet prepared a report and wrote that if Mr. Albert chose to prepare one she would forward it to Simu promptly.  *Id*. at ¶ 4.  Mr. Albert did in fact ultimately prepare a report and Carvalho filed and served that report on Simu on September 22, 2016.  *See* Dkt. Nos. 58 & 58-1.

On November 6, 2016, Simu filed a motion in limine to exclude Albert's testimony, essentially arguing two points: 1) that Carvalho had failed to give Simu timely notice of Albert's opinions and qualifications, and 2) that Albert's expected testimony, based upon the representations reflected in his report, do not meet the standards of admissibility of expert

testimony established by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See* Dkt. No. 69. On November 23, 2016, Carvalho filed a response supporting her expert designation of Marc Albert, arguing that her designation was timely and the testimony Albert intends to offer is admissible under *Daubert*. *See* Dkt. No. 85.

After the court reinstated Count IV of the plaintiff's amended complaint and extended discovery therefor, the defendant filed an additional designation (Dkt. No. 117) naming Marc Albert as an expert witness in regards to Simu's Count IV claim that Carvalho's post-petition transfers of money to herself from Elite's bank account justifies denial of a discharge under § 727(a)(2)(B). In response, Simu filed a motion (Dkt. No. 145) to exclude Albert's testimony in regards to Simu's Count IV claim, claiming that Mr. Albert had never disclosed his opinion in regards to that count of the Third Amended Complaint and that any report by Albert as to his opinion regarding Count IV was filed in an untimely manner without leave of the court. In the same motion, the plaintiff renewed her objections to the rest of Albert's proposed testimony that had already been addressed in the plaintiff's first motion in limine to exclude his testimony. For the reasons and in the manner delineated below, this court will limit Albert's expert testimony.

I

TIMELINESS

The original scheduling order for this adversary proceeding addressed the disclosure of expert witnesses, stating: "Unless otherwise ordered, the disclosure under Fed. R. Civ. P. 26(a)(2) of experts and the furnishing of the expert's written report, if any, shall be made no later than **August 5, 2016**, for any experts opining on issues on which a party bears the burden of proof . . . . A written report need not be furnished if the expert has not created a written report."  *See* Dkt. No. 33, at ¶ 4.

It is an undisputed fact that Carvalho did designate Albert as an expert witness in a timely fashion, on August 5, 2016.  *See* Dkt. No. 45.  However, Simu takes issue with Carvalho's failure to provide a written report detailing Albert's expected testimony.

While Simu acknowledges that the language of the scheduling order excuses parties from furnishing written reports if designated expert witnesses have not drafted any, Simu asserts that the language of the scheduling order is overridden by Fed. R. Civ. P. 26(a)(2)(B), which requires parties to furnish written reports along with their expert designations.  *See* Dkt. No. 69, at 20.  However, she cites that Rule only partially, implying an unshakeable principle.  In contrast, in pertinent part, the precise language of Fed. R. Civ. P. 26(a)(2)(B) states: "*Unless*

4

*otherwise stipulated or ordered by the court*, this disclosure [of an expert witness] must be accompanied by a written report-- prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case[.]" As evidenced by the original scheduling order, the court ordered in this case that reports did not need to be furnished along with the expert designations if witnesses had not prepared such reports. Thus, Carvalho's designation of Marc Albert did not violate Fed. R. Civ. P. 26 on that ground.

On the topic of the adequacy of the time Simu had to respond to Carvalho's designation of Marc Albert as an expert witness, Simu cites to cases that emphasize the utility of expert witness' reports as providing opposing parties a reasonable opportunity to compose effective cross examinations and make arrangements to employ rebuttal witnesses if necessary. *See id.* at 19-20 (citations omitted).

Notably, the circumstances of the patent case cited by Simu, *Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377 (Fed. Cir. 2013), differ substantially from the case at hand. In *Rembrandt*, an expert witness had furnished a report six months before trial and the contents thereof were discussed in a deposition as well as in pre-trial briefing and dispositive motions; then, while under cross-examination at trial, the expert testified about a

5

previously undisclosed testing methodology he claimed to have employed. *See id.* at 1381-82. The Court of Appeals for the Federal Circuit affirmed the district court's exclusion of the expert's trial testimony, noting that the failure to disclose the testing methodology in advance had no substantial justification in the record and surely harmed the opposing party. *Id.* at 1382.

In this case, Simu was well aware of the general topics about which Albert planned to testify, as Carvalho disclosed that information in the expert designation on August 5, 2016. *See* Dkt. No. 45, at ¶ 3 ("Mr. Albert is expected to testify concerning matters including the reasonableness of the values placed on the schedules of the debtor's assets, the Debtor's alleged prepetition transfers, and other matters relating to the Plaintiff's objection to discharge claims."). As the parties agreed and established at the scheduling conference on May 16, 2016, after the designation was filed and served, Simu then had two weeks to schedule a rebuttal witness on those topics and had more than a month within which to schedule and hold a deposition of Albert that would allow her to better develop and effective cross examination at trial. *See* Dkt. No. 33, at 1-2. Even disregarding the fact that Simu agreed to these terms at the May 16, 2016 scheduling conference, this court viewed the schedule as reasonable when it issued the scheduling order on May 24, 2016. Furthermore, the discovery deadlines have been extended, giving

Simu an even greater chance to prepare for Albert's testimony at trial.  Thus, Simu has had an adequate amount of time to develop an effective cross-examination and retain a rebuttal witness if she so desired.  Neither the designation (Dkt. No. 45) of Albert as an expert witness nor the furnishing of his report (Dkt. No. 58-1) was untimely and the portion of Simu's motion in limine (Dkt. No. 69) based thereon is denied.

Similarly, Simu's objections to the timeliness of Carvalho's designation of Albert as an expert witness regarding Count IV of the Third Amended Complaint and the failure to provide a report must be denied.  According to the scheduling order entered by the court extending discovery related to Count IV, the parties had to disclose experts related to Count IV of the Third Amended Complaint by February 27, 2017.  *See* Dkt. No. 112.  Carvalho designated Marc Albert as an expert witness regarding Count IV of the Third Amended Complaint on that date.  *See* Dkt. No. 117.  According to the terms of the applicable scheduling order for Count IV (Dkt. No. 112) the court ordered that a report did not need to be furnished along with an expert designation if the witness had not prepared such a report.  Thus, Carvalho's designation of Marc Albert as an expert for Count IV of the Third Amended Complaint did not violate Fed. R. Civ. P. 26 on the ground that no report was attached to the designation.

In Carvalho's designation of Marc Albert as an expert for Count IV of the Third Amended Complaint, she writes that "Mr. Albert is expected to offer opinion testimony that the Debtor acted reasonably and in keeping with common practice in bankruptcy proceedings by continuing to operate her business and receive income from the business after the filing of the case." Dkt. No. 117, at 2. After the designation February 27, 2017, Simu had a full month of discovery remaining during which she could learn more about Albert's opinions related to Count IV. *See* Dkt. No. 112 (setting the date for the close of discovery as March 27, 2017).

Moreover, Albert's testimony on this subject relates directly to the elements which Simu must prove in order to prevail on her Count IV claim. Simu was well aware that the issue of the reasonableness and propriety of Carvalho's post-petition transfers would be a matter raised and disputed at trial. For these reasons, Carvalho's designation of Marc Albert as an expert related to Count IV of the Third Amended Complaint on the subject of the reasonableness of Carvalho's continued operation of and receipt of income from Elite post-petition and whether that comports with common practice in bankruptcy proceedings will not be denied based on timeliness.

II

ADMISSIBILITY

It is undisputed that Albert has a wealth of relevant experience that qualifies him as an expert witness in this case. The subject under dispute is whether the testimony Carvalho seeks to elicit from Albert is admissible expert testimony.

Federal Rule of Evidence 702 establishes the basic standard for expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial court has a gatekeeping duty to determine whether the testimony of a potential expert witness satisfies the standard embodied in Federal Rule of Evidence 702 and must ensure that the opinion offered by the expert is both admissible and reliable. *See Daubert*, 509 U.S. at 592-93l; *Burkhart v. WMATA*, 112 F.3d 1207, 1211 (D.C. Cir. 1997) *Alberts v. HCA Inc., et al. (In re Se. Cmty. Hosp. Corp., I.*), 2007 WL 7230958, at *1 (Bankr. D.D.C. Jan. 3, 2007) (citations omitted). However, the exclusion of expert testimony is the exception rather than the rule and "the court's role as a gatekeeper is not intended to serve as a

replacement for the adversary system." *Alberts v. HCA Inc., (In re Se. Cmty. Hosp. Corp., I.)*, No. 04-10366, 2007 WL 7230958, at *1 (citation and internal quotation marks omitted).

The Supreme Court elaborated the admissibility of expert testimony under Federal Rule of Evidence 702 in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  In *Daubert*, the Supreme Court stated that, under Rule 702, "the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  *Id.* at 592, *cited in United States v. Jones*, 918 F.Supp.2d 1, 4 (D.D.C. 2013).  "The first prong of the analysis 'establishes a standard of evidentiary reliability,' while the second prong 'goes primarily to relevance.'" *Jones*, 918 F.Supp.2d at 4 (quoting *Daubert*, 509 U.S. at 590-91) (internal quotation omitted).

A court is not required to hold an evidentiary hearing to determine the admissibility of expert testimony.  *United States v. Jones*, 918 F.Supp.2d 1, 7 (D.D.C. 2013) (citations omitted); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152-53 (1999) (holding that a trial court has "latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability") (emphasis in original).  "Where, as here, the

10

expert report, affidavits, and depositions provide the necessary information, and the matter is not unusually complex or novel, a hearing is unnecessary." *Bell v. Gonzales*, No. 03-163, 2005 WL 3555490, at *16 n.16 (D.D.C. Dec. 23, 2005) (citations omitted).

   A. Proposed Testimony Regarding Carvalho's Valuation of Her Interest in Elite

Carvalho, relying on Albert's prior experience as a trustee and bankruptcy attorney, would like Albert to testify: (1) that Carvalho's estimation in her bankruptcy schedules that her interest in Elite was worth $1 was reasonable; (2) that such estimation was accurate; (3) that any notion that Carvalho's estimation "was made falsely or aimed at deceiving the trustee in [Carvalho's] bankruptcy case is not correct[;]" (4) that trustees do not take the value placed by debtors in an entity interest at face value but rather view it as an estimate that requires further investigation and confirmation; (5) that Carvalho's attorney is aware that the estimated value of an entity interest is a signal to the trustee to investigate, that an estimated value of $1 indicates a nominal interest, and that placing such a value on a nominal entity interest is not uncommon; (6) that Carvalho has made available all requested information to the trustee to help facilitate the trustee's investigation of the value of Carvalho's membership interest in Elite; (7) that the trustee handling Carvalho's bankruptcy is experienced and the fact that he entered a report of no distribution indicates that

11

Carvalho's estimate that her interest was merely nominal was reasonable; and (8) that it would be inappropriate to deny Carvalho a discharge or to deny her dischargability from Simu's debt for the valuation and Simu's full cooperation with the bankruptcy trustee.  *See* Dkt. No. 58-1, at 2-4.

Testimony by an expert witness is admissible if it is based on the expert's experience or specialized knowledge and if it assists the finder of fact in determining facts in issue.  *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592, *cited in Jones*, 918 F.Supp.2d at 4.  Of the above-listed testimony Albert intends to give at trial, this principle disqualifies 1, 3, 6, 7, and 8.  All five of these items are views as to the ultimate issues to be decided by the court, rather than opinions based on Alberts' specialized knowledge or experience that will help the finder of fact determine the ultimate issues.

However, Albert will be permitted to testify as an expert as to the accuracy of Carvalho's estimation in her bankruptcy schedules of the value of her interest in Elite (item 2 in the above list).  According to his report, Albert has reviewed the filings in Carvalho's bankruptcy case, the filings in this adversary proceeding, an unofficial transcript of Carvalho's 341 Meeting of Creditors, and various financial records of Elite. *See* Dkt. No. 58-1, at 5.  Using his specialized knowledge and experience, Albert has determined that "[a] review of the various

facts and financial information for Elite indicate that [Carvalho's] nominal value of $1.00 is not an . . . incorrect valuation for the company." *Id.* at 2. Albert intends to testify that the valuation was not incorrect because, based on the net income of Elite and the portion of the value of Elite attributable to the goodwill associated with the debtor personally, a sale of the debtor's interest in Elite would not be achievable and the interest would hold little value to a potential buyer. *See id.* at 3. What could be achieved through a sale in bankruptcy is pertinent to the value of an asset. This testimony would assist the finder of fact in determining the accuracy of the valuation and thus Carvalho's entitlement to a discharge or her entitlement to a discharge of her debt to Simu. Because Albert's testimony on this subject otherwise meets the requirements for admissible expert testimony under Federal Rule of Evidence 702 and *Daubert*, it may be presented at trial.

Furthermore, Albert will be allowed to testify as to item 4 in the list above, the manner in which trustees approach the value placed by debtors in an entity interest. That testimony is based on Albert's professional knowledge and experience as a trustee and is relevant to the question of intent if Carvalho otherwise establishes that Carvalho was advised by her attorney to list the value of the interest as $1 because it was merely an estimation and the trustee would investigate and confirm that

13

evaluation.  If the testimony described in item 4 of the list above is true and Carvalho was advised that by her attorney and believed it to be true, that testimony is relevant as to whether an intent to defraud existed.  Albert's testimony on this subject otherwise meets the requirements for admissible expert testimony under Federal Rule of Evidence 702 and *Daubert*.  Thus, it may be presented at trial.

   In similar vein, if Carvalho will testify that she relied on her attorney's advice that the $1 estimate of the value of her interest in Elite would be subject to investigation, then Albert may present the testimony contained in item 5 of the list above, regarding Carvalho's attorney's knowledge that the estimated value of an entity interest is a signal to the trustee to investigate, that an estimation of $1 indicates a nominal interest, and that placing such a value on a nominal entity interest is not uncommon.  That testimony again would be relevant to whether an intent to defraud existed.  If Albert has personal knowledge that Carvalho's attorney is aware of these matters or if from his experience as a trustee he can testify that an attorney who has been around this long would undoubtedly be aware of these matters, the testimony would assist the finder of fact in determining Carvalho's intent in making the $1 estimation of her interest in Elite and therefore her entitlement to a discharge or her entitlement to a discharge specifically of her

debt to Simu. Because Albert's testimony on this subject otherwise meets the requirements for admissible expert testimony under Federal Rule of Evidence 702 and Daubert, it may be presented at trial.

    B. Proposed Testimony Regarding Carvalho's Decision to Open a New Bank Account at Sandy Spring

In regards to Carvalho's decision to open a new bank account at Sandy Spring Bank shortly before filing her bankruptcy petition, Carvalho anticipates that Albert will testify that: (1) opening a new bank account before filing a bankruptcy petition is a common and prudent practice; (2) doing so does not violate 11 U.S.C. § 727, (3) Carvalho did so because she wanted to have a personal account to use for depositing money and paying bills and she used the money to pay regular expenses and to pay attorney's fees; (4) Carvalho's transfers involving that bank account cannot be considered preferential payments; (5) her transfers involving that bank account were not transfers of property out of the estate; (6) deposits from Elite into that account are to be expected because such deposits are her primary form of income; (7) Elite is not a party to the bankruptcy, Elite is not subject to restrictions of the Bankruptcy Code regarding money transfers, and Elite's property is not part of Carvalho's bankruptcy estate; (8) the facts do not establish that Carvalho opened the account at Sandy Spring Bank to conceal funds from the Bankruptcy Court, the trustee, or the plaintiff creditor;

(9) Carvalho disclosed the existence of her account at Sandy Spring Bank in her schedules and has complied with the trustee's requests throughout the bankruptcy proceedings; and (10) it would be inappropriate to deny Carvalho a discharge under the Bankruptcy Code.  *See id.* Dkt. No. 58-1, at 4-5.

Albert cannot testify as to items 2, 3, 4, 5, 7, 8, 9, or 10 of the list above because such testimony consists of legal conclusions that do not assist the fact finder in determining facts in issue, constitute factual conclusions that are not based on Albert's specialized knowledge or experience and that do not assist the fact finder in determining facts in issue, or should not be admitted because the documents about which Albert would testify speak for themselves.

However, Albert may be permitted to testify as to items 1 and 6 of the list above.  If Carvalho otherwise establishes that she was advised by her attorney that it was a common practice to open a new bank account before filing her petition and that doing so was acceptable then, based on Albert's professional knowledge and experience, he can testify as to whether opening a new bank account before filing a bankruptcy petition is a common and prudent practice.  Additionally, based on his professional knowledge and experience, Albert may testify that it would be expected from deposits from Elite into the Sandy Spring Bank account would be in accordance with common practice if Carvalho

16

otherwise establishes that was her understanding at the time that she made those transfers.  The testimony would assist the finder of fact in determining Carvalho's intent in opening and using the account at Sandy Spring Bank and therefore her entitlement to a discharge or her entitlement to a discharge specifically of her debt to Simu.  Albert's testimony on this subject otherwise qualifies admissible expert testimony under Federal Rule of Evidence 702 and *Daubert*.

    C. Proposed Testimony Regarding Carvalho's post-petition transfers to her own bank account from Elite's

After the court reinstated Count IV of Simu's amended complaint, Carvalho filed a designation of Marc Albert as an expert witness in regards to the Simu's Count IV allegations.  *See* Dkt. No. 117.  According to the designation, Albert intends to testify about "the Debtor's alleged post-petition transfers of funds and the Plaintiff's objection to discharge based on such transfers."  Dkt. No. 117, at ¶ 3.  More specifically, Albert "is expected to offer opinion testimony that the Debtor acted reasonably and in keeping with common practice in bankruptcy proceedings by continuing to operate her business and receive income from the business after the filing of the case."  *Id.*

On April 18, 2017, Simu filed a renewed motion (Dkt. No. 145) to exclude the testimony of Marc Albert.  All portions of that renewed motion that are unrelated to Count IV are untimely filed because they are unrelated to Count IV and are otherwise

17

rendered moot by this court's ruling on Simu's original motion (Dkt. No. 69).

The portion devoted to Albert's proposed testimony regarding Count IV does not specifically address the issue of whether such opinion testimony is proper for an expert witness to offer.  If Carvalho otherwise establishes that Carvalho was advised by her attorney or was otherwise aware that it was in accordance with common practice in bankruptcy proceedings for her to continue to operate Elite and receive income from Elite after the filing of her petition, Albert may testify, based on his professional knowledge and expertise, that her continued operation of and receipt of income from Elite after the filing of her petition was in accordance with common practice in bankruptcy proceedings.

The testimony would assist the finder of fact in determining Carvalho's intent in operating Elite and transferring money from Elite to herself; thus, it bears on Carvalho's entitlement to a discharge or her entitlement to a discharge specifically of her debt to Simu.  Albert's testimony on this subject otherwise qualifies as admissible expert testimony under Federal Rule of Evidence 702 and *Daubert*.  Therefore, it may be presented at trial.

CONCLUSION

Accordingly, it is

ORDERED that the plaintiff's motion (Dkt. No. 69) to exclude the testimony of the defendant's proposed expert witness, Marc E. Albert, is DENIED as to testimony regarding: the accuracy of Carvalho's valuation of her interest in Elite as one dollar; the approach trustees take towards valuations made by debtors of entity interests they hold; Carvalho's attorney's knowledge of the manner in which trustees would approach the valuation of Carvalho's entity interest; whether it is a common and prudent practice in bankruptcy proceedings for a debtor to open a new bank account before filing a bankruptcy petition; whether deposits from Elite into that account would be in accordance with common practice; and whether it would be in accordance with common practice in bankruptcy proceedings for Carvalho to continue operating and receiving income from Elite after the filing of her petition.  It is further

ORDERED that the plaintiff's motion (Dkt. No. 69) to exclude the testimony of the defendant's proposed expert witness, Marc E. Albert is otherwise GRANTED.  It is further

ORDERED that the plaintiff's renewed motion (Dkt. No. 145) is DENIED.

ORDERED that the testimony of defendant's proposed expert witness, Marc. E. Albert, will be limited to the accuracy of

Carvalho's valuation of her interest in Elite as one dollar; the approach trustees take towards valuations made by debtors of entity interests they hold; Carvalho's attorney's knowledge of the manner in which trustees would approach the valuation of Carvalho's entity interest; whether it is a common and prudent practice in bankruptcy proceedings for a debtor to open a new bank account before filing a bankruptcy petition; whether deposits from Elite into that account would be in accordance with common practice; and whether it would be in accordance with common practice in bankruptcy proceedings for Carvalho to continue operating and receiving income from Elite after the filing of her petition.

                                        [Signed and dated above.]

Copies to: Recipients of e-notification of filings.