The document below is hereby signed.

Signed: September 30, 2019



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Case No. 15-00646 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| TEODORA AURELIANA SIMU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 16-10001 |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |
| Defendant. | ) | |

<u>MEMORANDUM DECISION RE DEFENDANT'S MOTION FOR SANCTIONS</u>

After judgment was entered in her favor dismissing this adversary proceeding, the defendant, Sharra Neves Carvalho, filed a _Motion for Sanctions_ (Dkt. No. 181), requesting that sanctions be levied against Matthew August LeFande, counsel for the plaintiff, Teodora Aureliana Simu, pursuant to 28 U.S.C. § 1927, and against both LeFande and Simu, jointly and severally, under

this court's inherent power.  However, on September 17, 2019,
Carvalho requested to withdraw the request for sanctions against
Simu, and the request for sanctions against Simu will be
dismissed, leaving only the request for sanctions against
LeFande.

Carvalho requested that the sanctions be an award to her of
reasonable attorneys' fees and costs related to this adversary
proceeding, in the amount of $207,453.25 and $12,165.54
respectively.  The court will grant Carvalho's motion in part and
deny it in part, awarding sanctions against LeFande (as to some
of his conduct), and will direct the parties to address in
additional filings the appropriate amount of sanctions in
accordance with this memorandum decision.

I

FACTUAL AND PROCEDURAL HISTORY

Carvalho's debt to Simu (which has now been discharged)
stems from a Superior Court judgment awarded to Simu against
Carvalho in October 2015.  On October 27, 2015, following a trial
in a case captioned *Teodora A. Simu v. Sharra N. Carvalho*, Case
No. 2014 CA 002691 B, the Superior Court of the District of
Columbia entered judgment in favor of Simu against Carvalho in
the amount of $90,250 plus interest.  This amount consisted of a
$75,000 judgment for breach of contract, a $3,250 judgment for
breach of fiduciary duty, and a $12,000 judgment of punitive

2

damages.  Simu recorded this judgment with the District of
Columbia Recorder of Deeds on October 29, 2015.  On December 2,
2015, the Superior Court denied Carvalho's motion to stay
enforcement of Simu's judgment.  On December 3, 2015, Simu
applied for a charging order against any amounts owed to Carvalho
by Elite Insurance & Consulting Services, LLC ("Elite") and the
application was uploaded to the Superior Court's electronic
filing system.

Within two weeks of the filing of that application, on
December 15, 2015, Carvalho filed a petition in this court,
commencing a case as a debtor under Chapter 7 of the Bankruptcy
Code (Case No. 15-00646).  Bryan Ross became the bankruptcy
trustee in the case.  Simu filed the complaint commencing the
above-captioned adversary proceeding soon afterwards, on January
5, 2016.  The intense conflict that had already existed between
Carvalho and Simu prior to that filing almost immediately
presented in the proceedings attending both Carvalho's bankruptcy
case and this adversary proceeding.

In this adversary proceeding, Simu unsuccessfully sought to
have the court either deny Carvalho a discharge or, in the
alternative, determine that Carvalho's debt to Simu is
nondischargeable.  The trial for this adversary proceeding began
on May 8, 2017, and concluded on May 10, 2017.  Judgment in
Carvalho's favor was entered the next day.  On September 13,

3

2019, Simu's appeal to the District Court was dismissed on the
request of Simu.

> A.   Pleadings, Discovery, and Dispositive Motions in this
>      Adversary Proceeding

In the 16 months that elapsed between the filing of the
complaint in this adversary proceeding and the trial disposing of
remaining claims in the proceeding, Simu filed four complaints
and both parties filed numerous dispositive motions.  The
following is a basic summary of the significant events in this
adversary proceeding.

> 1.   Pleadings and Pre-Discovery Motions

Simu's initial Complaint (Dkt. No. 1) in this adversary
proceeding contained 11 counts, requesting various forms of
relief.  On February 16, 2016, Simu filed an Amended Complaint
(Dkt. No. 5), with 15 counts.  On February 19, 2016, Simu filed a
motion for summary judgment (Dkt. No. 7).  On March 10, 2016,
Carvalho filed a motion to dismiss (Dkt. No. 10), seeking
dismissal of Counts II-VIII and XI-XV of the amended complaint
and requesting a more definite statement regarding Counts I, IX,
and X.

On March 10, 2016, the court held a scheduling conference at
which it addressed Simu's motion for summary judgment (Dkt. No.
7).  As an attorney, LeFande was required by local rules to file
documents electronically.  In filing the motion for summary
judgment, LeFande had failed to attach in electronic form the

documents upon which the motion relied.[1]   The court ruled that the motion for summary judgment would be denied without prejudice.[2]   On March 15, 2019, Simu filed a new motion for summary judgment appending exhibits in electronic form.

On May 13, 2016, the court issued a memorandum decision and order (Dkt. No. 30) regarding Carvalho's motion to dismiss and for a more definite statement, dismissing all but one portion of Count II, the entirety of Count IV, most of the claims in Count VI, all but one portion of Count VII, and the entirety of Counts VIII, XI, XII, XIII, XIV, and XV.   The court also, therein, directed Simu to provide a more definite statement regarding Counts I and IX, and all but one portion of Count X.   The court directed Simu to "file a second amended complaint eliminating the dismissed claims and setting forth the required more definite statements."   On May 24, 2016, Simu filed a motion to reconsider that memorandum decision and order, and two days later she filed a second amended complaint.   Dkt. No. 34 and 35.

LeFande, who filed the second amended complaint on behalf of Simu, failed to comply with the court's directive.   The second amended complaint contained counts and specific allegations that

---

[1]   Moreover, some of the documents were financial records for which account numbers would need to be partially redacted by reason of Fed. R. Bankr. P. 9037(a)(4).

[2]   On March 29, 2016, the court entered an order (Dkt. No. 22) denying the initial motion for summary judgment for the reasons stated at the hearing of March 10, 2016.

had been dismissed by the court.  It also failed to provide a more definite statement regarding the counts specified by the court in the memorandum decision and order.  Carvalho filed a motion (Dkt. No. 36) to strike portions of the second amended complaint, which the court granted in part, as discussed below.

    2.    Intervening Filings Before the Court Disposed of the Motion to Strike and the Motion for Reconsideration

The court's modified scheduling order (Dkt. No. 52) set a deadline of October 9, 2016, to complete discovery, and a deadline of October 23, 2016, to file pretrial statements and dispositive motions.  On October 22, 2016, Carvalho filed her first motion for summary judgment (Dkt. No. 65),[3] which the court did not dispose of until shortly before the trial (via an oral decision discussed later).

    3.    Dispositions of the Motion to Strike and the Motion for Reconsideration

On November 15, 2016, the court entered a memorandum decision and order (Dkt. No. 80) disposing of Carvalho's motion (Dkt. No. 36) to strike portions of Simu's second amended complaint, and a memorandum decision and order (Dkt. No. 79) granting in part and denying in part Simu's motion for reconsideration (Dkt. No. 34) of the court's memorandum decision

---

[3] On the same date, Carvalho filed a pretrial statement (Dkt. No. 66).  Simu filed her pretrial statement the next day (Dkt. No. 67).

and order (Dkt. No. 30) regarding Carvalho's motion to dismiss
and for a more definite statement.

The memorandum decision and order dealing with Carvalho's
motion to strike noted that courts have considerable discretion
in ruling on such motions but that granting such motions is
disfavored and done rarely.  The court struck 12 paragraphs of
Simu's second amended complaint, classifying them as "immaterial,
impertinent, and scandalous" to an extent that justified striking
them pursuant to Fed. R. Civ. P. 12(f).  Dkt. No. 80 at 6.  The
court further explained (*id.*):

> The allegations are irrelevant to the plaintiff's claims
> against the defendant and are unsupported by sufficiently
> detailed allegations.  Moreover, the allegations
> improperly attack the character of the defendant's
> counsel and accuse the defendant's counsel of engaging in
> fraud, again without any reasonable substantiation.

In the same memorandum decision and order, the court noted that
Carvalho had requested the court to impose a sanction of striking
counts IX and X for Simu's failure to comply with the court's
prior order to provide a more definite statement as to those
counts.  The court acknowledged that while Simu had filed a
motion for reconsideration of that order, Simu had not requested
a stay of the order requiring her to provide a more definite
statement pending ruling on the motion for reconsideration.
Simu's failure to provide a more definite statement denied
Carvalho the information she needed to respond to those counts of
Simu's Complaint.  The court struck Count IX as redundant of

Count I and otherwise as consisting of simply conclusory
allegations.  As to Count X, the court struck the portion of the
§ 523(a)(6) claim related to the Superior Court award for breach
of contract due to Simu's failure to obey the court order to
provide a more definite statement.  The court allowed part of
Count X to remain, namely, the portion asserting a § 523(a)(6)
claim of nondischargeability of the Superior Court awards of
$3,250 for breach of fiduciary duty, plus punitive damages, and
attorney's fees for pursuit of the breach of fiduciary duty
award.

The memorandum decision and order granting in part and
denying in part Simu's motion for reconsideration reinstated
Count IV of Simu's Amended Complaint, but denied the remainder of
the motion for reconsideration.

In light of the two memorandum decisions of November 15,
2016, the court directed Simu to file a third amended complaint
eliminating the stricken allegations, Count IX, and the specified
portion of Count X, but reinstating Count IV of Simu's amended
complaint.  Simu filed her Third Amended Complaint (Dkt. No. 84)
on November 22, 2016.

> 4.    Facts Pertinent to the Contention that Simu
>       in Bad Faith Pursued Unnecessary Discovery
>       After Reinstatement of Count IV

In her *Motion for Sanctions*, Carvalho argues that Simu, in
bad faith, pursued unnecessary discovery from non-party entities.

8

*See* Dkt. No. 181-1 at 11.  (As discussed later, I reject that
argument, but I lay out here the facts pertinent to the
argument.)  On November 15, 2016, when the court reinstated Count
IV, discovery in this adversary proceeding had closed and the
parties had already both filed motions for summary judgment.  In
light of the reinstatement of Count IV, the court reopened
discovery narrowly confined to that count of Simu's Third Amended
Complaint.  On January 24, 2017, after Simu had filed the Third
Amended Complaint and Carvalho had filed an answer thereto, the
court held a scheduling conference, at which the parties agreed
to a schedule for resolving the adversary proceeding reflected by
a supplemental scheduling order: the schedule required disclosure
of expert witnesses related to Count IV by February 27, 2017,
ended discovery related to Count IV on March 27, 2017, and set a
new deadline for dispositive motions of April 4, 2017.  *See* Dkt.
No. 112.

During this extension of discovery, LeFande, on behalf of
Simu, served discovery requests on Carvalho.  Carvalho produced
numerous documents to Simu in response to her discovery requests
and Simu filed no discovery motion indicating that these
documents were insufficient to meet Simu's requests.

Simu also served subpoenas on a number of third parties.  On
March 10, 2017, Carvalho moved to quash subpoenas Simu had served
on Bank of America; Sandy Spring Bank; Fairmount Insurance

Brokers; Atlantic Specialty Lines of Virginia LLC; Travelers
Commercial Insurance Company; Employers Insurance Company;
Philadelphia Indemnity Insurance Company; Iroquois Mid-Atlantic
Group, Inc.; All Risks, Ltd.; and Risk Placement Services, Inc.
*See* Dkt. No. 119.

Aside from two banks, all of the subpoenaed entities are
insurance providers and wholesale brokers with which Carvalho
works in connection with her insurance business.  Although the
court had expressly limited the discovery extension to
information related to Count IV (which alleged that Carvalho was
not entitled to a discharge pursuant to 11 U.S.C. § 727(a) as a
result of her post-petition transfer of money to herself from
Elite), in such subpoenas, Simu requested from those third-party
entities "[a]ll documents related to or evidencing any
transaction involving, or any correspondence with, Sharra N.
Carvalho and/or Elite Insurance & Consulting Services, LLC,
December 15, 2015 to present day."  *See id.* at 3.  Carvalho
alleged that the broadness of the requests and their irrelevance
to Count IV demonstrated Simu's improper purpose of attempting to
damage Carvalho's business interests.  After briefing from both
parties, the court entered a *Protective Order* (Dkt. No. 125)
narrowing the scope of the subpoenas Simu had issued upon the
third-party banks and insurance-related entities.

10

Simu then, on March 24, 2017, filed a motion (Dkt. No. 128) to expand the discovery deadlines for an additional three weeks due to the delay in the third-party entities complying with the limitations placed on Simu's subpoenas by the court's protective order.  On April 4, 2017, Carvalho filed a *Motion for Summary Judgment Regarding Count IV of Third Amended Complaint* and Simu filed *Plaintiff Creditor's Third Motion for Summary Judgment on Dischargeability.*  Dkt. Nos. 132 and 133.

As noted previously, the supplemental scheduling order (Dkt. No. 112) reopened the time to complete discovery only as to Count IV of the third amended complaint, and did not reopen the discovery deadline as to other claims.  On April 14, 2017, the court entered an order (Dkt. No. 140) resolving Simu's motion to extend discovery (Dkt. No. 128), noting that discovery as to Count IV did not need to be extended and dates and deadlines set out in the scheduling order did not need to be changed for Simu to obtain responses to her outstanding subpoenas; Simu would just continue to receive responses as third parties came into compliance.

In her memorandum in support of her motion to extend discovery, Simu had also requested the court to "defer consideration of the Debtor's Summary Judgment Motion in light of the Debtor's refusal again to respond to written discovery requests, and the evident and now unavoidable delay in third

11

parties responding the Plaintiff's subpoenae *duces tecum*."  Dkt.
No. 128, Memorandum at 1.  Carvalho's only then-pending motion
for summary judgment was Carvalho's first motion for summary
judgment (Dkt. No. 65),[4] which remained unresolved with respect
to claims other than Count IV.[5]  (The court declined to defer
consideration of that motion for summary judgment, but the court
eventually failed to dispose of the motion for summary judgment
until the day of the trial.)  On September 26, 2016, long prior
to the filing of the motion to extend discovery, the court had
dismissed Simu's only motion to compel discovery relating to
claims other than Count IV.  *See* Dkt. No. 61.  And as to claims
other than Count IV, the time to complete discovery had expired
long ago on October 9, 2016 (*see* Dkt. No. 52), and pretrial
statements had been filed on October 22 and 23, 2016.  Simu did
not file an affidavit or declaration under Fed. R. Civ. P. 56(d)
warranting a deferral of consideration of the first motion for
summary judgment on the basis that Simu could not present facts
essential to justify her opposition to that motion for summary
judgment based on outstanding discovery.

---

[4]  Carvalho did not file her motion for summary judgment as
to reinstated Count IV (Dkt. No. 132) until after Simu had filed
her motion to expand discovery (Dkt. No. 128).

[5]  In permitting the reinstatement of Count IV, the court
had already implicitly denied Carvalho's first motion for summary
judgment (Dkt. No. 65) with respect to the part of her motion
seeking summary judgment as to Count IV.

The court had only reopened the time to complete discovery as to Count IV.  The outstanding non-party subpoenas related to Count IV, not the claims addressed by Carvalho's pending first motion for summary judgment.  In its order resolving Simu's motion to extend discovery, the court noted that Simu had failed to specify any requests she issued to Carvalho in the course of discovery related to Count IV to which Carvalho had not yet sufficiently responded.  In any event, after the court extended the close of discovery to allow discovery related to Count IV, Simu had not filed a motion to compel any responses from Carvalho.  Thus, the court concluded that it had no clear justification for deferring ruling on Carvalho's first motion for summary judgment on the basis of any alleged refusal by Carvalho to respond to written discovery requests or the outstanding subpoenas to third parties.

The court's order implicitly assumed that Simu's motion to expand discovery might have been seeking additional time to respond to any forthcoming motion of Carvalho for summary judgment as to Count IV (a motion that had not yet been filed when Simu filed her motion to expand discovery but had been filed when the court entered its order on April 14, 2017).  It was also uncontested that Simu had not yet received some discovery related to her defense against that motion for summary judgment.  Therefore, the court agreed to defer ruling on the motion for

13

summary judgment related to Count IV (Dkt. No. 132) until Simu
was able to receive the responses from the subpoenaed third
parties but declined to defer ruling on Carvalho's first motion
for summary judgment. The court directed Simu to file a timely
opposition to the motion for summary judgment related to Count IV
and to supplement that opposition if necessary after receiving
subpoena responses from non-parties, to notify the court when she
received such responses, and to ensure timely compliance by non-
parties to ensure the trial could take place as scheduled.

Simu filed a timely opposition (Dkt. No. 143) to Carvalho's
motion for summary judgment regarding Count IV four days after
the court's order regarding her motion to extend discovery but
Simu never filed any supplement thereto based on any subpoena
responses. Nor did Simu ever file any notice to the court that
she had received responses from any subpoenaed parties after that
date. At a hearing held on April 25, 2017, one week after Simu
filed her opposition to Carvalho's motion for summary judgment,
LeFande, representing Simu, stated that he did not need the
information he sought by way of subpoenas issued on the third-
party entities and he had all the evidence he needed based on
documents he had already received previously as well as
Carvalho's admissions and testimony. In her *Motion for
Sanctions*, Carvalho argues that this demonstrates Simu's bad
faith in pursuing unnecessary discovery from non-party entities.

*See* Dkt. No. 181-1 at 11 ("All of the discovery related efforts were a needless waste of time and resources.").

### 5.   Simu's Interlocutory Appeal

While the aforementioned events occurred in the adversary proceeding, Simu was also pursuing an interlocutory appeal (Civil Action No. 16-2522 (RBW) in the District Court) of this court's order denying her *Motion for Preliminary Injunction* which had sought to enjoin Carvalho from removing money from Elite. Observations of the District Court in that interlocutory appeal are of some relevance in assessing the character of LeFande's conduct in this adversary proceeding.[6]  The District Court entered an order (a copy of which is Dkt. No. 110 in this adversary proceeding) requesting this court to submit a written certification stating whether in its opinion the order denying Simu's motion for preliminary injunction involved a controlling question of law as to which there is substantial ground for difference of opinion and whether an immediate appeal from the order may materially advance the ultimate determination of the case.  This court submitted a certification (Dkt. No. 114) opining, *inter alia*, that the order did not involve a controlling question of law as to which there is a substantial ground for

---

[6]  Carvalho's *Motion for Sanctions* at 17 might be viewed as seeking sanctions for the pursuit of that frivolous appeal. However, this court cannot sanction LeFande for misconduct in the District Court.

difference of opinion, that an immediate appeal from the order
would not materially advance the ultimate determination of the
case, that Simu did not have standing to pursue the motion, and
that the filing of the motion was void as having violated the
automatic stay.

On April 7, 2017, the Honorable Reggie B. Walton of the
District Court entered an order (a copy of which is Dkt. No. 136
in this adversary proceeding) denying Simu's appeal as
inappropriate for interlocutory appellate review.  Notably, in
that order, Judge Walton addressed a topic also at issue in this
*Motion for Sanctions*: LeFande's charges against this court for
its handling of the case and alleged bias in Carvalho's favor.
In his order, Judge Walton quoted LeFande's language in the
appeal filed on behalf of Simu: "'And it is immediately this
advancement of termination of the case which the Bankruptcy Court
now attempts to thwart in its outright advocacy for the Debtor as
reflected in the response.'"  Dkt. No. 136 at 6 (quoting Simu's
Response to the Bankruptcy Court's Certification in Opposition to
Appeal of Denial of Preliminary Injunction, Civil Action No.
16-2522 (RBW), Dkt. No. 8 at 10).  Judge Walton reflected on
LeFande's charge against this court, stating: "In the Court's
view, this conclusory statement that seemingly suggests the
Bankruptcy Court's bias in favor of Carvalho is entirely without
factual support, and, in any event, does not establish that the

16

Bankruptcy Court's Order presents a controlling question of law."
*Id.* Judge Walton then dismissed Simu's appeal.

6.   Dispositive Motions After Reinstatement of
     Count IV

In accordance with the scheduling order (Dkt. No. 112)
entered in light of the reinstatement of Count IV, Simu and
Carvalho each filed dispositive motions on April 4, 2017.
Carvalho filed a 32-page *Motion for Summary Judgment Regarding
Count IV of the Third Amended Complaint* (Dkt. No. 132).  Her
motion addressed only Count IV of the Third Amended Complaint, as
she had already filed a motion for summary judgment regarding the
rest of the claims asserted by Simu (*see* Dkt. No. 65) and the new
scheduling order had only been intended to relate to the
reopening of discovery in regards to the reinstated Count IV (not
other counts) and the filing of dispositive motions related to
Count IV (not other counts).

In an order of November 15, 2016 (Dkt. No. 78), the court
had denied Simu's earlier motion for summary judgment (Dkt. No.
18), on every claim contained in the Third Amended Complaint
except for Count IV.[7]  The scheduling order entered after

---

[7]  That earlier motion for summary judgment was filed when
Simu's amended complaint was the pending complaint, and various
counts of that amended complaint were carried forward, without
alteration, in the Third Amended Complaint.  When the court
issued its order of November 15, 2016 (Dkt. No. 78), denying
Simu's motion for summary judgment, that applied to the counts in
the amended complaint that had been carried forward in the Third
Amended Complaint.

reinstatement of Count IV set discovery and dispositive motion
deadlines that were only intended to relate to Count IV, which
had not been addressed by the parties in their prior dispositive
motions.  Nevertheless, on April 4, 2017, Simu filed a 499-page
motion for summary judgment (Dkt. No. 133) related to her entire
Third Amended Complaint.

In denying Simu's third motion for summary judgment, the
court noted (Dkt. No. 159 at 2) (internal citations omitted):

> The portions of the plaintiff's third motion for summary
> judgment that are related to counts other than Count IV
> will be denied as untimely filed, as dispositive motions
> related to all claims aside from Count IV were due by
> October 23, 2016.  At any rate, the plaintiff already
> filed a motion for summary judgment in regards to all
> other counts and the court denied that motion on November
> 15, 2016.

The court then denied the portion of Simu's motion for summary
judgment dealing with Count IV as well as Carvalho's *Motion for
Summary Judgment Regarding Count IV of the Third Amended
Complaint*, explaining that a denial of discharge for Carvalho's
transfers of property pursuant to 11 U.S.C. § 727(a)(2) required
a showing of "intent to hinder, delay, or defraud" and there was
a genuine issue as to the material fact of whether Carvalho acted
with such intent.

Thus, the adversary proceeding proceeded to trial.  On May
8, 2017, prior to the beginning of the trial, the court issued an
oral decision (Dkt. No. 186 at 2-14) resolving Carvalho's initial
motion for summary judgment (Dkt. No. 65) regarding all claims

18

aside from the revived Count IV.[8]  The court granted that motion
in part and denied it in part as discussed next.

Among many claims raised by Simu in support of denial of
discharge or a determination of nondischargeability were claims
that Carvalho knowingly and fraudulently made false oaths and
accounts in her petition and to the chapter 7 trustee at the
meeting of creditors, that she withheld from the chapter 7
trustee information relating to her property or financial
affairs, and that, since filing the petition, Carvalho had
transferred money from Elite to herself without notice or consent
to the chapter 7 trustee or to the court and had done so with the
intent to hinder, delay, or defraud Simu, the chapter 7 trustee,
and the court.  Carvalho's motion for summary judgment as to
these claims was denied, as the claims involved a genuine dispute
of material fact and resolution of the claims required review by
a fact-finder.

However, the court granted Carvalho's motion for summary
judgment as to a number of issues alleged by Simu that had no
demonstrated factual basis:

    a)   Count I

In regards to Count I (arguing nondischargeability under 11
U.S.C. § 523(a)(4)), the court dismissed the part consisting of

---

[8]  At this time, as previously discussed, the court had
already denied Carvalho's motion for summary judgment (Dkt. No.
132) regarding Count IV of Simu's Third Amended Complaint.

Simu's allegations that Carvalho owed Simu a fiduciary duty and that Carvalho breached that duty by providing an allegedly false tax return during the Superior Court litigation in 2015 for the year 2014 in order to justify paying Simu less than she was due and to enrich herself personally.  The court found Carvalho had demonstrated that her accountants had prepared the tax returns and those accountants had relied on their understandings of tax law in making decisions regarding the manner of preparing the returns.  Carvalho relied on their judgment and signed the returns.  Simu had presented no affidavits or other evidence to rebut the affidavits of the accountant and Carvalho regarding Carvalho's reliance on the accountant and the accountant's belief that the proper tax approaches had been used.  Therefore, Count I was dismissed as related to the tax returns.

The court reserved for trial the rest of Count I, relating to the $3,250 Superior Court award to Simu for breach of fiduciary duty and the punitive damages award related to that judgment, indicating that Simu would be allowed to present evidence as to the relationship between Simu and Carvalho and

whether a fiduciary relationship existed within the meaning of 11
U.S.C. § 523(a)(4).[9]

> b)  Count VII

Count VII alleged that Carvalho wrongly and fraudulently
withheld from the trustee, Ross, recorded information relating to
Carvalho's property or financial affairs and falsely
misrepresented to Ross the value and ownership of Elite.  In the
face of these allegations, Carvalho established through testimony
of her attorney at a hearing and through submission of an
affidavit submitted by Ross, that Carvalho had not withheld from
Ross any recorded information requested by Ross.  However, in
contrast, Simu had not offered or demonstrated that she could
offer any evidence that Carvalho had, in fact, withheld recorded
information from Ross after being asked to turn over such
information.  Thus, the court granted summary judgment,
dismissing that portion of Count VII.  However, the court
reserved for trial the portion of Count VII relating to
Carvalho's alleged false misrepresentation of the value and
ownership of Elite to Ross, indicating that the question was one
of fact inappropriate for disposition by summary judgment.

---

[9]  Carvalho asserted prior to the trial that she had been
under the impression that in the court's multiple rulings of
November 15, 2016, the court had held that due to Simu's failure
to plead more specific facts regarding the $3,250, the court was
limiting Count I to only the allegations regarding the tax
returns.  The court disagreed and indicated that the issue would
be addressed at trial.

c) Throughout Complaint: $5,950 On-Hand
   Allegation

One allegation repeated throughout every version of Simu's complaints was that Carvalho had $5,950 in her possession immediately prior to filing the petition.  In response to that allegation, Carvalho's affidavit testified about how she spent the money Simu claimed Carvalho had when filing the petition and demonstrated that she was not in possession of more than the amount she claimed to have both in her petition and in consistent representations she made throughout the case.  Simu neither offered nor demonstrated that she could offer any evidence that Carvalho was, in fact, in possession of $5,950 when she filed her petition.  There was thus no demonstrated genuine dispute of the amount of money Carvalho had on-hand when she filed her petition and the court therefore granted summary judgment as to that issue in any and every claim in which it appeared in the Complaint.

The motion for summary judgment having been resolved, the parties proceeded to trial.

B.   Adversary Proceeding Trial

LeFande began his presentation of Simu's case by calling Simu to the stand.  After Simu testified, LeFande sought to call an expert witness regarding alleged falsification or alteration of Quickbooks records provided by Carvalho.  However, Carvalho's counsel objected to LeFande calling that witness on two bases: (1) LeFande only disclosed that expert witness in February 2017

after the expiration of the deadline for disclosing expert
witnesses for all claims in the Complaint aside from Count IV,
and (2) LeFande failed to list that expert witness on his list of
witnesses he intended to call at trial included with his pretrial
statement.

Carvalho represented that after LeFande disclosed the expert
witness regarding Quickbooks in February, Carvalho produced a
largely unredacted version of the Quickbooks to demonstrate that
any perceived problem did not actually exist.  LeFande then did
not list the expert on his witness list when he filed the
pretrial statement in April 2017.  Because the witness was not
listed, Carvalho's counsel had not prepared and brought the
Quickbooks records for trial, and would not be able to pull them
up on the computer and cross-examine the witness.  LeFande filed
an amended pretrial statement on the first day of trial in an
attempt to add the expert witness, but Carvalho's counsel argued
that allowing the expert witness would substantially prejudice
Carvalho and that the Local Rules and Federal Rules required the

expert witness to be disclosed before trial.[10]  The court denied Simu's request to permit the expert witness to testify in light of Simu's failure to name the expert witness on the list of witnesses for trial in the pretrial statement.

LeFande then attempted to call Carvalho to the stand. However, Carvalho was not present in the courtroom and LeFande had failed to issue a subpoena on Carvalho prior to trial to ensure that she would be present to testify.  Thus, LeFande could not delay the trial to attempt to locate Carvalho.  At that time, having only called one witness (Simu herself) Simu rested her case in chief.

Carvalho then made an oral request for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(a), asserting that Simu had presented her entire case in chief and a reasonable finder of fact would not have a sufficient evidentiary basis to find in Simu's favor on any count.  The court granted that motion except as to Count IV (which sought a denial of discharge stemming from

---

[10]   LeFande confirmed that the expert witness and the testimony regarding Quickbooks did not relate to Count IV and argued: "It wasn't clear to me that I could not make a new expert designation at that time."  Dkt. No. 187 at 128.  However, the supplemental scheduling order (Dkt. No. 112) entered on February 7, 2017, after the revival of Count IV, set out relevant dates for the reopening of discovery and the impending trial, noting that February 27, 2017, was the deadline for parties to "[d]isclose experts related to Count IV of the Third Amended Complaint."  Dkt. No. 112 at 2.  The scheduling order also explicitly stated that "[d]iscovery pertaining to all other claims in the plaintiff's Third Amended Complaint has completed." *Id.* at 3.

Carvalho's post-petition operation of Elite and withdrawals of money from that LLC):

- Count I, alleging nondischargeability under 11 U.S.C. § 523(a)(4), based on conduct that allegedly constituted a breach of fiduciary duty,[11] was dismissed for Simu's failure to demonstrate that a fiduciary relationship existed between Simu and Carvalho within the meaning of § 523(a)(4), despite the judgment in the

---

[11] As noted in *In re Paulino*, No. 14-11732 (ALG), 2014 WL 5358409, at *6 (Bankr. S.D.N.Y. Oct. 20, 2014):

The Bankruptcy Code does not contain a definition of the term "fiduciary" as used in § 523(a)(4). Its meaning is a matter of federal law, limiting that term's application to express or technical trusts. *In re Johnson*, 691 F.2d 249, 251-52, (1982), citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934), and *Chapman v. Forsyth*, 43 U.S. 202, 2 How. 202, 207, 11 L.Ed. 236 (1844). It is well accepted that "the broad, general definition of fiduciary—a relationship involving confidence, trust, and good faith—is inapplicable in the dischargeability context." *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986); see also *Angelle v. Reed (In re Angelle)*, 610 F.2d, 1335, 1338-39 (5th Cir. 1980). Courts have held that the term has to be "narrowly construed so that it does not reach debtor-creditor transactions in which the debtor merely violated the terms of his commercial agreement with the creditor." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998), citing *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 489 (Bankr. S.D.N.Y. 1987).

Superior Court of the District of Columbia having
included a jury award for breach of fiduciary duty.[12]

- Count II was dismissed for Simu's failure to
  demonstrate that Carvalho concealed, falsified, or
  failed to keep any recorded information within the
  meaning of 11 U.S.C. § 727(a)(3).

- Count III, a claim under 11 U.S.C. § 727(a)(2)(A) for
  denial of discharge based on a prepetition transfer of
  $6,000 from Elite's bank account to herself via
  cashier's check, was dismissed for Simu's failure to
  provide any evidence as to what became of the $6,000.
  Carvalho could have used the money for some purpose
  that would not constitute an attempt to hinder a
  particular creditor in violation of § 727(a)(2)(A).
  Moreover, Carvalho filed her bankruptcy case only six
  days after the transfer of the money and 11 U.S.C.

---

[12] While Simu had won a $3,250 judgment against Carvalho in
the Superior Court of the District of Columbia for breach of
fiduciary duty, in addition to punitive damages assessed for that
offense, the court ruled that because the jury evidently had not
been instructed as to either the definition of a "fiduciary duty"
or the types of relationships that could qualify as "fiduciary
relationships," the Superior Court judgment did not constitute
collateral estoppel as to the issue of whether in this case there
was a fiduciary relationship within the meaning of the term
"fiduciary" in 11 U.S.C. § 523(a)(4).  The court therefore
assessed the evidence presented by Simu at trial and, taking into
account that Simu had the burden of proving that a fiduciary
relationship existed, reached the conclusion that a fiduciary
relationship within the meaning of 11 U.S.C. § 523(a)(4) had not
existed between Simu and Carvalho.

§ 362(a) would have stayed any attempt by Simu to obtain a charging order as a means of collecting the debt owed to Simu.

- Count V, regarding alleged false oaths made by Carvalho at the § 341 meeting of creditors, was dismissed both because Simu had failed to present a transcript of the § 341 meeting into evidence and because none of the matters Simu alleged to be false oaths were actual instances of false oaths.  For example, Simu had failed to demonstrate that Carvalho's valuation of her interest in Elite as $1 was a false oath.  As to other alleged false oaths, Simu had offered no transcript into evidence through which the court could learn of what Carvalho had claimed at the meeting.

- The court dismissed Count VI, which dealt with a number of alleged false statements on Carvalho's petition and other case opening documents.  The court found that the specified statements were not demonstrably false:

  o Carvalho's valuation of her interest in Elite as $1 was not demonstrated to be inappropriate considering the type of business conducted by Elite and the absence of a non-compete agreement to protect the company if Carvalho chose to start a new company.

27

○   Carvalho's statements regarding the value of her
    other assets were not demonstrated to be false;
    Simu had presented no evidence in regards to the
    value of Carvalho's assets and whether Carvalho
    had understated the value of any of those
    assets.

○   Carvalho's reported income on her Statement of
    Financial Affairs was based on tax returns
    prepared by Elite's accountants and Simu had not
    demonstrated that her reliance on those tax
    returns was wrongful.  Moreover, Simu had not
    even introduced Carvalho's Statement of
    Financial Affairs into evidence.

Accordingly, all that remained after the court's oral ruling on
Carvalho's motion for judgment was Count IV of the Third Amended
Complaint, dealing with post-petition transfers.

    Carvalho called two witnesses: Merrill Cohen, one of her
attorneys, and Bryan Ross, the chapter 7 trustee in her
bankruptcy case.  Carvalho then rested her case.  The court
inquired as to whether Simu intended to call any rebuttal
witnesses and Simu called Carvalho to the stand.  LeFande, on
behalf of Simu, began to conduct a direct examination of Carvalho
and Carvalho's counsel objected to the questioning as an improper
attempt to elicit testimony unrelated to the evidence presented

by the defense.  LeFande indicated that he was, in fact,
attempting to conduct a direct examination rather than a rebuttal
of the evidence presented on behalf of Carvalho.  He stated:
"[The Judge] asked if I had additional evidence, and I was told I
was going to be able to call this person, and to reserve by
questions for this person when she was available.   That was what
the Court said on the first day."  Dkt. No. 188 at 88.
Carvalho's counsel immediately indicated that the court had not
said that and the court confirmed that it had not represented
that Simu "could, by way of a rebuttal case, put on evidence that
should have been put on in [her] main case."  *Id.* at 88-89.

    After closing arguments, in an oral decision issued at the
conclusion of the trial on May 10, 2017, the court issued its
findings of fact with respect to Count IV in great detail,
finding that shortly after commencement of the bankruptcy case,
Carvalho's counsel had received permission from Bryan Ross for
Carvalho to continue operating Elite and that Ross, in exercising
his discretion to permit Carvalho to continue operating Elite,
did not believe or intend that Carvalho would do so without
compensation.  The court found that Ross had never instructed
Carvalho to stop operating the company or removing money from
Elite; that Carvalho's attorney had advised Carvalho to continue
withdrawing money from Elite in amounts that were reasonably
consistent with the money she had removed from Elite as

compensation for her operation of the LLC in the past; and that, in continuing to operate Elite and withdraw money from Elite, Carvalho had followed the instructions of Ross and her counsel and had not acted with intent to hinder, delay, or defraud the estate or any creditor.  Because a violation of 11 U.S.C. § 727(a)(2)(B) clearly requires a transfer of property of the estate to be made "with intent to hinder, delay, or defraud" and because no evidence of that type of intent was presented, the court ruled that Count IV of the Third Amended Complaint must be dismissed.

In the course of issuing its oral decision, the court also addressed multiple provisions of the Bankruptcy Code (11 U.S.C.) that Simu had raised and relied upon in presenting her arguments and, as Carvalho's witnesses had done on the stand, explained their irrelevance to the case:

- 11 U.S.C. § 330, which deals with compensation of professionals, was irrelevant because Carvalho was not employed as a professional in this case.

- 11 U.S.C. § 503, which deals with payment of administrative expenses in a bankruptcy case, was irrelevant because even if Carvalho's payments for operating Elite were considered costs of preserving her own estate, Carvalho had been advised that she was entitled to receive such payments for work performed in

operating Elite (her only source of livelihood) in the same fashion as she had before the bankruptcy case was commenced, and she relied on that advice and acted accordingly, without an intent to defraud the estate.

- 11 U.S.C. § 704(a)(8), requiring a trustee to file with the court certain information "if the business of the debtor is authorized to be operated," was irrelevant because Elite was an LLC and its business was not the business of Carvalho; Carvalho was in bankruptcy but Elite was not.  As trustee, Ross was authorized to exercise the rights of the estate with respect to Carvalho's ownership interest in Elite, which had become a part of the estate, but Elite, as an independent entity, was not itself a debtor in the bankruptcy case.  Because Elite, as an LLC, was a separate entity, no court order authorizing Ross, as trustee of only the bankruptcy estate of Carvalho, to operate the LLC during the pendency of Carvalho's bankruptcy case was either possible or required.

- 11 U.S.C. § 721, which deals with the trustee's obtaining authorization by the court "to operate the business of the debtor," was similarly irrelevant because Elite was organized as a separate entity; Elite's business was not Carvalho's business.  Ross, as

31

effectively the shareholder of Carvalho's ownership of Elite, was within his rights to let Carvalho continue as manager of Elite and to operate the business of Elite without first obtaining court authorization.  The court conceded that Elite's profits, if any, could be considered amounts owed on Carvalho's interest in Elite and Carvalho's related right to receive those profits might be considered property of the estate, but Carvalho had been advised that she could continue to operate Elite as she had done prior to the bankruptcy and that she could withdraw funds as compensation for work performed as she had done prior to the bankruptcy. Moreover, as in the case of Carvalho's past operation of Elite's business, these funds constituted her only source of livelihood.  Nothing in the record suggested that Carvalho was taking amounts that amounted in part to unreasonable compensation that could be viewed as actually distributions of profits.

That oral decision brought the trial to a close.

Upon conclusion of the trial, 16 months after the commencement of the adversary proceeding, the court issued a *Judgment* (Dkt. No. 171) in favor of Carvalho, denying all of Simu's claims and acknowledging Carvalho's entitlement to a discharge of outstanding debts, including the debts owed to Simu.

After the resolution of the adversary proceeding, Carvalho filed

her *Motion for Sanctions*, which is the subject of this Memorandum

Decision.

II

SIMU'S ARGUMENTS REGARDING THE COURT'S ASSERTED
LACK OF AUTHORITY TO CONSIDER IMPOSING SANCTIONS IN THIS
CASE PURSUANT TO 28 U.S.C. § 1927 OR THE COURT'S INHERENT POWER

Carvalho invokes two bases for seeking sanctions.  Pursuant

to 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in
> any court of the United States or any Territory thereof
> who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court
> to satisfy personally the excess costs, expenses, and
> attorneys' fees reasonably incurred because of such
> conduct.

Sanctions may only be assessed against an attorney, i.e., not

against Simu herself, pursuant to § 1927.

In addition, under its inherent authority to impose

sanctions, a court may sanction an attorney (or a party) who has

"acted in bad faith, vexatiously, wantonly, or for oppressive

reasons."  *Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112,

119 (D.D.C. 2016), *aff'd sub nom. Hall v. Dettling*, No. 17-7008,

2017 WL 2348158 (D.C. Cir. May 17, 2017) (quoting *Chambers v.

NASCO*, 501 U.S. 32, 45 (1991) (quotation omitted)).  The power of

the court to issue sanctions under 28 U.S.C. § 1927 supplements

rather than displaces the court's inherent authority to impose

sanctions.  *Id.* at 119 (citing *Chambers*, 501 U.S. at 46-47).

33

Under 11 U.S.C. § 105, a bankruptcy court hearing a bankruptcy matter has the same inherent power to sanction abusive conduct as does the federal district court in non-bankruptcy matters. *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.)*, 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*."). *See also In re Porto*, 645 F.3d 1294, 1304 n.6 (11th Cir. 2011); *In re Volpert*, 110 F.3d 494, 501 (7th Cir. 1997).

In addition, the court may award fees incurred in recovering fees when it imposes sanctions, whether pursuant to § 1927 or the court's inherent powers. First, this is clearly the case when fees are awarded pursuant to § 1927. *See Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631-32 (9th Cir. 2017); *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1298 (11th Cir. 2010). Such fees were "reasonably incurred because of [the sanctioned] conduct." *See* 28 U.S.C. § 1927; *Baldwin Hardware Corp. v. FrankSu Enterprise Corp.*, 78 F.3d 550, 561 (Fed. Cir. 1996) ("The statute allows recovery of *excess* fees incurred as a result of opposing counsel's conduct, and 'fees for fees' clearly fall within this description.") (emphasis in original). Second, the better reasoned decisions conclude that this is true as well when fees are awarded pursuant to the court's inherent power. *See In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 387-88 (3d Cir.

34

1997) (party recovered fees pursuant to court's inherent authority and was entitled to fees incurred at the trial court level in pursuing that recovery).[13]  *See also Lowe v. Ransier (In re Nicole Gas Prod., Ltd.)*, 581 B.R. 843, 848, 854-55 (6th Cir. B.A.P. 2018) (affirming award of fees incurred defending fee request incident to court's inherent power to award fees upon finding civil contempt).

LeFande advances two arguments to contend that the court cannot  consider sanctions pursuant to § 1927 or the court's inherent power.  I reject both arguments.

A.   Ability of a Bankruptcy Court to Issue Sanctions Despite Absence of Any Fed. R. Bankr. P. 9011 Motion

LeFande argues that Carvalho cannot move for sanctions under 28 U.S.C. § 1927 or the court's inherent authority due to her failure to comply with the safe harbor provision of Fed. R. Bankr. P. 9011.  Here, Carvalho alleges the existence of bad

_____

[13]  The Third Circuit Court of Appeals in *Tutu Wells* distinguished *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), in which the issue presented concerned recovery, under the version of Fed. R. Civ. P. 11 in effect before the 1993 amendments, of fees incurred in defending a sanction award on appeal, fees stemming from "the sanction itself and the appeal, not as a result of the improper filing," in contrast to fees incurred in the sanctions proceedings, which "are more properly characterized as a result of the improper filing."  *Tutu Wells*, 120 F.3d at 388 n.23 (citation omitted).  On that and other grounds, the Court of Appeals declined to follow decisions that did not allow fees for fees pursuant to the court's inherent powers, such as *Lockary v. Kayfetz*, 974 F.2d 1166, 1177-78 (9th Cir. 1992), and *Blue v. United States Dep. Of the Army*, 914 F.2d 525, 548-49 (4th Cir. 1990).

faith throughout the litigation of this adversary proceeding.
That some of the conduct, which was intertwined with bad faith
conduct that allegedly permeated the pursuit of certain claims
for the entire proceeding, might have been reached through Rule
9011 or 28 U.S.C. § 1927 does not bar resort to the court's
inherent authority to impose sanctions for the full scope of bad
faith conduct. *Chambers*, 501 U.S. at 50-51; *Farmer v. Banco
Popular of N. Am.*, 791 F.3d 1246, 1257 (10th Cir. 2015).

Moreover, the safe harbor provision that appears in Fed. R.
Bankr. P. 9011(c)(1)(A) specifically applies to motions for
sanctions for violations of Fed. R. Bankr. P. 9011(b). The safe
harbor provision in that Rule does not apply broadly to other
statutes or sources of the court's authority for assessing
sanctions against parties. *See In re Schaefer Salt Recovery,
Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (distinguishing Fed. R.
Civ. P. 11 and Fed. R. Bankr. P. 9011 "which are lengthy and
impose specific procedural requirements with which a party
seeking sanctions must comply" from § 1927, which is "short and
clear"), *quoted in Castellanos Group Law Firm, L.L.C. v. FDIC (In
re MJS Las Croabas Properties, Inc.)*, 545 B.R. 401, 418 (1st Cir.
B.A.P. 2016); *In re Miller*, 730 F.3d 198, 206 (3d Cir. 2013)
(noting, in the face of a party's failure to comply with the safe
harbor provisions of Rule 9011(c)(1)(A), that there are a number
of other sources of authority by which bankruptcy courts may

impose sanctions, "none of which contains a safe harbor timing provision[,]" including Rule 9011(c)(1)(B), under which the court may assess sanctions on its own initiative, the court's inherent power to sanction, 11 U.S.C. § 105, and 28 U.S.C. § 1927).  There is simply no foundation or basis in statutory or case law for claiming that the safe harbor provision of Rule 9011 applies to motions for sanctions premised on § 1927 and the court's inherent authority.

B.   Ability of a Bankruptcy Court to Issue Sanctions
      Despite 11 U.S.C. § 523(d)

As Carvalho notes, in opposing the *Motion for Sanctions*, LeFande has concocted an argument (unsupported by any case law) that 11 U.S.C. § 523(d) somehow limits the Court's inherent authority to award sanctions.  Section 523(d) is a fee-shifting statute which permits a court to impose sanctions for a claim brought under § 523(a)(2) as to a consumer debt if such claims lack substantial justification.  Nothing in § 523(d) limits a court's power to award litigation sanctions pursuant to its inherent power or pursuant to § 1927.

C.   Authority of a Bankruptcy Court to Impose
      Sanctions Under § 1927

LeFande also argues that this court, in contrast to a district court, lacks the authority to assess sanctions pursuant to § 1927.  *See* Dkt. No. 185 at 6 (citing *Regensteiner Printing Co. v. Graphic Color Corp.*, 142 B.R. 815, 818 (N.D. Ill. 1992)

37

(holding that a bankruptcy court is not a "court of the United States" and thus is not authorized to impose § 1927 sanctions)).[14]  However, *Volpert v. Ellis (In re Volpert)*, 177 B.R. 81, 88-89 (Bankr. N.D. Ill. 1995), *aff'd*, 186 B.R. 240 (N.D. Ill. 1995), *aff'd on other grounds*, 110 F.3d 494 (7th Cir. 1997), persuasively rejected the view of *Regensteiner Printing* and similar decisions and reached the better view that a bankruptcy court, by statute, is a unit of the district court and, by reference under 28 U.S.C. § 157(b), is authorized to exercise the power of the district court, as a "court of the United States," to impose sanctions under § 1927.

Moreover, decisions from various federal courts of appeals addressing the issue as a matter of first impression in their respective circuits agree that a bankruptcy court may impose sanctions under § 1927.  *See Grossman v. Wehrle (In re Royal Manor Management, Inc.)*, 652 F. App'x 330, 341-42 (6th Cir. 2016); *In re Schaefer Salt Recovery, Inc.*, 542 F.3d at 105*; Adair v. Sherman*, 230 F.3d 890, 895 n.8 (7th Cir. 2000)*; Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 230 (2d Cir. 1991).  There are earlier circuit court decisions, decided before *Volpert*, that take the view that the

---

[14]  LeFande also cites to an Eighth Circuit case from 1987 and Northern District of Illinois cases from 1990 and 1991 that all merely question whether the bankruptcy case has the authority to sanction parties under § 1927.

bankruptcy court may not impose sanctions that the district court may exercise as a "court of the United States."  *See Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.)*, 40 F.3d 1084, 1086 (10th Cir. 1994); *Perroton v. Gray (In re Perroton)*, 958 F.2d 889, 893-96 (9th Cir. 1992) (no authority to waive filing fees under 28 U.S.C. § 1915(a)); *Gower v. Farmers Home Admin. (In re Davis)*, 899 F.2d 1136, 1138-40 (11th Cir. 1990) (no authority to award fees under 28 U.S.C. § 2412).  However, those decisions are unpersuasive in light of the reasoning of the decisions to the contrary.

In any event, 11 U.S.C. § 105 authorizes a bankruptcy court to sanction abusive conduct of the character described in § 1927. *See Volpert*, 110 F.3d at 500 ("The broad power to 'issue any order . . . appropriate to carry out the provisions' of Title 11 and 'to prevent an abuse of process' certainly encompasses the power to issue an order to sanction an attorney who, in the words of 28 U.S.C. § 1927, 'multiplies the proceedings . . . unreasonably and vexatiously.'  We therefore hold that, under 11 U.S.C. § 105(a), bankruptcy courts may punish an attorney who unreasonably and vexatiously multiplies the proceedings before them.") (citations omitted).

III

APPLICABLE STANDARDS FOR IMPOSING SANCTIONS

A.   Burden of Proof

When an award of sanctions is made pursuant to § 1927 or the court's inherent powers, the court's finding of misconduct warranting such an award must be supported by clear and convincing evidence.  *Alexander v. FBI*, 541 F. Supp. 2d 274, 303 (D.D.C. 2008).  The clear and convincing standard "generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain."  *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994) (citations omitted).  *See also Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015).

B.   Requirements for Imposing Sanctions Under § 1927

Section 1927(a) only applies to an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously."  There are thus two requirements for § 1927 sanctions to be imposed.

(1) *The Requirement That the Conduct Have Multiplied Proceedings*.  Section 1927 "only applies to actions that result in unreasonable and vexatious *multiplication* of proceedings."  *Gust, Inc., v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1328 (Fed. Cir. 2018) (emphasis in original).  As the Federal Circuit Court of Appeals noted in *Gust, Inc.* (*id.*):

40

> This necessarily excludes a filing of a baseless
> complaint, which is properly analyzed under Fed. R. Civ.
> P. 11. *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65
> (1st Cir. 2008) ("[A]n unbroken band of cases across the
> courts of appeals hold[s] that a lawyer cannot violate
> section 1927 in the course of commencing an action," and
> therefore holding that the failure to vet or investigate
> a claim cannot give rise to a § 1927 sanction); *Zuk v. E.
> Pa. Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996)
> (holding that § 1927 award is unavailable for failing to
> adequately investigate the facts and law prior to filing
> a complaint); *DeBauche v. Trani*, 191 F.3d 499, 511 (4th
> Cir. 1999).

However, if a claim is plainly frivolous, the continued pursuit

of the claim would constitute a multiplication of proceedings.

*Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006)

("Given the patently meritless nature of the § 1985 claims, we

conclude that Gage's conduct in pursuing those claims in the face

of Winn's motion to dismiss multiplied the proceedings recklessly

and with indifference to well-established law.")  The D.C.

Circuit has held that § 1927 imposes "'a continuing obligation on

attorneys by prohibiting the persistent prosecution of a

meritless claim.'"  *Robertson v. Cartinhour*, 883 F. Supp. 2d 121,

126 (D.D.C. 2012) (quoting *United States v. Wallace*, 964 F.2d

1214, at 1220-21 (D.C. Cir. 1992) (citation omitted)), *aff'd for

the reasons set forth in the District Court's opinion*, 554 Fed.

Appx. 3 (D.C. Cir. Jan. 22, 2014).  *See also Reliance Ins. Co. v.

Sweeney Corp., Maryland*, 792 F.2d 1137, 1139 (D.C. Cir. 1986) (a

party "should not be forced to endure the expense and anxiety of

waiting unnecessarily to have its dispute resolved."); *In re*

*Schaefer Salt Recovery, Inc.*, 542 F.3d at 101–102 (holding that because § 1927 deals with the unreasonable multiplication of proceedings that needlessly prolong litigation, "'§ 1927 has been interpreted to impose a continuing obligation on attorneys to dismiss claims that are no longer viable.'") (quoting *Vandeventer v. Wabash Nat'l Corp.*, 893 F.Supp. 827, 845–46 (N.D. Ind. 1995)); *The Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) ("We have also interpreted § 1927 to impose a continuing duty upon attorneys to dismiss claims that are no longer viable.") (internal quotation marks omitted).

(2) *The Requirement That the Conduct Have Been Vexatious and Unreasonable.* When there *has* been a multiplication of proceedings, sanctions under § 1927 have been held to be warranted in this circuit if counsel has engaged in a reckless indifference to the merits of a claim. *Reliance Ins. Co.*, 792 F.2d at 1138.[15] Accordingly, a finding of unreasonable and vexatious behavior that justifies the imposition of sanctions

---

[15] A later decision of the Court of Appeals, *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 45 n.9 (D.C. Cir. 1990), observed that "[u]nlike Rule 11 . . . section 1927 applies only when the attorney acts in *subjective bad faith*" (emphasis in original), but that was dictum because sanctions were imposed pursuant to Rule 11. As in *In re Greater Se. Cmty. Hosp. Corp., I*, No. 02-02250, 2010 WL 3123086, at *2 (Bankr. D.D.C. Aug. 9, 2010), I view myself as bound to follow the holding of *Reliance Ins. Co.* despite decisions of the Court of Appeals expressing the view that the law in the D.C. Circuit is unsettled as to whether a court must find subjective bad faith or merely recklessness to impose sanctions under § 1927. *See Wallace*, 964 F.2d at 1218-19; *LaPrade*, 146 F.3d at 905(citing *Wallace* for this proposition).

under § 1927 requires "evidence of recklessness, bad faith, or improper motive" on the part of the attorney. *Hall*, 219 F. Supp. 3d at 119 (quoting *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 906 (D.C. Cir. 1998)). For the imposition of sanctions pursuant to § 1927, the attorney's conduct must have been at least reckless, which means the attorney must have deliberately chosen a course of action "in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores." *Wallace*, 964 F.2d at 1219-20. "[R]eckless misconduct requires conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man." *Id.* at 1220 (quoting *Restatement (Second) of Torts* § 500 cmt. g (1964)), *cited in Robertson*, 883 F. Supp. 2d at 125.

The advancement of frivolous arguments is a basis for finding unreasonable and vexatious conduct under § 1927. *See Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 227 (7th Cir. 1984) (finding that sanctions under § 1927 are appropriate when an attorney "intentionally file[s] or prosecute[s] a claim that lacks a plausible legal or factual basis."); *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) ("[W]hen an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly

obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney.").

The D.C. Circuit has held in a number of cases that § 1927 sanctions are appropriate where "the attorney's behavior has been repeated or singularly egregious," as where an attorney "'repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing the litigation.'" *Robertson*, 884 F. Supp. 2d at 126 (quoting *Wallace*, 964 F.2d at 1220-21 (citation omitted). *See also Fritz v. Honda Motor Co.*, 818 F.2d 924 (D.C. Cir. 1987).

C.    Standards for Awarding Sanctions Pursuant to the Court's Inherent Authority

In contrast to the recklessness standard for the imposition of sanctions pursuant to 28 U.S.C. § 1927, the imposition of sanctions pursuant to the court's inherent authority requires a finding of bad faith on the party of the party being sanctioned. *See Wallace*, 964 F.2d at 1219 (D.C. Cir. 1992) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980); *Chambers*, 501 U.S. at 46-50). "Actions that evince bad faith or an egregious disrespect for the [c]ourt or judicial process may garner sanctions, including contempt sanctions, fines, awards of attorney fees, and such other orders and sanctions as the court finds necessary." *Hall*, 219 F. Supp. 3d at 119 (quoting

44

*Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)) (internal quotation marks omitted).

Because the imposition of attorney's fees is considered punitive in nature, the court "must find clear and convincing evidence of the predicate misconduct" before imposing such a sanction pursuant to its inherent powers. *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995), *quoted in D'Onofrio v. SFX Sports Grp., Inc.*, 2010 WL 3324964, at *6 (D.D.C. Aug. 24, 2010); *Alexander*, 541 F. Supp. 2d at 303-04 (D.D.C. 2008). Although the court's ability to assess sanctions pursuant to its inherent authority "extends to a full range of litigation abuses" including bad faith, *Nee Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 (4th Cir. 2007) (quoting *Chambers*, 501 U.S. at 46), it "must be exercised with restraint and discretion." *Kreischer Kerrison Dry Goods*, 229 F.3d 1143, 2000 WL 1157805, at *3 (4th Cir. 2000) (quoting *Chambers*, 501 U.S. at 44).

"A party is not to be penalized for maintaining an aggressive litigation posture, nor are good faith assertions of colorable claims or defenses to be discouraged. But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 180-181 (D.C. Cir. 1980). To impose sanctions for bad faith, "the court must find some

45

connection between the sanctioned conduct and a process of the court in the litigation before it." *Alexander v. FBI*, 541 F. Supp. at 303 (D.D.C. 2008).  The court may only award fees attributable to the offensive conduct in question. *Kerin v. United States Postal Serv.*, 218 F.3d 185, 192 (2d Cir. 2000); *Lipsig*, 663 F.2d at 181 n.21.

In *Animal Welfare Institute v. Feld Entertainment*, 944 F. Supp. 2d 1, 19 (D.D.C. 2013), the court noted decisions under which, when bad faith is alleged to exist based on a false statement, "[t]he bad faith must also be material to warrant sanctions; in other words, it must have occurred in an area 'critical to the success of [plaintiffs'] case.' *Perichak v. Int'l Union of Electrical Radio & Machine Workers*, 715 F.2d 78, 84 & n.9 (3d Cir. 1983); *see also Ass'n of Amer. Physicians & Surgeons, Inc. v. Clinton*, 187 F.3d 655, 661 (D.C. Cir. 1999)." However, that statement in *Feld Entertainment* must be read in the context of the decisions it cites.  In *Clinton*, the government submitted an affidavit that improperly included a false statement as to the applicability of a Freedom of Information Act exemption, **but the government never relied on that exemption.** *Clinton*, 187 F.3d at 661.  Sanctions were not appropriate because the false statement was not material or advanced as being material.  In *Perichak*, however, the false statement at issue was **knowingly false testimony regarding a material fact**. *Perichak*,

46

715 F.2d at 84 n.9 ("Perichak's 'materially false statements [made] under oath' . . . are, having been critical to the success of his case, alone, enough to support a finding of bad faith."). *Perichak* did not address the issue of imposing sanctions for a party's pressing, in bad faith, an immaterial statement, resulting in a meaningful increase in the attorney's fees incurred by the opponent.  In other words, the statement in *Feld Entertainment* must be read as meaning that immaterial statements raised by a party but not advanced by that party as being material to the case cannot be the basis for an award of sanctions.  Nor should immaterial arguments that are readily disregarded as being immaterial be a basis for awarding fees when they do not meaningfully increase the attorney's fees incurred by the opponent.  *See Kerin*, 218 F.3d at 192.  Nevertheless, if a party or its attorney continues to rely in bad faith on an immaterial false statement, treats that statement as material, puts the opponent to the burden of rebutting the statement, and thereby disrupts or prolongs the litigation, sanctions may be appropriate even though the false statement was immaterial.  The statement in *Feld Entertainment* cannot be read as holding to the contrary.  For example, when an attorney is told by the court not to raise a contention but, in bad faith, persists in doing so, thereby adding to the burdens on opposing counsel, sanctions may be appropriate.  Any knowingly improper conduct in the litigation

47

that subjects the opposing party to incurring additional
attorney's fees is properly sanctionable under the court's
inherent powers.  *Lipsig*, 663 F.2d 178 at 181.

IV

SANCTIONS ARE UNWARRANTED REGARDING THE
ALLEGATION OF THE AMOUNT OF CARVALHO'S DEBT TO SIMU

In each version of Simu's complaint, LeFande alleged that
"Carvalho is indebted to Simu in the sum of at least $464,582.15
pursuant to a judgment debt . . . ."  The only judgment that Simu
obtained against Carvalho was from the Superior Court of the
District of Columbia, which was for the amount of $90,250.00.
However, pending in the Superior Court was Simu's post-judgment
request for attorney's fees, and it was obvious that LeFande was
alleging that pursuant to the judgment, Carvalho is indebted to
Simu for the $90,250.00 plus the attorney's fees sought pursuant
to the post-judgment motion.  The existence of the $90,250.00
judgment entitled Simu to seek any attorney's fees, and any
attorney's fees awarded based on the existence of misconduct
leading to a nondischargeable underlying debt would be
nondischargeable as well.  *See Cohen v. de la Cruz*, 523 U.S. 213,
218-20 (1998).  Simu was entitled to seek a determination of
nondischargeability of any attorney's fees awarded, and needed to
plead the existence of the debt for attorney's fees as part of
the debt for which nondischargeability existed.  No sanctions are
warranted for LeFande's having alleged that Carvalho is indebted

48

to Simu in the sum of at least $464,582.15 pursuant to the
judgment.

V

SANCTIONS ARE UNWARRANTED REGARDING THE PURSUIT OF COUNT IV
AND THE ADVANCING OF VARIOUS MERITLESS POSITIONS IN THAT REGARD

Carvalho seeks sanctions for LeFande's pursuit of Count IV
of the first and third amended complaints on behalf of Simu.  To
prevail on her attempt to deny Carvalho a discharge under
§ 727(a)(2)(B), Simu had to show (1) that at least part of the
funds held by Elite were profits, with any shareholder
entitlement to such profits constituting property of the estate,
(2) that Carvalho had transferred those profits to herself, thus
transferring property of the estate to herself, and (3) that she
did so with an intent to hinder, delay, or defraud a creditor or
Ross as the trustee.

A.   Background

To put the discussion of this issue in context, it is worth
noting two points that ultimately proved to be inconsequential
but upon which LeFande tenaciously relied: first, the effect of
D.C. Code  § 29-806.02, and, second, Elite's treatment upon its
tax returns of payments to Carvalho as being shareholder
distributions instead of payments of compensation for work
performed.

*LeFande's Contention That Carvalho Was Not Authorized To
Manage Elite Postpetition.*  In support of Count IV, LeFande

49

argued that Carvalho no longer had authority to manage Elite,
having been dissociated as a member of Elite pursuant to D.C.
Code § 29-806.02. *See*, *e.g.*, Dkt. No. 5 at ¶ 101. Statutes like
D.C. Code § 29-806.02 "demonstrate that loss of membership
interest upon adjudication of bankruptcy is a standard
consequence for a member of a limited liability company."
*AmBuild Co., LLC v. United States*, 119 Fed. Cl. 10, 25 n.15
(2014). Carvalho's ownership interest, as a member, became
property of the bankruptcy estate, to be administered by Ross as
the trustee. *Id.* at 24-25. However, under 11 U.S.C. § 541,
Elite's property was not property of the bankruptcy estate as it
was an entity separate from Carvalho. Only Carvalho's
shareholder interest became property of the estate. *See Connolly
v. Nuthatch Hill Assocs. (In re Manning)*, 831 F.2d 205, 207 (10th
Cir. 1987) (tenancy in partnership, but not indirect interest in
assets owned by the partnership, was part of the bankruptcy
estate). Carvalho never disputed that her shareholder interest
was property of the estate. Ross, as effectively the shareholder
upon the intervention of the bankruptcy case, could have taken
steps as shareholder to bar Carvalho from operating the company,
but he did not. Instead, he affirmatively acquiesced in Carvalho
continuing to operate the company and compensating herself for
work performed. As Ross recognized, without Carvalho managing
the company, it would have folded. In operating the company,

50

Carvalho was necessarily performing work for which she was
entitled to compensation from Elite.

Although Carvalho's shareholder interest in Elite did become
property of the estate, Ross did not view that interest as having
any value to the bankruptcy estate worth attempting to liquidate
the shareholder interest or to operate Elite himself.  On January
19, 2016, he filed in the main bankruptcy case, Case No.
15-00646, a *Chapter 7 Trustee's Report of No Distribution*, in
which he recited "that there is no property available for
distribution from the estate over and above that exempted by law"
and certified "that the estate of the above-named debtor(s) has
been fully administered."  That eventually effected an
abandonment back to Carvalho because, upon the court's closing
the case based on the estate being fully administered, 11 U.S.C.
§ 554(c) treated the shareholder interest as abandoned to
Carvalho.  The *Chapter 7 Trustee's Report of No Distribution*
should have been a warning sign to LeFande that Count IV was
likely doomed, but that does not establish that LeFande should
have recognized that Count IV was without merit.

*LeFande's  Argument that Elite's Tax Returns Showed Carvalho
as Receiving No Wages*.  Elite's income tax returns did not report
wages being paid to Carvalho (or to Simu when Simu was a member
of Elite).  How Elite classified the payments to Carvalho on its
income tax returns filed after the payments were made to Carvalho

51

did not alter, after the fact, that the payments to her were in

substance compensation for services,[16] and thus not a transfer of

property of the estate.  Nevertheless, LeFande was entitled to

point to the tax returns, which Carvalho signed, as being

inconsistent with her position in this adversary proceeding that

the payments were all compensation.  However, the evidence at

trial demonstrated that Carvalho performed substantial work each

year, with the payments being Carvalho's livelihood, and being

made to compensate Carvalho for work performed.

*The Trial*.  At the close of Simu's evidence, I declined to

grant Carvalho's motion to enter judgment pursuant to Fed R. Civ.

P. 52(c) in favor of Carvalho as to Count IV:

- Simu had testified that some of the insurance policies

    were renewals requiring little work.  In other words,

    at least some of the policies generated revenues

    without the necessity of any major work and thus

    LeFande could argue that a plausible inference existed

---

[16]   Elite could be held liable for employment taxes for such
compensation payments upon their being recharacterized by the
Internal Revenue as such.  *See Joseph Radtke, S.C. v. United
States*, 712 F. Supp. 143, 145 (E.D. Wis. 1989) ("dividends"
received in 1982 by sole shareholder, director and full-time
employee of S corporation, who drew no salary, held to be wages
subject to employment tax), *aff'd per curiam*, 895 F.2d 1196 (7th
Cir. 1990); *Spicer Accounting, Inc. v. United States*, 918 F.2d
90, 91, 94-95 (9th Cir. 1990) ("dividends" received in 1981 and
1982 by shareholder, president, treasurer, director, and employee
of S corporation, who drew no salary, held to be wages subject to
employment tax).

that some of the withdrawals should be treated as a
payment to Carvalho of profits.

- Moreover, Elite's tax returns for both prepetition and
postpetition periods, signed by Carvalho, treated the
distributions to members as distributions of Elite's
earnings, not as employee compensation.

- Nor had the court heard at this point any testimony
that the withdrawals were made with Ross's
acquiescence, or testimony regarding Ross's view to the
effect that the payments were for work performed.

LeFande could also argue that an inference could be drawn that
the withdrawals were made with knowledge on Carvalho's part that
the withdrawals included profits and thus an inference could be
drawn that the withdrawal of estate property was made with an
intent to defraud Ross as trustee.

Obviously Carvalho performed work for Elite and was entitled
to compensation for that work.  Upon the conclusion of the
presentation of all evidence, I found that even if the contention
that what Carvalho withdrew were profits (in whole or in part)
were correct, Carvalho was not intentionally attempting to
defraud a creditor or Ross as trustee of the estate, having
relied on her counsel's advice that it was appropriate to
withdraw funds to compensate her for work performed and Ross's
acquiescence in Carvalho's withdrawing funds.  Moreover, there
was nothing in the record to suggest that the payments to

53

Carvalho were in excess of a level of reasonable compensation, and the burden being on Simu to show otherwise, none of the payments could be viewed as profits despite Elite's tax returns having erroneously treated the payments as profits and not compensation.

    B.    Carvalho's Arguments in Support Sanctions as to the Pursuit of Count IV

In seeking sanctions regarding Count IV, Carvalho argues that LeFande knowingly misrepresented that Carvalho testified at a hearing in the Superior Court that Elite had a body of insurance contracts that were subject to automatic renewal. Specifically, Carvalho argues (Dkt. No. 181-1 at 8-10):

> Mr. LeFande explained his theory in support of Count IV during a March 17, 2017 hearing on Ms. Carvalho's motion to quash subpoenas and for a protective order. [Footnote omitted.] <u>See</u> Dkts 119, 122, & 129. Mr. LeFande, relying on the Ms. Carvalho's testimony in Simu Ex. 22, laid out his theory:

> > It has been the Plaintiff's assertion from the *onset of this litigation* that the Debtor has a body of insurance contracts subject to *automatic renewal* to which the company is receiving residual income *in tens or hundreds of thousands of dollars* on an ongoing basis and that these are profits of the company to which the debtor has been inappropriately drawing from, from the onset . . . . The income coming into this company is coming from those insurances companies . . . what is in dispute is the nature of that income . . . .

> Dkt. 129 at 35:50 [emphasis added by Carvalho's counsel]. Mr. LeFande further repeated this theory in Simu's pretrial statement:

> > Carvalho previously testified before the Superior Court that the value of Elite Insurance &

> Consulting Services, LLC lies in this body of accounts, of which 80 to 90 percent are renewal contracts providing residual income to the company. Simu Ex. 22 at 15.

Dkt. 134 at p. 21 ¶ 48.

. . . Mr. LeFande easily could have discovered the flaw in his factual allegations and legal theories by simply reading the entirety of the transcript of the Superior Court hearing to which he referred, Simu Ex. 22. Had he done so, he would have seen Ms. Carvalho did not testify that these renewals are automatic. See Simu Ex. 22 at 15:13-19.   To the contrary, in response to questions from *Mr. LeFande*, Ms. Carvalho testified that there was no contractual obligation for the insured to renew the policy through Elite, and therefore the renewal was not automatic. See Simu Ex. 22 at 19:4-20. [Emphasis in original.]

But perhaps the coup de grace regarding the frivolous nature of this argument is Mr. LeFande's closing argument at the Superior Court hearing, where, in opposing Ms. Carvalho's motion for a temporary restraining order to prevent Ms. Simu from taking Elite's clients, he argued:

> The remaining alleged injury is entirely speculative to which this Court cannot afford relief and that is as to whether or not a policy that expires in a year will be renewed with no contractual obligation whatsoever to the insured to renew it as such. Whether or not the insured chooses to renew with Elite has whatever market factors influence that.

See Simu Ex. 22 at 33:18-24.

. . . Mr. LeFande could have verified that his theory never had a basis in fact by speaking to his client.   At trial, Ms. Simu confirmed on direct examination that the policies Elite sold were not automatically renewing and that specific work needed to be done on a yearly basis to retain the account. Dkt 170 & 174.   Ms. Simu confirmed on cross-examination that there are no guarantees that a client will renew, and that clients sometimes do not renew for a variety of reasons.

For reasons discussed below, I reject this argument.[17]

C.    Conclusion that no Sanctions are Warranted as to the
      Pursuit of Count IV

For reasons discussed below, and although it is a close
call, I reject Carvalho's argument because (1) LeFande's argument
regarding Carvalho's testimony in the Superior Court was at most
a case of inconsequential hyperbole that, though annoying, did
not meaningfully subject Carvalho to additional attorneys' fees,
and (2) the evidence is not clear and convincing that the
argument was a false statement made recklessly or in bad faith.

(1) *Immateriality of LeFande's Argument*.  At trial, LeFande
did not contend that there was absolutely no work performed on
policies that renewed, only that at least some of these policies
generated revenues, in the form of commissions, upon being
renewed without the necessity of any major work and thus should
be treated as profits.  Whether the commissions on those policies
should be treated in part as profits of Elite (because relatively

---

[17]    Carvalho also complains about the discovery burdens to
which she was put based on LeFande's pursuit of Count IV.
LeFande issued subpoenas to certain insurance companies, and that
led to Carvalho's obtaining a protective order limiting the scope
of the information to which Simu was entitled.  Carvalho points
to the the April 25, 2017 pretrial hearing, at which LeFande
admitted that he did not need information that he had sought via
the subpoenas, stating that he had all of the evidence he needed
to prove his claims based on what he claimed were Ms. Carvalho's
own damaging admissions.  However, if the pursuit of Count IV
was warranted, LeFande's decision not to further pursue the
subpoenaed information cannot be the basis for sanctions.

little work was required) was an issue Simu was entitled to pursue.[18]

Accordingly, LeFande's argument regarding Carvalho's Superior Court testimony (arguing that she testified that the policies automatically renewed) was not critical to the success of Simu's case and did not meaningfully increase Carvalho's attorney's fees incurred.  Thus, it cannot be a basis for sanctions.  In other words, because Carvalho was required to defend even if LeFande had not made this argument regarding Carvalho's Superior Court testimony, Carvalho's fees incurred in this proceeding are not attributable to the offensive conduct in question, and thus cannot be a basis for sanctions.  *Kerin*, 218 F.3d at 192.  With respect to § 1927, LeFande's argument did not

---

[18]  Carvalho complains that her counsel "spent countless hours preparing to defend against the issues in Count IV at trial," including preparing to rebut the opinion of Grant Clowery, an expert designated by LeFande, who took the position that 80-90% of Elite's income came from automatic renewals.  Dkt. No. 181-1 at 11.  LeFande did not call Clowery as a witness, thus making Carvalho's counsel's preparation regarding Clowery a wasted effort.  However, if the pursuit of Count IV is not a basis for sanctions, LeFande's trial decision not to call Clowery cannot form a basis for sanctions.

prolong the proceeding, such that there was a multiplication of proceedings warranting sanctions.[19]

(2) *Lack of Clear and Convincing Evidence of Misconduct.* Carvalho has not shown by clear and convincing evidence that LeFande's argument regarding Carvalho's Superior Court testimony was a knowingly false statement constituting bad faith or a false statement made with reckless disregard of its falsity. The issue of whether LeFande accurately recited that policies automatically renewed was a matter of semantics. There was no contractual obligation on the part of clients to renew their policies. However, a significant part of the insurance policies *did* renew automatically if a client decided not to move to another insurance company or to go to a different broker. In other words, if the client did nothing, many of the policies renewed automatically. Whether work was required to persuade the client to let the policy renew was a different matter. Simu testified at trial that *little work* by Elite was required to assure that

---

[19] Consideration of imposing a § 1927 award must focus "on the conduct of the litigation and not on its merits." *Kerin*, 218 F.3d at 192 (quoting *DeBauche*, 191 F.3d at 511). Section 1927 focuses on whether an attorney's conduct "imposes unreasonable and unwarranted burdens on the court and opposing parties." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc). LeFande's repeated suggestion that Carvalho did no work for Elite "did not improperly prolong the proceedings, and thus cannot serve as a basis for the entry of an award under section 1927." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 966 (Fed. Cir. 2010); *In re Schaefer Salt Recovery, Inc.*, 542 F.3d at 101 (observing that "§ 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case . . . ").

result.  If LeFande meant that *no work* was required, he made a

knowingly false statement.  However, LeFande did not explicitly

state that no work was required, although he came close to

suggesting that, and I cannot find that clear and convincing

evidence establishes that, in context, LeFande meant that no work

was required.  I reach this conclusion even though LeFande went

so far at various stages to make statements, enumerated below,

suggesting that Carvalho performed no work for Elite whatsoever.

All of these statements could be viewed as justified based on

Elite's tax returns having treated payments to Carvalho as

shareholder distributions, not payments of compensation for work

performed, with Carvalho arguably bound by Elite's implicit

classification of her on its tax returns (which Carvalho signed)

as not being an employee.

*First*, in opposing the motion to dismiss Carvalho's Amended

Complaint[20] LeFande argued (Dkt. No. 19 at 14):

> Carvalho did not receive pay for work performed from
> Elite following her petition, she received residual
> income from insurance policy sales realized by Elite and
> falsely omitted from her petition under accounts

---

[20]  Count IV was not included in Simu's original Complaint,
which included no claim under 11 U.S.C. § 727(a) to deny Carvalho
a discharge: it only included counts seeking a determination that
the debts owed to Simu were of a nondischargeable character.
However, the bar date for objecting to discharge was March 14,
2016, so Simu was still free to pursue a complaint objecting to
Carvalho's receiving a discharge of any debts when she filed her
Amended Complaint on February 16, 2016, which included a Count IV
based on Carvalho's postpetition withdrawals of $3,315 in funds
from Elite's bank account.

receivable or commissions already earned in Schedule A/B.
. . .
    . . . As a shareholder, and not an employee,
Carvalho's multiple draws from a purportedly insolvent
company are themselves improper.

*Second*, in her *Motion for Reconsideration*, filed after the

court dismissed Count IV of Simu's Amended Complaint, Simu argued

that the court's prior dismissal of Count IV was "clearly in

error" and ". . . Carvalho was not entitled to any kind of

'compensation'.  She was a shareholder, not an employee, and only

entitled to a share of profits, if any."  Dkt. No. 34 at 10.

*Third*, in a *Motion for Preliminary Injunction*, LeFande

argued that Carvalho "**was a shareholder, not an employee**, and

only entitled to a share of profits, if any, and only after all

debts of the company had been paid"  Dkt. No. 64 at 11 (emphasis

added).

*Fourth*, at a hearing held on November 29, 2016, regarding

the *Motion for Preliminary Injunction*, Simu, through LeFande,

argued (Dkt. No. 107 at 15) (emphasis added):

    . . . **[T]he Debtor hasn't had a job in 5 years.**  The Debtor
    has had an ownership interest in a company to which she is
    paid profits through, that -- she has never received a salary,
    she has never received any kind of piecework, wages or fees.
    She receives a share of profits from a corporation to which
    she has now voluntarily put into the estate of this bankruptcy
    proceeding.

He prefaced that by arguing (*id.* at 14) (emphasis added):

    **This company**, as we are prepared to demonstrate today,
    and as I'm sure the bank records show, **is a cash cow with
    renewing insurance contracts paying repetitive**

**commissions over multitude of years**, as the Debtor herself testified to the Superior Court.

*Fifth*, months later, in Simu's third motion for summary judgment, filed at the conclusion of discovery related to Count IV, LeFande claimed that Carvalho received post-petition shareholder distributions from the company and received no compensation for personal services.  LeFande argued that this was evidenced by Carvalho's and Elite's financial documents, which showed business income, shareholder distributions to Carvalho, and no documents related to expenses in the form of compensation for personal services.  Dkt. No. 133, Memorandum at 18.

Although I conclude that no sanctions are appropriate with respect to the pursuit of Count IV, I feel compelled to observe that it is obvious that LeFande did not present his client's case with the level of candor to which the court was entitled.  He presented arguments that amounted to overkill, suggesting that Carvalho did no work whatsoever, when all that was necessary was to argue that at least some of the funds generated by Elite amounted to profits because little work was required to generate commissions from some renewal policies.  That argument had some scant support in the record although ultimately it was academic: Carvalho viewed the withdrawals as compensation (even if Elite's tax returns treated them differently) and had no intent to defraud a creditor or Ross as trustee of the estate in making the payments from Elite to herself.

61

VI

REQUEST FOR SANCTIONS WITH RESPECT
TO THE CLAIM REGARDING CARVALHO'S VALUATION OF ELITE

Simu claimed that in valuing Elite as worth only one dollar, Carvalho knowingly and fraudulently made a false oath in connection with the bankruptcy case, such as to warrant the denial of discharge under 11 U.S.C. § 727(a)(4)(A). After Simu completed presenting evidence, I granted Carvalho's motion to enter judgment pursuant to Fed R. Civ. P. 52(c) on this claim. I found that Carvalho had not knowingly and fraudulently made a false oath. Carvalho seeks sanctions for the pursuit of that claim. However, as discussed with respect to Count IV, Elite's tax returns showed substantial shareholder earnings distributions, LeFande presented evidence that clients often elected to let policies renew with Elite remaining as the insurance agent, and Simu's testimony could be viewed as suggesting that as to some clients little work was required on the part of Carvalho to achieve that result. As in the case of Count IV, LeFande's statements regarding the extent of automatic renewals were at most annoying hyperbole that was immaterial, did not prolong the proceedings, and were not shown by clear and convincing evidence to have been false statements made recklessly or in bad faith. Sanctions are not appropriate as to the claim regarding Carvalho's valuation of Elite.

62

VII

SANCTIONS ARE PARTIALLY WARRANTED
WITH RESPECT TO THE CLAIM UNDER 11 U.S.C. § 523(a)(2)
BASED ON ELITE'S ALLEGEDLY FALSE INCOME TAX RETURN FOR 2014

In her Amended Complaint, Simu alleged that during the
pendency of the Superior Court action, and specifically on or
about March 6, 2015, Carvalho tendered to Simu a materially false
tax return and false financial statements for Elite, intending to
underreport the amount of income realized by Elite and to defraud
Simu of commission money due to her for the year 2014; that
Carvalho used the false tax return to defend herself in the
Superior Court trial, depriving Simu of information regarding the
existence of income of Elite which could have aided in the
damages calculation at trial.  Dkt. No. 5 at ¶¶ 121-24.  Those
allegations were incorporated as part of Count VIII, which
alleged that the money judgment which Carvalho owes Simu is based
upon money obtained through false pretenses, false
representations and actual fraud, and asserted that the debt at
issue was nondischargeable under, among other provisions, 11
U.S.C. § 523(a)(2).

Carvalho moved to dismiss the § 523(a)(2) claim.  Dkt. No.
10-1 at 12-13.  LeFande did not respond to Carvalho's arguments
regarding § 523(a)(2).  I dismissed Count VIII's claim of
nondischargeability under § 523(a)(2) because there was no
allegation that the false income tax return and false financial
statements induced Simu to part with money or property.  Dkt. No.

63

30 at 3.[21]  The assertion of the § 523(a)(2) claim in the Amended

Complaint cannot be viewed as a multiplication of proceedings,

and although the assertion of that claim was frivolous, I cannot

say that the initial assertion of that frivolous claim was

anything other than gross recklessness, not rising to the level

of bad faith.  Accordingly, sanctions for the initial assertion

of the § 523(a)(2) claim cannot be awarded under either § 1927 or

the court's inherent powers.

Simu moved for reconsideration of the dismissal of Count

VIII, Dkt. No. 34 at 2-4.  She noted that in the interim the

Supreme Court had held in *Husky Int'l Electronics, Inc. v. Ritz*,

578 U.S. ----, ----, 136 S.Ct. 1581 (2016), that a false

statement was not required under § 523(a)(2)(A) for there to be

an instance of property obtained by fraud.  Under *Husky*

*International*, a fraudulent transfer constitutes "actual fraud"

---

[21]  However, Simu had also alleged that Carvalho had made
transfers to herself from Elite and into a new bank account with
an intent to defraud Simu.  Because of that, I suggested that
Count VIII might be reinstated to assert a § 523(a)(2) claim if
the Supreme Court ruled in a pending case (*Husky International*,
discussed later) that for purposes of § 523(a)(2) there can be
fraud without the necessity of a fraudulent statement (*e.g.*, in
the case of a fraudulent transfer).  Dkt. No. 30 at 3 n.1.
However, I noted that the issue was academic because Simu had
already pursued the issue of a fraudulent transfer by seeking a
denial of discharge under § 727(a)(2)(A) in Count III based on
Simu's allegedly making the transfers to herself from Elite and
into a new bank account with an intent to defraud Simu.
Necessarily, if there was no fraud under § 727(a)(2)(A) in
Carvalho making the transfers, there would be no fraud for
purposes of § 523(a)(2) either.

64

within the meaning of § 523(a)(2)(A).  However, in seeking

reconsideration, LeFande did not point to any fraud other than

the alleged false tax return of Elite, an act that the court had

previously ruled (Dkt. No. 30 at 2-3) did not form a basis for a

§ 523(a)(2)(A) claim because it did not induce Simu to part with

money or property.[22]  The motion to reconsider advanced the

bizarre argument that § 523(a)(2) applied because "Carvalho used

the tax return in an attempt to obtain a windfall in the form of

a lesser judgment against her by misrepresenting the income of

Elite Insurance & Consulting Services, LLC to Simu, to the

Superior Court and to this Court."  Dkt. No. 34 at 3.  The

argument was plainly frivolous and had been rejected by the

court's prior ruling.  The alleged "windfall" did not give rise

to there being a debt "for money, property, services, or an

extension, renewal, or refinancing of credit, to the extent

obtained by . . . false pretenses, a false representation, or

actual fraud" as required for § 523(a)(2)(A) to apply.  As I had

ruled in dismissing Count VIII, the false tax return had not

induced Simu to part with money or property, and thus could not

be a basis for a § 523(a)(2)(A) claim.  The Superior Court

judgment simply was not a debt for property obtained by reason of

the false tax return.  Accordingly, for these reasons I denied

---

[22]  LeFande did not seek reconsideration based on Carvalho's
transfers to herself from Elite and into a new bank account with
an alleged intent to defraud Simu, acts already addressed in
Count III regarding denying a discharge based on § 727(a)(2)(A).

reconsideration of the dismissal of the § 523(a)(2) claim.  Dkt.
No. 79 at 4-7.

The evidence is clear and convincing that in advancing once
again the frivolous claim that the false tax return was a basis
for asserting nondischargeability under § 523(a)(2), a claim that
this court had already rejected, LeFande multiplied the
proceedings, and did so unreasonably, vexatiously, and in bad
faith.  The plaintiff's counsel asserted a veritable kitchen sink
of frivolous claims throughout the proceeding, and I can only
infer that the continued assertion of the frivolous § 523(a)(2)
claim based on the false income tax return, after the court had
explained why the claim was without merit, was deliberately
designed to increase Carvalho's burden in defending this
proceeding.  The continued assertion of the claim made it that
much more difficult for Carvalho to obtain a disposition of the
adversary proceeding, and imposing sanctions for this litigation
abuse is an appropriate exercise of the court's authority under
§ 1927 and the court's inherent authority.

Carvalho's counsel was required to respond to the frivolous
argument, including analyzing *Husky International* and devoting
almost a page and a half to addressing the argument in the
opposition memorandum.  Dkt. No. 38 at 6-7.[23]  Attorney's fees

_____

[23]  The court's decision disposing of the motion for
reconsideration devoted three and a half pages to addressing this
argument.  Dkt. No. 79 at 4-7.

are warranted for the time Carvalho's attorneys spent addressing the frivolous argument.

### VIII

#### SANCTIONS ARE UNWARRANTED FOR CONTINUING TO RELY ON THE ALLEGEDLY FALSE ELITE TAX RETURN IN SUPPORT OF THE § 523(a)(4) CLAIM

Carvalho seeks sanctions as to claims of nondischargeability under § 523(a)(4) based on the allegedly false Elite income tax return, but such sanctions are not warranted. Count I of the Second Amended Complaint and the Third Amended Complaint (arguing nondischargeability under 11 U.S.C. § 523(a)(4)) included Simu's allegations that Carvalho owed Simu a fiduciary duty and Carvalho breached that duty by providing an allegedly false tax return during the Superior Court litigation in 2015 for the year 2014 in order to justify paying Simu less than she was due, and to enrich herself personally.

The court's *Memorandum Decision and Order Re Motion to Dismiss and for More Definite Statement* (Dkt. No. 30) directed Simu to file a more definite statement as to the amended complaint's Counts I and IX, claims that the Superior Court judgment is nondischargeable under § 523(a)(4). In response, Simu filed her Second Amended Complaint. Dkt. No. 35. On June 9, 2016, Carvalho filed a *Motion to Strike in Part the Second Amended Complaint* (Dkt. No. 36) (hereinafter *Motion to Strike*), which sought to strike, *inter alia*, Count IX, but, significantly,

not Count I.  Count I of the Second Amended Complaint included

new allegations (summarized as follows in the Second Amended

Complaint, Dkt. No. 34 at ¶ 164) that:

> Defendant Carvalho's use of the false tax return to
> deprive Simu of money rightfully owed to Simu and for
> Carvalho to enrich herself personally constituted a
> breach of fiduciary duty to Simu.

On October 22, 2016, Carvalho filed a motion for summary judgment

(Dkt. No. 65) seeking to dismiss the Second Amended Complaint,

and, as to the return for 2014, relied on affidavits establishing

that she turned over the preparation of the return to Elite's

accountants, that the return's entries as to which Simu

complained were entries made by the accountants based upon their

understanding of tax law, and that the accountants are of the

view that the entries were proper under tax law.  On November 4,

2016, Simu filed an opposition thereto.  Dkt. No. 72.

On November 15, 2016, after Simu had already opposed

Carvalho's motion for summary judgment, I raised in the

*Memorandum Decision and Order Regarding Debtor's Motion to Strike*

*Portions of Creditor's Second Amended Complaint* (Dkt. No. 80) an

issue that Carvalho had not raised.  Specifically, I expressed my

doubts in a footnote (Dkt. No. 80 at 9 n.2) (hereinafter

"Footnote 2") that the new set of allegations in Count I provided

a basis for relief under § 523(a)(4) when the judgment debt at

issue was not one for damages arising from filing a false income

tax return, stating:

68

Simu will eventually need to address the court's following concerns. As I understand the Second Amended Complaint, Carvalho used the false tax return in the Superior Court litigation, resulting in a judgment for less than Simu was entitled to receive. Carvalho's debt to Simu has been fixed by the Superior Court. Even if Carvalho caused a reduced judgment to be entered against her by using the false return, the issue of whether the judgment debt should be increased because it was based on Carvalho having used the false tax return is an issue to be addressed by the Superior Court as the court that decided the amount Carvalho owed Simu as a result of the parties' transactions. The Superior Court's judgment against Carvalho in favor of Simu, which created the debt owed to Simu underlying this adversary proceeding, was not based on Carvalho's alleged use of a false tax return; if Carvalho did in fact furnish a false return in the course of the Superior Court litigation, that action only impacted the total amount of the debt-not the creation of the debt. Accordingly, the judgment debt is not a debt for breach of fiduciary duty based on the use of a false tax return (if such use was, *arguendo*, a breach of fiduciary duty).

However, I did not strike Count I with respect to the claim that the judgment debt was a nondischargeable debt under § 523(a)(4) based on the use of the false income tax return: no motion was pending seeking a striking of that claim. Ultimately the proceeding never reached the point at which Simu was required to present evidence or arguments responsive to the issue, as I granted Carvalho's motion for summary judgment (which did not rely on that issue, relying instead on Carvalho having obtained advice of accountants as to the propriety of the returns).

In seeking sanctions, Carvalho argues (Dkt. No. 181-1, at 14):

In sum, the Court put Mr. LeFande on notice, on November 15, 2016, of the various issues that he would need to

69

address in order to sustain his claims regarding the
purportedly false tax returns.

Notwithstanding the notice the Court provided to Mr.
LeFande, he made no effort to address the issues. [Fn.
4] These claims were not abandoned prior to trial, as
evidenced by Simu's Pretrial Statement. See Dkt 134 at
p. 2. Yet Mr. LeFande designated no expert to testify in
support of his claims, and he pointed no evidence to
rebut the evidence from Ms. Carvalho that she relied on
her accountants, and offered no evidence to rebut her
accountants' affidavit that the tax returns were correct.
The Court, therefore, granted summary judgment on this
claim on the morning of the first day of trial. But Mr.
LeFande's pursuit of this claim, knowing he had no
evidence to support it, required Ms. Carvalho and the
Court to spend time addressing it.

Footnote 4: Mr. LeFande also continued to make these
allegations in his filings to this Court, notwithstanding the
Court's professed concern with their validity. See, e.g.,
Dkts 123 & 133.

In short, Carvalho makes two arguments for sanctioning LeFande:

(1) LeFande ought to have withdrawn her § 523(a)(4) claim

concerning Elite's tax return for the year 2014 once the court

identified the issue discussed in Footnote 2 quoted above; and

(2) LeFande ought not have opposed her motion for summary

judgment regarding that claim.

As to the first argument, I fail to see how Simu recklessly

multiplied proceedings by failing to withdraw that claim despite

the court's identification of the issue discussed in Footnote 2

quoted above. LeFande cannot be sanctioned under § 1927 for

having filed the claim initially. *Gust, Inc.*, 905 F.3d at 1328.

The court and Carvalho never pressed LeFande to respond to the

issue identified in the footnote: the court did not order Simu to

show cause why the claim ought not be dismissed based on that
issue, and Carvalho had moved for summary judgment on entirely
different grounds (to which Simu had already responded before the
court issued the footnote).  Because LeFande was never pressed to
explain what damages arose from the allegedly false tax return
and were part of the Superior Court monetary judgment, it would
not be fair to impose sanctions against him for failing to
articulate any damages suffered from the submission of the false
return.

Nor did LeFande multiply the proceedings via the two
subsequent filings Carvalho identifies, Dkt. Nos. 123 and 133.
First, Dkt. No. 123 was Simu's *Opposition to Debtor's Second
Motion to Quash*, in which LeFande argued on behalf of Simu that
the subpoenas were solely intended to discern the source and
amount of income being generated by Elite and the Debtor's
unauthorized postpetition removal thereof.  Paragraph 3 of the
*Opposition* alleged that "[i]n the course of the underlying
Superior Court litigation, Carvalho produced a falsified tax
return and attendant financial statements in defense against
Simu's damages calculations.  Simu Ex. 17."  This was not a
renewal of the § 523(a)(4) claim regarding the 2014 tax return in
a way that disregarded Footnote 2 quoted above, and was at most
an attempt to support LeFande's argument that discovery was
justified because Carvalho could not be trusted.  Second, Dkt.

71

No. 133 was *Plaintiff Creditor's Third Motion for Summary Judgment on Dischargeability*, but it did not seek summary judgment on the basis that the tax return for 2014 had caused the judgment in the Superior Court to be less than it would have been otherwise, and thus did not disregard Footnote 2 quoted above.

Nor are sanctions appropriate based on the court's having rejected LeFande's arguments in opposition to Carvalho's motion for summary judgment.  Carvalho moved for summary judgment on the basis that she had relied on the advice of her tax accountants. LeFande opposed Carvalho's motion for summary judgment by arguing that as a matter of law, the tax return was not correct (Dkt. No. 72 at 20-23), including citing court decisions bearing on the issue of the deduction of attorney's fees for defense *of Carvalho* in the Superior Court on the tax return *for Elite*.  LeFande argued (*id.* at 23):

> Such advice if it did occur was wrong and the Debtor
> should have known it to be wrong. "[A]n attorney's [or
> accountant's] willingness to bear the burden of reproach
> [does not] provide blanket immunity to a debtor; it is
> well settled that reliance upon advice of counsel is, in
> this context, no defense where it should have been
> evident to the debtor".  *In re Tully*, 818 F.2d 106, 111
> (1st Cir. 1987).

I never attempted to determine whether the tax return was incorrect.  Instead, I granted summary judgment because Carvalho had demonstrated that her accountants had prepared the tax returns, that those accountants had relied on their understandings of tax law in making decisions regarding the

72

manner of preparing the returns, that they explained the basis upon which the returns were correct, and that Carvalho relied on their judgment and signed the returns.  Simu had presented no affidavits or other evidence to rebut the affidavits of the accountant and Carvalho regarding Carvalho's reliance on the accountant and the accountant's belief that the proper tax approaches had been used.  Nor had she presented evidence showing that Carvalho somehow should have known that her accountants' advice was wrong.

If the arguments of law upon which LeFande relied in contending that the tax return was in error were correct (which would at the very least have been a question open to debate), the record and the character of those questions of law would not permit a finder of fact to conclude that it should have been evident to Carvalho that the return was in error.  Therefore, I concluded that summary judgment was appropriate as to Count I as related to the Elite's tax return for the year 2014.  In addition, I quoted the Footnote 2 quoted above, and dismissed Simu's claim regarding Elite's return for the year 2014 on the basis of the defect I had noted in that footnote.  Dkt. No. 186 at 9-11.

Simu was entitled to a disposition of her arguments against summary judgment, and those arguments were made before the court made the observations in Footnote 2 quoted above.  Sanctions are

not warranted as to Count I as related to the Elite's tax return for the year 2014.

IX

SANCTIONS ARE UNWARRANTED REGARDING
THE CLAIMS RELATING TO THE SANDY SPRING BANK ACCOUNT

Sanctions are not appropriate with respect to the counts regarding the Sandy Spring Bank account.  The Third Amended Complaint (Dkt. No. 84) alleged:

> 64. On December 9, 2015, Carvalho made a cashier's check from the funds of Elite Insurance & Consulting Services, LLC's bank account with Bank of America to herself in the amount of $6,000.
>
> 65. Carvalho had never previously used a cashier's check to receive money from the company.
>
> 66. The employment of the cashier's check was specifically intended to hinder and delay Simu's execution of her Superior Court judgment.
>
> 67. The employment of the cashier's check was specifically intended to conceal the money from Simu.
>
> 68. On that date, Carvalho deposited the cashier's check in an account she opened that day with Sandy Spring Bank, an obscure bank with no locations in the District of Columbia.
>
> 69. The employment of a bank with no locations in the District of Columbia was specifically intended to hinder and delay Simu's execution of her Superior Court judgment.
>
> 70. The employment of a bank with no locations in the District of Columbia was specifically intended to conceal Carvalho's property.
>
> 71. On December 14, 2015, Carvalho withdrew $5,350 in cash from the Sandy Spring Bank account at the counter.
> . . .
>
> 104. At the January 14, 2016 Creditor's Meeting, Defendant Carvalho falsely testified as to her reason for opening the Sandy Springs [sic] Bank account.
>
> 105. Defendant Carvalho testified she needed the Sandy Springs [sic] Bank account to receive money and pay bills personally.
>
> 106. Defendant Carvalho already had a Bank of America account which served this exact purpose.

74

107. Defendant Carvalho never used the Sandy Spring Bank account for the purpose she claimed.

108. Defendant Carvalho used the Sandy Springs [sic] Bank account to fraudulently hide from Simu, the Trustee and the Court removal of cash from Elite Insurance & Consulting Services, LLC in the weeks prior to the filing of her Petition.

109. Defendant Carvalho used the Sandy Springs [sic] Bank account to fraudulently hide her transfer of cash from Elite Insurance & Consulting Services, LLC to pay her attorneys for her personal bankruptcy.

(Earlier versions of the complaint included similar allegations.) Simu relied on these allegations in the Third Amended Complaint's Count III (seeking denial of discharge based on 11 U.S.C. § 727(a)(2)(A), providing for a denial of discharge, *inter alia*, for transferring or concealing property of the debtor, within one year before filing of the petition, with intent to hinder or delay a creditor) and Count V (seeking a denial of discharge based on 11 U.S.C. § 727(a)(4)(A) for allegedly having made a false oath at the meeting of creditors regarding the Sandy Spring Bank account). In seeking sanctions regarding the pursuit of these claims, Carvalho argues (Dkt. No. 181-1 at 15):

Ms. Carvalho explained in an affidavit filed with her Motion for Summary Judgment on October 22, 2016 precisely how the money put into the Sandy Spring account was used, confirming the truth of her prior testimony [at the meeting of creditors]. Mr. LeFande nevertheless maintained these allegations until the Court dismissed the claims at the close of the Plaintiff's evidence at trial. Further, Mr. LeFande did not even designate on his exhibit list the transcript from the creditors' meeting – the very proceeding where Mr. LeFande accused Ms. Carvalho of making a false oath. Mr. LeFande's continued pursuit of the verifiably false claims, with no evidentiary support, was frivolous and vexatious.

75

However, as noted in this court's decision denying dismissal of
Simu's claims regarding the Sandy Spring Bank account, first
asserted in Simu's Amended Complaint, there was clearly an issue
of intent (whether Carvalho intended the transfer to hinder or
delay Simu) that warranted this matter to go beyond the pleading
stage (Dkt. No. 30 at 9-10):

> Carvalho argues that Elite's funds are not property of
> the Debtor and a transfer of funds by Elite does not fall
> within the reach of § 727(a)(2)(A), citing *Grochocinski
> v. Campbell (In re Campbell)*, 475 B.R. 622, 635 (Bankr.
> N.D. Ill. 2012).  However, the funds became Carvalho's
> when she withdrew them from Elite's account. Placing such
> funds in a personal bank account generally would likely
> not be the type of transfer § 727(a)(2) has in mind: the
> bank account remains an asset in which the debtor retains
> ownership.  However, imagine a debtor who transfers his
> funds to a secret bank account in Panama.  Such a
> transfer could qualify as a transfer made with the intent
> to hinder, delay, or defraud a creditor, and to conceal
> the funds, within the meaning of the statute.  Simu
> alleges that this was precisely what Carvalho intended to
> accomplish. Even if the court views with some skepticism
> these allegations (because the personal account was
> apparently one located here in Carvalho's metropolitan
> area, and the deposit of the cashier's check into the
> Sandy Springs [sic] bank account, also located in
> Carvalho's metropolitan area, could be readily traced,
> and because Carvalho disclosed both accounts on the
> schedules filed with her petition in the same month as
> these alleged transfers), Simu is entitled to demonstrate
> that the necessary intent existed.
>
> In addition, if the funds withdrawn by Carvalho were
> funds owed to her that would have been seized by an
> eventual charging order, the conversion of the funds owed
> to Carvalho into funds received with the intent of
> frustrating any forthcoming charging order might very
> well be a transfer (a change in the form of ownership
> from an account payable to funds received) done with the
> intent to hinder or delay Simu.

I declined to grant Carvalho's motion for summary judgment as to these claims regarding the Sandy Spring Bank account.  Dkt. No. 186 at 6.  In other words, Simu was allowed to proceed to trial on those claims.

LeFande appears to have intended to examine Carvalho at the trial about the transfer to Sandy Spring Bank.  He attempted to call Carvalho as a witness at the trial, but he had failed to subpoena her to testify, and thus was unable to present her as a witness.  LeFande failed to present evidence of Carvalho's meeting of creditors testimony at the trial.  LeFande was unable to prove that Carvalho's purpose in making the transfer to the Sandy Spring Bank account was for a purpose other than that to which she allegedly testified at the meeting of creditors, and LeFande was unable to prove that the transfer was made with an intent to hinder or delay Simu or to conceal the funds withdrawn from Elite's account.  LeFande failed to provide any evidence as to what became of the $6,000.  Carvalho could have used the money for some purpose that would not constitute an attempt to hinder and delay Simu in violation of § 727(a)(2)(A).  If a charging order had been obtained before the bankruptcy case began, it would have been directed to Elite, which Carvalho managed, and she could have refused to comply with the charging order.  When she filed her bankruptcy case only six days after the transfer of the money, 11 U.S.C. § 362(a) would have stayed any attempt by Simu to obtain a charging order as a means of collecting the debt

owed to Simu.  At the close of Simu's evidentiary case, the evidence that LeFande presented, in light of the foregoing, failed to show that Carvalho made the $6,000 withdrawal with the intent to hinder and delay Simu, or that she had testified falsely at the meeting of creditors about the purpose of the transfer.

LeFande had a valid basis for opposing Carvalho's motion for summary judgment regarding the claims concerning the $6,000 transfer, and sanctions cannot be imposed in that regard based on Carvalho's contention that she "explained in an affidavit filed with her Motion for Summary Judgment on October 22, 2016 precisely how the money put into the Sandy Spring account was used, confirming the truth of her prior testimony [at the meeting of creditors]."  This follows because the claims presented obvious issues of intent that were inappropriate for disposition by way of a motion for summary judgment.  The evidence, for purposes of Carvalho's motion for summary judgment, had to be viewed in the light most favorable to Simu, not as the court as the fact finder, in this non-jury matter, might view that evidence at trial.  That is to say, even though I was of the view that the evidence in support of Carvalho's motion for summary judgment would establish at trial that the claims should be decided in Carvalho's favor, summary judgment was inappropriate. *See Farmland Indus., Inc. v. Grain Bd. of Iraq*, 904 F.2d 732, 738

(D.C. Cir. 1990) ("The district judge [in granting summary
judgment] has examined virtually all the evidence it would have
before it at a bench trial . . . . Nevertheless, we must decide
this case just as if there were a jury available, for the law of
summary judgment does not vary with this circumstance.").

Nor did it matter, as Carvalho contends in seeking
sanctions, that LeFande did not designate the transcript of the
meeting of creditors (at which Carvalho allegedly made a false
oath) as a trial exhibit.  LeFande was entitled to attempt to
call Carvalho for the purpose of establishing her testimony at
the meeting of creditors.  That his attempt to do so was
unsuccessful does not establish that he proceeded in bad faith or
that he multiplied the proceedings vexatiously and unreasonably.

X

THE CLAIMS REGARDING CARVALHO'S
ALLEGEDLY FALSE STATEMENTS REGARDING HER REAL PROPERTY

Carvalho seeks sanctions in regard to LeFande's pursuit of
claims based on alleged false statements regarding the value and
ownership of Carvalho's real property.  Sanctions are appropriate
with respect to at least some of LeFande's conduct in pursuing
those claims.

Simu's Amended Complaint alleged that Carvalho falsely
understated in her petition and attached schedules the value of
her real property and falsely claimed in her petition and

attached schedules that she was not the sole owner of her real property.  Dkt. No. 5 at ¶¶ 76 and 77.  These allegations were asserted as a basis for seeking a denial of discharge under 11 U.S.C. §§ 727(a)(3) and 727(a)(4).

*Claim Under § 727(a)(3).*  Count II of the Amended Complaint, like Count II of all subsequent versions of the complaint, sought a denial of discharge under 11 U.S.C. § 727(a)(3) (applicable when a debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained") and alleged that "[t]his information . . . includes Defendant Carvalho's false claims to this Court as to . . . the value and ownership of her real property."  Dkt. No. 5 at ¶ 130.  The court dismissed the Amended Complaint's assertion of this claim, and in its decision cited *Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir. 1987) (debtor's failure to disclose in the statement of affairs that he transferred an interest in a house to his wife did not constitute a falsification of records from which his financial condition might be ascertained).  Dkt. No. 30 at 6-7.  Nevertheless, Simu included this same claim in her Second Amended complaint.  Dkt. No. 35 at ¶ 175.  This forced Carvalho to move to strike this claim (and certain other claims) in the Second Amended Complaint.

Dkt. No. 36 at ¶ 8.  In ruling on the motion to strike, the court noted that it had dismissed the allegations under § 727(a)(3) regarding Carvalho's real property as part of Count II of the Amended Complaint.  Dkt. No. 80 at 2.[24]  Despite this, Simu's Third Amended Complaint once again asserted this very same § 727(a)(3) claim regarding Carvalho's real property.  Dkt. No. 84 at ¶ 175.  Sanctions against LeFande are warranted based on his twice asserting this claim that the court had already dismissed: he acted in bad faith in disregarding the court's dismissal order, and his conduct vexatiously and unreasonably multiplied the proceedings.  Carvalho is entitled to recover her attorney's fees for work performed in response to the pursuit of this claim after its dismissal.  *Lipsig*, 663 F.2d at 182 (approving sanctions for obstinate conduct in the pursuit of claims).

*Claim Under § 727(a)(4)*.  In Count VI of the Amended Complaint, Simu also sought a denial of discharge under 11 U.S.C. § 727(a)(4) for false oaths fraudulently made in the bankruptcy case.  In identifying false statements made fraudulently, Simu alleged that "Carvalho further grossly understated her total assets in the schedules attached to her petition."  Dkt. No. 5 at ¶ 155.  In disposing of Carvalho's motion to dismiss, I treated

---

[24]  The court inadvertently did not affirmatively order the claim to be stricken, but it made clear that the claim had been dismissed.

Simu's allegations regarding Carvalho's alleged false statements regarding her real property as being included as part of that § 727(a)(4) claim.  Dkt. No. 30 at 19.

On October 22, 2016, Carvalho filed her first motion for summary judgment.  The included a request for summary judgment as to the § 727(a)(4) claim of allegedly fraudulently false statements regarding her real property that had been carried forward in Simu's Second Amended Complaint filed on May 26, 2016. She noted:

> During a deposition of the Plaintiff on October 4, 2016, Plaintiff's Counsel indicated that the Plaintiff may no longer be pursuing this claim.  As this claim remains part of the Second Amended Complaint, however, the Defendant includes this among the claims regarding which she seeks summary judgment.

In support of the motion, Carvalho attached Tiber Island Cooperative Share Certificates showing that Carvalho owns her interest in the cooperative housing unit as a "tenant in common" with her mother, with each owning 50% of the shares in the apartment unit, and an affidavit of Carvalho explaining that she estimated the value of the apartment based on listings for sales of comparable units in the same apartment building which houses the unit.

On November 7, 2016, LeFande filed an opposition (Dkt. No. 72) to Carvalho's motion for summary judgment *in toto*, failing to concede that summary judgment was appropriate as to this claim, arguing that "Carvalho is not entitled to a discharge for her

invariably false statements to this Court throughout the course
of these proceedings" even though he presented no evidence or
arguments to rebut Carvalho's evidence submitted in support of
summary judgment as to this claim.  The result was that this part
of the motion for summary judgment remained in play to be
addressed at the hearing on the motion for summary judgment held
on January 24, 2017.  In failing to concede that summary judgment
was appropriate as to this claim, LeFande proceeded in bad faith
and he vexatiously and unreasonably multiplied the proceedings.

Moreover, on November 22, 2016, LeFande included this claim
as part of Simu's Third Amended Complaint (necessitated by the
need to re-allege Count IV which the court determined had been
dismissed in error).  LeFande did so when it was plain (based on
evidence supplied in Carvalho's first motion for summary
judgment, a motion LeFande had reviewed because he filed Simu's
opposition on November 7, 2016) that there had been no false
claim about the ownership of the apartment unit and when it was
plain that summary judgment in favor of Carvalho was appropriate
as to the claim that she knowingly and fraudulently had provided
a false value of her interest in the unit on her schedules.  This
too is an instance of LeFande's proceeding in bad faith and in a
manner that vexatiously and unreasonably multiplied the
proceedings.

In seeking sanctions, Carvalho states (Dkt. No. 181-1 at
16):

83

Mr. LeFande repeatedly claimed that Ms. Carvalho had
falsely understated the value of her real property and
false [sic] represented that she was not the sole owner
of her real property. These allegations were
consistently made despite the fact that a stock
certificate in the cooperative housing unit ownership was
provided to him early on in the proceeding via, *inter
alia*, requests for admissions, showing that she jointly
owned her interest in the co-op property with her mother.
Incredibly, Mr. LeFande refused to admit the validity of
the certificate, even [though] it is a matter of public
record. Instead, he continued to prosecute this
verifiably false claim through until nearly a year after
this adversary proceeding was filed. During the
Plaintiff's deposition, he suggested the claim was being
withdrawn, and subsequently included the allegation again
in the Third Amended Complaint [filed on November 22,
2016]. Only at the January 24, 2017 hearing on
Carvalho's Motion for Summary Judgment did he finally
indicate to the Court that this claim was being
withdrawn.

LeFande has not responded to this statement, and I treat him as

conceding it to be accurate. Once the certificates of ownership

were provided to LeFande, he ought to have withdrawn the claim

regarding ownership of the real property. It ought not have been

necessary for Carvalho to move for summary judgment on the issue

of ownership. LeFande's failure to withdraw the claim was done

in bad faith and it vexatiously and unreasonably multiplied the

proceedings.

Because sanctions are appropriate as to the conduct

identified above regarding the § 727(a)(4) claim, Carvalho is

entitled to recover attorney's fees for the attorney work

necessitated by such conduct. The amount of work necessitated

may have been relatively small, but Carvalho is entitled to seek

such fees and to be compensated for the time spent pursuing the

recovery of such fees. "[C]ourts have uniformly held that time

spent establishing the entitlement to and amount of the fee is

compensable under federal fee-shifting provisions . . . ."

*Blixseth*, 854 F.3d at 629 (fees under 28 U.S.C. § 1927). *See*

*also Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 693

(9th Cir. 1991) (common-law fee-shifting); *Norelus,* 628 F.3d at

1298 (fees under 28 U.S.C. § 1927).

XI

ALLEGATIONS IN SUPPORT OF § 523(a)(4)
AND § 727(a)(3) CLAIMS THAT CARVALHO
SUBMITTED A FALSE INCOME TAX RETURN FOR ELITE

As part of Simu's claims that Carvalho breached a fiduciary

duty to Simu (such that the Superior Court judgment was

nondischargeable under 11 U.S.C. § 523(a)(4)), and that Carvalho

falsified records from which her financial condition or business

transactions might be ascertained (such that Simu was entitled

under 11 U.S.C. § 727(a)(3) to a denial of Carvalho's receipt of

a discharge), LeFande pursued a legal theory that Carvalho had

knowingly falsified an income tax return and financial statements

for Elite, "intending to under report the amount of income

realized by Elite Insurance & Consulting Services, LLC and to

defraud Simu of commission money due to her for the year 2014."

Dkt. No. 5 at ¶ 122 (Amended Complaint); Dkt. No. 35 at ¶ 154

(Second Amended Complaint); Dkt. No. 84 at ¶ 154 (Third Amended

85

Complaint).  In Simu's Second Amended Complaint, LeFande added an allegation that "Carvalho's use of the false tax return to deprive Simu of money rightfully owed to Simu and for Carvalho to enrich herself personally constituted a breach of fiduciary duty to Simu."  Dkt. No. 35 at ¶ 164.  If Carvalho had owed Simu fiduciary duties, and she fraudulently breached that duty by failing to pay amounts owed for 2014 based on use of the false tax return, these allegations would support a claim of nondischargeability under 11 U.S.C. § 523(a)(4) "for fraud or defalcation while acting in a fiduciary capacity" and a claim under § 727(a)(3) to deny Carvalho a discharge.

The annoying aspect of the allegations regarding a false tax return was that Simu pursued her § 523(a)(4) claim by further alleging that the false tax return was used to reduce the amount awarded by the jury in the Superior Court civil action.[25]  In its ruling on the motion to strike portions of the Second Amended

---

[25]  LeFande alleged in Simu's Amended Complaint and in the subsequent amended complaints that "Carvalho employed the false tax return and financial statements to hide the existence of income of Elite Insurance & Consulting Services, LLC which could have aided in the damages calculation at trial."  Dkt. No. 5 at ¶ 124; Dkt. No. 35 at ¶ 167; Dkt. No. 84 at ¶ 167.  The Second Amended Complaint went further: "Such injuries to Simu in part arose directly from the fraud perpetrated upon the Superior Court by Defendant Carvalho's reliance upon the false tax returns at trial, by reducing the amount the jury determined to be damages to Simu."  Dkt. No. 84 at ¶ 166.  LeFande contended that "Carvalho used the tax return in an attempt to obtain a windfall in the form of a lesser judgment against her by misrepresenting the income of Elite Insurance & Consulting Services, LLC to Simu, to the Superior Court and to this Court."  Dkt. No. 34 at 3.

86

Complaint, the court expressed doubts in Footnote 2 that this served as a basis for declaring that the Superior Court judgment was a judgment for breach of fiduciary duty making the judgment nondischargeable: the judgment debt that was asserted to be nondischargeable was not a debt for having used a false tax return to reduce the amount of the judgment debt awarded.  In short, the claim did not make sense.  However, the evidence is not clear and convincing that the initial assertion of the claim was made in bad faith, and there is no suggestion that the initial assertion of the claim had any meaningful impact on the fees incurred by Carvalho.

Nevertheless, it is arguable that the continued pursuit of the claim *was* in bad faith.  Despite the court's expression of doubts that the claim had any merit, LeFande continued to press the claim.  In filing the Third Amended Complaint, LeFande continued to pursue the claim that the judgment debt at issue was nondischargeable based on the allegedly false tax return having been used to reduce the amount of the judgment awarded by the jury in the Superior Court civil action.  Dkt. No. 84 at ¶¶ 166-167.  However, sanctions are not appropriate for LeFande's continued pursuit of a claim that made no sense.  First, the allegation of a false income tax return remained pertinent to the § 727(a)(3) claim (falsification of financial records), and thus had to be addressed: there was no multiplication of proceedings.

87

Second, Carvalho never moved to dismiss or strike Simu's
§ 523(a)(4) claim regarding the allegedly false tax return from
the Second Amended Complaint on the basis that it made no sense.
Third, the Third Amended Complaint (necessitated by the need to
re-allege Count IV which the court determined had been dismissed
in error) had merely maintained the status quo regarding the
allegations concerning the false income tax return.  Finally,
Carvalho obtained a dismissal of the § 727(a)(3) claim and the
§ 523(a)(4) claims by establishing on summary judgment that there
was no knowingly false income tax return.[26]  Once summary
judgment was granted on that basis, it became unnecessary to
address whether Simu's § 523(a)(4) claim regarding the allegedly
false tax return made any sense: LeFande did not have occasion to
try to argue that it made sense, and Carvalho had no need to

---

[26]  As the court noted in granting summary judgment
regarding the allegedly false documents (Dkt. No. 186 at 9):

> Carvalho turned over the matter of preparation of the tax
> returns to her accountants.  The items as to which Simu
> complains were decisions made by the accountants based
> upon their understanding of the tax law.  Carvalho relied
> upon those opinions of the accountants and, on that
> basis, signed the tax return.
>
> In those circumstances, there was no breach of
> fiduciary duty and the Plaintiff has failed to come
> forward with any affidavits to rebut the affidavits of
> the accountant and of Carvalho, regarding her reliance
> upon the accountants as competent to prepare the tax
> returns, and the affidavits of the accountants
> establishing that they believe these were correct tax
> approaches.

defend on the basis that the claim made no sense.  In other
words, in light of the relevance of the allegedly false income
tax return to the § 727(a)(3) claim, LeFande never multiplied the
proceedings by reason of the allegations in the complaints that
the submission of a false return to reduce the damages awarded in
the Superior Court supported Simu's § 523(a)(4) claim.  Even if
LeFande could be said to have persisted in bad faith in pressing
this irrelevant claim with respect to § 523(a)(4), it became
immaterial to the outcome and cannot be said to have meaningfully
increased Carvalho's attorney's fees.

      With respect to LeFande's pursuit of the claim that the 2014
income tax return for Elite was false, sanctions are also not
warranted, as contended by Carvalho, based on LeFande's failure
to present evidence to rebut the statement in the affidavit of
Elite's accountant, submitted in support of Carvalho's motion for
summary judgment, explaining why the tax return was correct.  In
opposing Carvalho's motion for summary judgment, LeFande made a
legal argument that was not clearly implausible regarding why the
tax return was inaccurate, and argued that Carvalho should have
known that the return was inaccurate.  He cited *Tully*, 818 F.2d
at 111, in which a debtor's schedules omitted an asset, and the
court held that the debtor could not defend on the basis that he
relied on his attorney's preparation of the schedules when it
should have been evident to the debtor that the schedules had

omitted the asset.  Dkt. No. 72 at 20-23.  However, I concluded
that Carvalho and Elite's accountant's affidavits established
that the accountants and Carvalho believed the return was
accurate: the issue of the proper treatment of items on the
return was at best a debatable question and any impropriety in
the return, if there was any, was not something (in contrast to
an asset omitted from a debtor's schedules) of which Carvalho
should have been aware.  LeFande defended against the motion for
summary judgment by advancing arguments, which were not clearly
implausible, that the tax return was false and that Carvalho
should have been aware that the return was false.  Although I
rejected those arguments as insufficient to establish a
fraudulent intent on the part of Carvalho, LeFande did not
multiply the proceedings unreasonably and vexatiously and did not
act in bad faith.  Sanctions are not warranted for that conduct.

XII

SANCTIONS REGARDING THE
ASSERTIONS OF FRAUDULENTLY ALTERED EMAILS

Carvalho seeks sanctions for LeFande's having alleged that
Carvalho had fraudulently altered emails produced in the Superior
Court litigation.  Carvalho states:

> During this adversary proceeding, Mr. LeFande repeatedly
> accused Ms. Carvalho of having fraudulently altered
> emails during the course of the litigation in the
> District of Columbia Superior Court. For example, in
> opposition to her motion for summary judgment, Mr.
> LeFande asserted that "[i]n the course of the underlying
> Superior Court litigation, Carvalho produced emails to
> Simu which were determined to have been fraudulently

> altered by Carvalho from the originals. See Pl.'s Ex. 7."
> Dkt 72 p. 2 ¶ 2. This allegation was also raised at trial
> when counsel for Ms. Carvalho attempted to introduce an
> exhibit. However, Mr. LeFande introduced no evidence to
> support the allegation that Ms. Carvalho had
> "fraudulently altered" emails, nor any evidence that the
> Superior Court had made such a determination. The
> evidence that he alludes to in his opposition to summary
> judgment is a motion he filed in the Superior Court case.
> Mr. LeFande apparently cannot distinguish his own
> irresponsible allegations from actual findings by a
> court.

*Motion for Sanctions* at 16-17.  In his opposition to the *Motion for Sanctions*, LeFande has defended his conduct as having been appropriate, pointing to statements in Simu Ex. 7 at 1 (a filing by Simu in the Superior Court) reciting a pretrial order of the Superior Court as having directed Carvalho to produce and use at trial email exhibits which were not altered from their original context or content.  However, LeFande has not pointed to any ruling of the Superior Court determining that Carvalho had fraudulently altered emails, and his statement that the Superior Court had made such a determination is sanctionable.  LeFande's contention can be viewed as an attempt to impugn the integrity of Carvalho but was viewed as a sideshow that did not warrant resolution by this court, as evidenced by the court's never having to decide whether LeFande's contention that the Superior Court had determined that Carvalho fraudulently altered emails had any merit.  This annoying sideshow appears to have been readily disregarded not only by the court but also by Carvalho's attorneys.  Nevertheless, if able to do so, Carvalho can still

attempt to show that LeFande's conduct of misrepresenting what the Superior Court had determined resulted in a meaningful increase in Carvalho's attorney's fees such as to warrant sanctions in this regard pursuant to 28 U.S.C. § 1927 or the court's inherent power.

## XIII

### SANCTIONS ARE WARRANTED FOR LEFANDE'S PURSUIT OF MATTERS AFTER THEY HAD BECOME UNVIABLE OR HAD BEEN DISMISSED

The court will grant sanctions pursuant to 28 U.S.C. § 1927 for LeFande's continued assertion of unviable and frivolous allegations and claims over the course of the adversary proceeding. LeFande filed multiple lengthy motions that were almost entirely copied and pasted from previous motions that the court had denied, requiring both opposing counsel and the court to expend a significant amount of time and effort wading through voluminous filings.[27] Moreover, within LeFande's amended complaints, motions for summary judgment, and pretrial statements, LeFande copied and pasted allegations that were irrelevant to remaining claims or were specifically dismissed or rejected by the court, making it difficult for opposing counsel and for the court to ascertain the claims being asserted and the allegations relevant to each of the claims. LeFande demonstrated

---

[27] For example, Simu's Second Motion for Summary Judgment (a refiling of her first Motion for Summary Judgment to include exhibits in electronic form), her Third Motion for Summary Judgment, and her Opposition to Carvalho's Motion for Summary Judgment are all almost completely identical.

multiple times a reckless disregard of the continued presence of allegations he had no intention of raising or pursuing in the course of the litigation.[28]  The extent of these actions throughout the adversary proceeding justifies sanctions in the form of costs, expenses, and attorneys' fees reasonably incurred by Carvalho as a result of LeFande's unreasonable and vexatious conduct, as authorized by the terms of § 1927.  I anticipate that in some instances it will be difficult for Carvalho's counsel to attribute attorney's fees Carvalho incurred as a result of

---

[28]  Under the guise of expending a great deal of time and energy and work on this case, LeFande has largely copied and pasted the body of the same documents throughout the case, always requiring Carvalho and the court to respond to every frivolous allegation long after such allegations had been proven to be false or unrelated to remaining claims.  Simu's Second Amended Complaint failed to reflect many of the changes directed by the court to be made.  Simu's Third Amended Complaint contained many factual allegations that were demonstrably false or no longer relevant to claims remaining at that time, such as those related to Carvalho's ownership of real property (*Third Am. Compl.*, Dkt. No. 84 at 12-13) and the amount of cash Carvalho possessed at the time that she filed her petition (*Third Am. Compl.*, Dkt. No. 84 at 13).

LeFande's actions in this respect.[29]   However, this adversary
proceeding has been painful for the court to wade through, not
just Carvalho's attorneys.   Using the extra work imposed on the
court, I can make a fair estimate of the amount of time
Carvalho's counsel likely incurred, as a result of LeFande's
repetition of false or dismissed allegations.   However,
Carvalho's counsel should submit evidence in that regard unless
the parties request the court to make that estimate based on the
court's knowledge of the case and the hourly rates of counsel, a
step that may minimize the further attorney's fees incurred by
Carvalho and recoverable from LeFande.

     1.   Simu's Seeking Summary Judgment as to Counts Other Than
         Count IV After a New Scheduling Order Was Issued to
         Address Count IV

After the court reinstated Count IV, the court issued a new
scheduling order (Dkt. No. 112), entered on February 7, 2017, in

---

[29]   When filing oppositions to Simu's motions, Carvalho
appropriately chose to simply note when Simu raised factual
allegations or legal arguments that had already been dismissed or
denied by the court and objected to those allegations and
arguments on that basis.   If Carvalho chose to explain the
previous dismissal or denial, she did so in summary form.   During
hearings on various motions, Carvalho's counsel similarly
explained the prior rulings by the court in summary form when
addressing other allegations and arguments raised by Simu.
Because Carvalho declined to draft extensive responses to
repeated allegations and arguments that had already been
dismissed, she likely did not expend extensive extra work and
time to defend against or respond to such claims above and beyond
reading Simu's filings and examining and noting which allegations
and arguments had already been denied.   However, Carvalho's
attorneys necessarily incurred extra work and cost as a result of
LeFande's repeated advancement of meritless allegations and
arguments.

order to allow the parties to identify expert witnesses related
to Count IV, fully conduct discovery related to that Count, and
file any related dispositive motions.  LeFande filed Simu's third
motion for summary judgment (Dkt. No. 133) by the deadline set
out by the new scheduling order.  That motion, totaling 499 pages
with exhibits, improperly addressed the entirety of the Third
Amended Complaint.  At the time that Simu filed her third motion
for summary judgment on April 4, 2017, her second motion for
summary judgment (Dkt. No. 18), which had addressed all claims in
the Third Amended Complaint aside from Count IV, already had been
denied on November 15, 2016 (Dkt. No. 78).  Moreover, the
scheduling order entered on February 7, 2017, clearly set out
deadlines related to only Count IV, and the parties were aware
that the new deadlines, including the deadline for filing
dispositive motions, were only meant to relate to Count IV.

 2.   Disregard of Court's Ruling Regarding "No Asset Estate"
       Allegation

Carvalho's bankruptcy petition (Case No. 15-00646, Dkt. No.
1) included a "Part 6: Answer These Questions for Reporting
Purposes."  Question 17 of that Part 6 asked: "Do you estimate
that after any exempt property is excluded and administrative
expenses are paid that funds will be available to distribute to
unsecured creditors?" Carvalho answered "No."  In the initial
Complaint, LeFande included the allegation that "Defendant
Carvalho falsely claimed to this Court that her petition was for

a no asset estate." Dkt. No. 1 at ¶ 43. LeFande also made this
claim in a motion for sanctions shortly after the bankruptcy case
was filed. Case No. 15-00646, Dkt. No. 21. At the February 11,
2016 hearing on that motion, the Court held that Carvalho's
statement, which was consistent with her schedules, that she
"estimated that . . . funds would not be available to pay
creditors" was a matter of opinion that Carvalho could form for
whatever reasons she deemed appropriate, and such an estimate
could not be a false statement even if Simu could demonstrate
that funds would be available despite the schedules. Simu was
thus not entitled to sanctions under Fed. R. Bankr. P. 9011.
Case No. 15-00646, Dkt. Nos. 43 and 46.

Undeterred by this ruling, LeFande continued to make this
same allegation throughout the proceedings. In Simu's Amended
Complaint, filed five days after the February 11 hearing, LeFande
repeated this same allegation. Dkt. No. 5 at ¶ 64. Carvalho
moved to dismiss this allegation (Dkt. No. 10), and on May 13,
2016, the court dismissed it, ruling (Dkt. No. 30 at 20):

> This was her estimate, for what it was worth, and ought
> not serve as a basis for denial of a discharge. Even if
> the estimate was based on falsely omitting assets from
> her schedules or falsely understating the value of assets
> on her schedules, that does not change the fact that this
> was represented to be Carvalho's estimate of what would
> happen in the case.

However, LeFande was still not to be deterred. Two weeks later,
he filed a Second Amended Complaint that again included the same
allegation. Dkt. No. 35 at ¶ 78. He then continued to defy the

96

previous dismissal of the claim, repeating the allegation in

Simu's Third Amended Complaint.  Dkt. No. 84 at ¶ 78.  Even

later, LeFande included the allegation in a statement of material

facts as supporting Simu's third motion for summary judgment and

appended the same statement of material facts, containing this

allegation, as part of Simu's pretrial statement.  Dkt. No. 133-1

at ¶ 34; Dkt. No. 134.  LeFande's conduct demonstrates that he

pursued the claim in bad faith, and that he included this

frivolous claim as part of a kitchen sink of meritless claims he

threw at Carvalho in an attempt to increase Carvalho's attorney's

fees.  Accordingly, sanctions are appropriate under the court's

inherent powers for LeFande's having pursued this allegation.

Sanctions are additionally appropriate under 28 U.S.C. § 1927 for

LeFande's having multiplied the proceedings by persisting in

asserting this allegation.

> 3.   Disregard of Court's Ruling Regarding Nature of Debt to
>      Simu

In Simu's Amended Complaint, LeFande included the

allegations that Carvalho had misstated the nature of the debt

owed to Simu by "falsely" claiming that the debt was an unsecured

debt and had "falsely claimed to this Court in her Petition and

attached schedules that her debt to Simu was a business debt, and

not a recorded judgment for breach of fiduciary duties and

defalcation of [Elite's] funds for her own benefit."  Dkt. No. 5

at ¶¶ 75 and 78.  On the basis of those allegations, Count VI of

the Amended Complaint sought a denial of discharge under 11
U.S.C. § 727(a)(4)(A), because, among other reasons, "Carvalho
. . . misstated the nature of the debt to Simu in the schedules
attached to her petition."  *Id*. at ¶ 152.  On May 13, 2016, the
court dismissed Simu's claim that Carvalho had misstated the
nature of her debt to Simu, noting that there was a non-frivolous
argument that no lien arose from recordation of the judgment, and
that, accordingly, the allegations of the Amended Complaint
failed to establish that listing the debt as unsecured was made
deceitfully such as to be a basis for denying a discharge.  Dkt.
No. 30 at 14-17, 31.[30]  LeFande ignored this Court's order and
included these allegations regarding scheduling of the debt as
unsecured and as a business debt in Simu's Second Amended
Complaint filed on May 26, 2016, and Simu's Third Amended
Complaint filed on November 22, 2016.  Dkt. No. 35 at ¶¶ 89 and
92; Dkt. No. 84 at ¶¶ 89 and 92.  Even later, on April 4, 2017,
LeFande included as part of the statement of material facts in
support of Simu's third motion for summary judgment statements
that Simu recorded her judgment with the District of Columbia
Recorder of Deeds on October 29, 2015, and that Carvalho claimed

---

[30]  The debt plainly was a business debt and not a consumer
debt, and was accurately described as such on Carvalho's
schedules, and it was not necessary for Carvalho to provide
additional details.  Without the necessity of the court's stating
those obvious facts, the court's order dismissed *in toto* the
claim that Carvalho misstated the nature of her debt, and that
included the allegation that Carvalho falsely described the debt
to Simu as a business debt.

Simu's judgment against her to be a business debt.  Dkt. No. 133-1 at ¶¶ 7 and 53.  He then appended the same statement of material facts, containing this allegation, as part of Simu's pretrial statement.  Dkt. No. 134.

Count VI of the Second Amended Complaint and Count VI of the Third Amended Complaint, in seeking a denial of discharge under 11 U.S.C. § 727(a)(4)(A), no longer included as a basis justifying such relief a specific allegation that "Carvalho . . . misstated the nature of the debt to Simu in the schedules attached to her petition," and Simu's third motion for summary judgment did not seek summary judgment on that basis. Nevertheless, Count VI of the complaints continued to allege that false oaths in the case included "Carvalho's false attestation under oath that her answers in her Petition and its attachments were true and correct."  Dkt. No. 35 at ¶ 194; Dkt. No. 84 at ¶ 194.  Count VI of these complaints deleted specific allegations (that had been in the first Amended Complaint) that Carvalho's falsely scheduling the character of her debt to Simu constituted a basis for denying the debtor a discharge under 11 U.S.C. § 727(a)(4)(A).  However, the continued pursuit of the allegations that Carvalho falsely scheduled the character of her debt to Simu muddied the waters, and  was done in bad faith, warranting sanctions pursuant to the court's inherent powers.  In any event, their continued pursuit constituted a multiplication of proceedings warranting sanctions under 28 U.S.C. § 1927.

99

Whether any meaningful attorney's fees were incurred by reason of such conduct is a different question that will require proof by Carvalho.  Carvalho's attorneys may have readily brushed aside the allegations as having already been rejected by the court. Regardless of the outcome of whether any meaningful attorney's fees were incurred, however, LeFande's conduct adds weight to the view that LeFande was proceeding in bad faith in the adversary proceeding.

4.   Disregard of Court's Ruling Regarding Debts and Accounts Receivable Owed to Elite, and Separateness of Debtor From Elite

LeFande, who does not regularly practice bankruptcy law, seemed to misunderstand the difference between a Chapter 7 debtor's interest in a sole proprietorship and a Chapter 7 debtor's interest in a limited liability corporation. In Simu's Amended Complaint, LeFande included the allegations that in her schedules Carvalho had "falsely omitted the existence of debts owed to Elite" and "falsely omitted the existence of accounts receivable due to Elite."  Dkt. No. 5 at ¶¶ 79-80.  Like the allegations discussed above, the court dismissed these allegations on May 13, 2016 (Dkt. No. 30 at 19-20), explaining that Elite's property was not property of Carvalho to be included on her schedules.  Nevertheless, LeFande ignored this part of the court's order and repeated the allegations in Simu's Second Amended Complaint and her Third Amended Complaint.  Dkt. No. 35 at ¶¶ 94-95; Dkt. No. 84 at ¶¶ 93-94.  Even later, he included

the allegation that "Carvalho did not list any accounts
receivable or commissions already earned in Schedule A/B. ECF
Docket # 1 at 13" as part of Simu's statement of material facts
in support of Simu's third motion for summary judgment.  Dkt. No.
133-1 at ¶ 44.  He then appended that statement of material
facts, including paragraph 44, as part of Simu's Pretrial
Statement.  Dkt. No. 134.

Similarly, in this adversary proceeding and the main
bankruptcy case, LeFande contended that if Elite continued to
operate then under 11 U.S.C. § 721 Ross was required to obtain
authority for the continued operation of Elite's business and was
required under 11 U.S.C. § 704(a)(8) to file reports regarding
the operation of Elite; that Ross was required to employ Carvalho
as a professional pursuant to 11 U.S.C. § 327 and Fed. R. Bankr.
P. 2014 in order for Carvalho to be compensated for running
Elite; and that Carvalho was required to obtain approval under 11
U.S.C. § 330 for administrative expenses allowable under 11
U.S.C. § 503(b) prior to receiving compensation from Elite.  *See,
e.g.*, Dkt. No. 188 at 92 (invoking §§ 704 and 721), 94 (invoking
§ 704), 95 (invoking §§ 330 and 503 and Rule 2014).[31]  LeFande
repeated some of these arguments in his opposition to the *Motion
for Sanctions*.  *See* Dkt. No. at 20-21 (invoking § 503(b)); at 21

---

[31]  In the main case, Case No. 15-00646, *see* Dkt. No. 111 at
13, invoking § 704(a)(8); at 16-18, invoking §§ 327, 330, and
503(b); and Dkt. No. 131 (filed after the *Motion for Sanctions* in
this adversary proceeding).

(invoking § 704(a)(8)).  Given that Elite was not the debtor in
the bankruptcy case, such arguments ought not have been raised
once the court made clear on May 13, 2016, that Elite and the
debtor must be treated as separate entities.  However, the *Motion
for Sanctions* is limited to this adversary proceeding, and
Carvalho needed to identify the specific instances in which
LeFande made such arguments in the adversary proceeding and
needed to demonstrate the extent to which those arguments
meaningfully prolonged the disposition of the adversary
proceeding such as to be a multiplication of proceedings
resulting in meaningful attorney's fees being incurred because of
LeFande's making such arguments.  Her *Motion for Sanctions* failed
to point to such arguments as a basis for imposing sanctions.  It
would not be appropriate to award sanctions for such misconduct
occurring prior to the filing of the *Motion for Sanctions* and not
raised by the *Motion for Sanctions*.  She only pointed to such
arguments in her reply to LeFande's opposition to the *Motion for
Sanctions* by noting that LeFande included some of those arguments
in his opposition, continuing a pattern of previously raising
such misguided arguments.  Carvalho's reply appropriately
rebutted those misguided arguments in replying to the opposition,
and appropriately pointed to them as illustrating LeFande's
obstinate conduct in the case.  She is entitled to reasonable
fees in filing that reply in pursuing the *Motion for Sanctions* as

102

she is entitled to recover such attorney's fees for successfully pursuing sanctions.

5. Pursuit of Claim, After it Was Dismissed, Regarding $5,950 in Cash on Hand

Simu attempted in her Amended Complaint to characterize the alleged failure to list $5,950 in cash on hand as a false oath and as "withholding recorded information" from the trustee. Dkt. No. 5 at ¶¶ 150, 159, and 163. The Court dismissed claims in this regard on May 13, 2016, but LeFande re-alleged these claims in the Second Amended Complaint and the Third Amended Complaint. Dkt. No. 30 at 14, 21, and 31; Dkt. No. 35 at ¶¶ 195 and 208; Dkt. No. 84 at ¶¶ 195 and 208.

6. The Claim in Count VII That Undervaluing Elite Was a Withholding of Recorded Information From the Trustee

In Count VII of Simu's Amended Complaint, LeFande tried to characterize the alleged undervaluation of Elite as a withholding of "recorded information" from the Chapter 7 trustee. Dkt. No. 5 at ¶¶ 159 and 161. (This alleged undervaluation had already been included as part of Count V dealing with false oaths.) The Court dismissed Count VII with respect to this allegation on May 13, 2016. Dkt. No. 30 at 21, 31-32. LeFande ignored this and restated this allegation as part of Count VII in both the Second and Third Amended Complaints. Dkt. No. 35 at ¶ 206; Dkt. No. 84 at ¶ 206. While the claim that Carvalho had undervalued Elite properly remained- a claim under Count V of the Second Amended

Complaint and the Third Amended Complaint regarding false oaths,
it ought not have been pled as a claim in Count VII.

> 7.   Continued Pursuit Regarding Failure to List Insurance
>      Licenses

LeFande originally alleged on Simu's behalf that Ms.
Carvalho's failure to list her insurance licenses justified
denial of discharge.  This allegation was dismissed on May 13,
2016.  Dkt. No. 30 at 31.  LeFande inexplicably included it in a
statement of material facts attached to Simu's Pretrial
Statement.  Dkt. No. 134 at ¶¶ 42-43.[32]

## XIV

### LEFANDE'S ATTACKS ON THE
### INTEGRITY OF OPPOSING COUNSEL AND THE COURT

As previously stated, the most demonstrably vexatious
conduct by LeFande in this adversary proceeding relates to his
advancement, in writing and in court, of allegations that
Carvalho's attorneys were committing fraud and felonies,
assisting and advising their client to commit fraud upon the

---

[32]   Carvalho contends that LeFande improperly continued
pursuit, after filing Simu's Third Amended Complaint, of the
claim of nondischargeability under 11 U.S.C. § 523(a)(6).  That
§ 523(a)(6) claim had been asserted in Count X of the Second
Amended Complaint, and the court ruled that Simu could continue
to pursue that Count X only as to certain parts of her Superior
Court judgment.  However, Simu deleted Count X from the Third
Amended Complaint.  Nevertheless, LeFande has provided a
satisfactory explanation for why he felt authorized to pursue the
§ 523(a)(6) claim.  It was included in Simu's pretrial statement
(albeit not limiting the claim to only certain parts of the
Superior Court judgment) and the court did not strike it from the
pretrial statement.

court, and lying and misrepresenting facts to the court.  Equally
objectionable were LeFande's numerous outright and implied
allegations regarding bias and collusion of those attorneys,
Ross, and the court, and the proposition that those parties all
employed a combined effort to disadvantage his client.

Instead of addressing sanctions for such conduct under 28
U.S.C. § 1927, LeFande's conduct in that regard is more properly
sanctioned pursuant to the court's inherent authority.  In *Thomas
v. Tenneco Packaging Co.*, 293 F.3d 1306, 1325-26 (11th Cir.
2002), the Eleventh Circuit ruled that the district court had not
abused its discretion in invoking its inherent authority to
sanction an attorney for the attorney's bad faith conduct towards
his opposing counsel.  The Eleventh Circuit noted that documents
filed by the attorney were "saturated with invective directed at
opposing counsel."  *Id.* at 21.  This "invective" included "rude,
demeaning remarks about opposing counsel's physical traits and
demeanor[,] . . . attacks upon the fitness of opposing counsel as
a member of the bar, and . . . statements that can only be
construed as thinly veiled physical threats."  *Id.*  Additionally,
the relevant documents were "strewn with generalizations and
conclusory comments that paint[ed] opposing counsel as a racist
bigot and thus impugn[ed] his character."  *Id.*  In relevant part,
the Eleventh Circuit ruled (*id.* at 1322 (internal citation
omitted)):

105

Due to the insertion of all these patently offensive remarks in the five documents, the district court did not err in finding that [the attorney] filed the documents in bad faith, namely, "for the purpose of deliberately provoking unnecessary personal animosity and conflict between opposing counsel and for the purpose of creating an unjustified and false impression that the opposing legal positions of the parties were the result of racism on the part of [opposing] counsel." The district court's finding was correct because the remarks serve no purpose other than to harass and intimidate opposing counsel, and thus are inconsistent with basic rules of professional conduct that apply to [the attorney].

In this case, LeFande did not disparage the physical traits of his opposing counsel, did not accuse his opposing counsel of racism or bigotry, and did not make any physical threats to opposing counsel.  However, as Carvalho's counsel has outlined in her *Motion for Sanctions*, LeFande directed abusive language towards opposing counsel both in writings filed with the court and orally in open court.

At initial court hearings related to the adversary proceeding, LeFande only accused Carvalho of fraud and did so as an underlying element of his client's claims.  However, as time passed, these allegations of fraud turned on opposing counsel, the U.S. Trustee, the Chapter 7 trustee, and even the court.  In *Thomas*, 296 F.3d at 1318 n.15, the Eleventh Circuit noted that the district court explicitly chose to levy sanctions upon the attorney only on the basis of his conduct towards opposing counsel and chose not to address or sanction the attorney's "irrelevant and abusive comments made throughout the litigation about the Middle District [of Georgia], the district court, and

106

the Eleventh Circuit."  Similarly, in this case, the court

declines to issue sanctions on the basis of LeFande's abusive

comments regarding the court and the integrity of the court.

However, LeFande's treatment of opposing counsel in writings and

court appearances, both matters of public record, is a different

matter and it justifies the imposition of sanctions.

LeFande accused opposing counsel of knowingly and

intentionally committing fraud at hearings held on November 29,

2016, and January 24, 2017.  These allegations also appear in

documents filed by LeFande in the adversary proceeding.  LeFande

accused opposing counsel of conspiring to hide from the court,

the U.S. Trustee, and the Chapter 7 trustee, information of their

client's alleged unlawful activities at issue in the adversary

proceeding.  Dkt. No. 122; Dkt. No. 133, Memorandum at 30-33.  He

accused opposing counsel of making knowingly false

representations to the court.  Dkt. No. 10-1 at 20; Dkt. No. 14

at 12; Dkt. No. 19 at 7, 20-21; Dkt. No. 24 at 3-5; Dkt. No. 39

at 9.  He also claimed that opposing counsel was complicit in the

alleged fraud of their client and facilitated such fraud.  Dkt.

No. 14 at 13; Dkt. No. 39 at 5, 9; Dkt. No. 68, Memorandum at 9;

Dkt. No. 72 at 28.  Even after this court granted a motion by

Carvalho's counsel to strike such offensive and unfounded

allegations from documents filed with the court (Dkt. No. 80 at

6), LeFande continued to advance the same allegations in further

filings.[33]   These allegations were made in public filings and

hearings and were patently offensive and impugned the characters

of Carvalho's attorneys in a manner that could be damaging to

their careers and reputations.   LeFande advanced these

allegations in a bad faith pattern of harassing and impugning the

character of Carvalho, her counsel, and the court.

"The Court's inherent authority extends only to the

imposition of compensatory sanctions, including those sanctions

that make a party whole for expenses caused by the opponent's

obstinacy."   *In re Avon Townhomes Venture*, 433 B.R. 269, 304

(Bankr. N.D. Cal. 2010), *aff'd*, BAP Nos. NC-11-1068-HDoD, NC-11-

1069-HDoD, 2012 WL 1068770 (B.A.P. 9th Cir. Mar. 29, 2012),

*aff'd*, 575 F. App'x 715 (9th Cir. 2014) (citing *Chambers*, 501

---

[33]   In opposing Carvalho's *Motion for Sanctions*, LeFande
took a parting shot:

> This attorney has no greater duty as an officer of this
> Court than to attempt to confine the conduct of the Court
> and opposing attorneys to the limitations of the law, and
> to call attention to any violation thereof, particularly
> where such violations directly injure his client. This
> attorney is quite frankly embarrassed by the conduct of
> the Court and those opposing attorneys during the course
> of this case. It is this attorney's opinion, withheld
> until now solely because of Rule of Professional Conduct
> 8.4, that Carvalho's attorneys have conspired, aided and
> abetted her in multiple violations of 18 U.S.C. §§ 152
> and 157 and themselves violated, inter alia, 18 U.S.C. §
> 154.

*Opposition* (Dkt. No. 185) at 44-45. The cited Rule 8.4 provides
in part that it is professional misconduct for an attorney to
"(g) Seek or threaten to seek criminal charges or disciplinary
charges solely to obtain an advantage in a civil matter."

U.S. at 45-46); *Miller v. Cardinale (In re DeVille)*, 361 F.3d
539, 546 (9th Cir. 2004); *Knupfer v. Lindblade (In re Dyer)*, 322
F.3d 1178, 1198 (9th Cir. 2003); *Corder v. Howard Johnson & Co.*,
53 F.3d 225, 232 (9th Cir. 1994)).  It is within the court's
inherent power to impose upon LeFande a sanction of attorney's
fees for acting "in bad faith, vexatiously, wantonly, or for
oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness
Soc'y*, 421 U.S. 240, 258-59 (1975).  *See also Shepherd*, 62 F.3d
at 1472 (D.C. Cir. 1995) ("[T]he inherent power enables courts to
protect their institutional integrity and to guard against abuses
of the judicial process with contempt citations, fines, awards of
attorneys' fees, and such other orders and sanctions as they find
necessary.").  Such sanctions are warranted for LeFande's
repeated attacks on the integrity of opposing counsel after the
court struck earlier attacks on their integrity.  Carvalho is
entitled to recover attorney's fees occasioned by her counsel
responding to such unwarranted attacks that sought to advance
Simu's claims by suggesting fraud on the part of Carvalho's
counsel.  Such attacks multiplied the proceedings in a vexatious
and unreasonable fashion.

XV

VIOLATIONS OF D.C. RULES OF PROFESSIONAL CONDUCT

Violations of the Rules of Professional Conduct, as adopted
by the District of Columbia Court of Appeals, may constitute

grounds for discipline under the disciplinary procedures established by the District Court Local Rules. Under LBR 2090-1(b), DCtLCvR 83.15(a) (the Local District Court Rule making the D.C. Rules of Professional Conduct applicable in the district court) applies to attorneys practicing in this bankruptcy court.

A.   LeFande's Fee Arrangement with Simu

Simu's testimony at trial regarding the manner in which she and LeFande have agreed she is to compensate him for his legal services raises significant concern in the eyes of the court as a potential violation of Rule 1.5(b) of the District of Columbia Rules of Professional Conduct, which provides that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee, . . . and the expenses for which for which the client will be responsible shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation."

When Simu was on the stand, Carvalho's counsel questioned her in regards to her fee agreement with LeFande.  Simu testified that she and LeFande had not agreed to an hourly rate of compensation; rather, they had "agreed on pay as we go."  Dkt. No. 187 at 79.  She testified that LeFande never sent to Simu or showed Simu itemized invoices demonstrating the work he had completed.  Instead, according to Simu's testimony, in regards to the amount she owed him, LeFande and Simu "just talked about it"

110

as the litigation continued.  *Id.*  She explained: "I would give
him checks when he would tell me amounts were due."  *Id.*  When
Carvalho's counsel asked Simu to confirm that she would just "sit
down with LeFande on a monthly basis and . . . just talk about
how much he should get," Simu responded, "I know how much work he
does.  We work on the case closely.  I know the motions that are
filed.  I know all of the work he puts in, and I know how much a
lawyer of his caliber gets."  *Id.* at 80.

When asked whether there exists any agreement in writing
that sets out the terms of how Simu is to compensate LeFande,
Simu first testified that she did not remember, as she had hired
him three years ago.  Simu estimated that she paid LeFande
$200,000, just in relation to his representation of her in the
Superior Court proceedings, adding that "[i]t's been a lot of
money.  My father has used his entire retirement income for
this."  *Id.*  When asked to estimate how much she currently owes
LeFande, Simu said she probably owes him $300,000.  *Id.* at 81.
She characterized that valuation as "an estimate -- a guestimate"
based on "how much I paid him so far, and how many hours he's
worked . . . ."  She then again indicated that she and LeFande
"had conversations" and she knew both the hours he put in and
"the rates that a lawyer like him can get" and explained that
"it's based on conversations him and I have had, but we don't
have anything in writing."  *Id.*

111

Rule 1.5(b) of the District of Columbia Rules of Professional Conduct requires a lawyer commencing representation of a new client to communicate to the client in writing, before or within a reasonable time after commencing the representation, the basis of the rate of the fee.  It appears that LeFande never did so for Simu and has instead simply counseled her as to how much he deserves for his work.  This is particularly concerning considering the aforementioned extensive copying and pasting LeFande has done throughout the course of this adversary proceeding, in the form of multiple long motions filed with the court that were either entirely or nearly identical.

Considering the impropriety of the fee arrangement in this case, the risk of LeFande currently having or in the future entering into this improper fee arrangement with other clients, and the risks attendant to such a fee agreement in terms of misunderstandings arising between attorney and client as well as the opportunity for misfeasance on the part of the attorney, this court will exercise its inherent authority by submitting a copy of this decision to the District Court Disciplinary Committee, allowing it an opportunity to consider independently whether LeFande's conduct falls within the Committee's jurisdiction, and if so, what, if any, disciplinary action is warranted. Likewise, this court will exercise its inherent authority to refer this matter to the District of Columbia Office of Bar Counsel.

   B.   LeFande's Misrepresentations and Lack of Candor
        Regarding this Court's Denial of Simu's First Motion
        for Summary Judgment

Simu filed an interlocutory appeal of this court's denial of

her motion for a preliminary injunction in the District of

Columbia District Court.  That appeal was docketed as Case No.

1:16-cv-02522.  In a writing filed in that case, LeFande

addressed this court's denial of Simu's first motion for summary

judgment.  He stated (D.D.C. Case No. 1:16-cv-02522, Dkt. No. 8

at 4-5 (internal citations omitted)):

> Armed with extensive documentary evidence of the vast amount
> of money moving through Elite Insurance & Consulting Services,
> LLC leading up to the Petition, and evidence that the Debtor
> had transferred money out of Elite into her own bank account,
> into a cashier's check and then into an obscure out of state
> bank in the final days before the Petition, the Plaintiff
> moved for summary judgment on her nondischargeability claims
> on February 19, 2016. The Bankruptcy Court refused to hear the
> Motion at a hearing scheduled on March 10, 2016. The Plaintiff
> had tendered a large three ring binder to the Court of the
> Motion Exhibits at the prior hearing and the Clerk made a
> docket notation that the documents were too voluminous to scan
> and enter into ECF. When the Motion was called at the hearing,
> the Court claimed not to have the Exhibits before it. The
> Plaintiff's counsel responded to the effect, "I can see the
> binder of exhibits under your arm from here."  The Bankruptcy
> Court denied the Motion, again without the Plaintiff being
> heard on the merits.  The Bankruptcy Court would later direct
> the Clerk to remove any reference to the Plaintiff's binder of
> Exhibits in the Docket.  The Plaintiff quickly refiled the
> Motion, this time reentering all 700 pages of the Exhibits and
> pleadings into ECF.

In reality, the following occurred:  On March 10, 2016, the

court held a hearing at which it denied Simu's motion for summary

judgment (Dkt. No. 7) without prejudice.  At the hearing, the

court noted that LeFande had filed the motion for summary

113

judgment on behalf of Simu without attaching any of the exhibits to which he referred in his motion.  LeFande argued that he had submitted a binder full of exhibits to the court at a previous hearing and requested the court to reference that binder. However, the court declined to do so, explaining that the motion could not be granted with no exhibits attached thereto.

The court advised: "I'm going to deny the motion for summary judgment and let you re-file it if you want to, with electronically-filed documents."  After LeFande lodged a further argument the court again confirmed that it would "deny the motion for summary judgment without prejudice to you refiling it with electronic copies of the exhibits upon which you rely" and also directed LeFande to partially redact financial account numbers (a step required by Fed. R. Bankr. P. 9037(a)(4)).  The court explained that because LeFande had presented the relevant binder to the court in relation to hearings in the main bankruptcy case and only a small number of the documents contained therein had been admitted into evidence during those hearings it was improper to only reference exhibits in that hard copy binder from the hearing in the main bankruptcy case to support a motion for summary judgment in the adversary proceeding.  Under the court's local rules, LeFande, as an attorney, was required to file documents in electronic form.  The exhibits should have been electronically filed as attachments to the motion.  Thus, the court denied the first motion for summary judgment without

114

prejudice and Simu electronically filed her second motion for summary judgment (Dkt. No. 18) with all of the referenced exhibits attached five days later.  At no point did the court instruct the deputy clerk to remove or conceal any evidence of the presence of print exhibits in the courtroom or the manner in which the court proceedings occurred.  The fact that LeFande insinuated that in a document filed in court is concerning and may require disciplinary review.  LeFande's assertion or implication made to the District Court that this court removed information from the public record may at least violate D.C. Rule of Professional Conduct 3.3(a)(1).  LeFande has maligned the integrity of this court throughout both this adversary proceeding and the underlying bankruptcy case, frequently painting the court as biased against him and his client and even going so far as to assert that the court has actively cooperated with his opposing counsel.  The court has declined to sanction such conduct, instead choosing to sanction LeFande for his unfounded allegations of misconduct of opposing counsel.  However, LeFande's continuation of such malignment in another court to such an extent as to suggest that this court concealed evidence of its proceedings from the public record is conduct that should be reviewed by the disciplinary authorities.

XVI

CONCLUSION

An order follows authorizing Carvalho to recover sanctions as set forth above, and addressing Carvalho's filing a statement of attorney's fees incurred with respect to the sanctionable conduct, and LeFande's responding thereto.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.